## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SUNOCO PIPELINE L.P.,
8111 Westchester Drive, Suite 600, Dallas, Texas, 75225,

                Plaintiff,

        v.                                           Civil Action No. 21-1760

U.S. DEPARTMENT OF TRANSPORTATION,
1200 New Jersey Avenue, SE Washington, D.C. 20590,

PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION,
1200 New Jersey Avenue, SE Washington, D.C. 20590

PETER BUTTIGIEG, SECRETARY OF THE DEPARTMENT OF TRANSPORTATION, IN HIS OFFICIAL CAPACITY,
1200 New Jersey Avenue, SE Washington, D.C. 20590,

and

TRISTAN BROWN, ACTING ADMINISTRATOR OF THE PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION, IN HIS OFFICIAL CAPACITY,
1200 New Jersey Avenue, SE Washington, D.C. 20590,

                Defendants.

## VERIFIED COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND OTHER RELIEF

COMES NOW Sunoco Pipeline L.P. ("Sunoco"), and states as follows for its Complaint herein:

**NATURE OF THIS ACTION**

1.

Sunoco operates the Mariner East 2 ("ME2") pipeline in Pennsylvania.  In 2018, a representative from the Pipeline and Hazardous Materials Safety Administration ("PHMSA" or the "Agency") inspected Sunoco's flow reversal project on the Mariner East pipeline system.  As part of that inspection, Sunoco provided certain confidential, proprietary, and highly sensitive security information to PHMSA and expressly designated the information as confidential and proprietary and exempt from disclosure under the Freedom of Information Act ("FOIA") when it was provided to the Agency.  This information included the specific results of risk assessment and consequence modeling which identified those areas along the ME2 pipeline that would be most impacted by a potential pipeline rupture and the specific distances in which the worst-case impact from a catastrophic pipeline rupture could occur. Sunoco prepared this risk consequence modeling data in the course of its commercial operations and it maintains the confidentiality of such data both because it is confidential commercial information and because of the risk to the security of the pipeline and nearby communities.  If the risk consequence modeling results became publicly available, it would provide a roadmap to third party criminals or terrorists who may seek to cause the greatest possible damage to the pipeline and harm nearby communities.  For that reason, the Pennsylvania Public Utility Commission ("PA PUC"), which is authorized to enforce federal safety standards as an agent of PHMSA in the state, has held that the risk consequence modeling data is confidential information that should be withheld from public disclosure.  In addition, PHMSA and pipeline operators routinely protect similar types of confidential information from disclosure.

2.

On May 17, 2019, PHMSA issued a Notice of Proposed Violation ("NOPV") alleging that Sunoco was in violation of certain pipeline safety regulations.  Though not necessary to the basis for the NOPV, PHMSA quoted verbatim the results of Sunoco's confidential risk consequence modeling that Sunoco provided to the Agency in confidence.  That information was also included in an underlying Pipeline Safety Violation Report ("PSVR") prepared by PHMSA.

3.

Upon receipt of the NOPV and PSVR, Sunoco immediately notified PHMSA of the confidential nature of the risk consequence modeling data, objected to the disclosure of the data and requested that PHMSA revise and reissue the NOPV without the data, or, alternatively, redact the specific results of the risk consequence modeling from both the NOPV and PSVR.  Sunoco asserted that the results of the risk consequence modeling were confidential and sensitive information that is exempt from public disclosure pursuant to exemptions 4 and 7(F) of FOIA, as confidential commercial information and highly sensitive security information.  Over the course of several months and throughout frequent communications with the Agency, Sunoco explained that the results of its risk consequence modeling must be withheld from public disclosure because it could be used by third parties to damage the existing pipeline and/or harm surrounding communities and because Sunoco deemed it to be confidential commercial information.

4.

In correspondence on November 25, 2019, PHMSA acknowledged that the information should be withheld from public disclosure and agreed to redact the confidential modeling data from the NOPV.  Since December 5, 2019, PHMSA has received several FOIA requests for an unredacted copy of the NOPV.  Following consultation with Sunoco and Sunoco's substantiation of its claims for confidentiality, PHMSA denied the FOIA requests on the grounds that the risk

consequence modeling results were exempt from disclosure under FOIA exemption 4 as protected confidential commercial information.  The FOIA requestors appealed PHMSA's denial, and on December 9, 2020, PHMSA requested additional written explanation from Sunoco regarding the harm it would suffer if the unredacted NOPV were disclosed.  Sunoco timely responded with further justification and explanation of that harm on December 18, 2020.  Six months later, on June 24, 2021, and over two years after Sunoco first raised the issue to PHMSA, PHMSA reversed its prior determination, finding that FOIA exemptions 4 and 7(F) do not apply to the results of Sunoco's risk consequence modeling and expressed its intent to release an unredacted version of the NOPV on July 2, 2021 ("Final Determination").

5.

Due to the highly sensitive nature of the risk consequence modeling results and the potential that the ME2 pipeline and the surrounding communities could be harmed as a result of the release of those results, Sunoco now requests that the Court set aside PHMSA's erroneous Final Determination and issue an order that prevents the Agency from otherwise disclosing or releasing the results of Sunoco's risk consequence modeling to the public.

6.

Counsel for Sunoco has met and conferred with counsel for PHMSA, as well as counsel for the Department of Transportation ("DOT") and counsel for the Department of Justice in advance of filing this Complaint.  PHMSA and DOT have agreed to withhold disclosure of the unredacted version of the NOPV and PSVR pending final resolution of this matter by the Court.  Based on that agreement, Sunoco is not seeking preliminary injunctive relief from the Court.

## PARTIES

7.

Sunoco is a wholly-owned subsidiary of Energy Transfer LP.  Sunoco is organized and exists under the laws of the state of Texas.  Sunoco is headquartered in Dallas, Texas.  Sunoco operates numerous pipelines, including the ME2 pipeline, and conducts a substantial portion of its business in Pennsylvania.

8.

PHMSA is a federal agency that falls under the purview of the U.S. Department of Transportation.  The Agency is headquartered at 1200 New Jersey Avenue, SE Washington, D.C. 20590.  Tristan Brown is the Acting Administrator of PHMSA and Peter Buttigieg is the Secretary of Transportation with authority over DOT.

## JURISDICTION AND VENUE

9.

Pursuant to 28 U.S.C. § 1331, the Court has subject matter jurisdiction over this action because Sunoco's claims arise under the law of the United States, including the Freedom of Information Act, 5 U.S.C. § 552, and the Administrative Procedure Act, 5 U.S.C. § 702.

10.

Pursuant to 28 U.S.C. § 1391(e)(1), venue is proper in this Court because the Defendants "reside" in Washington, D.C. and because a "substantial part of the events . . . giving rise to the claim occurred" at PHMSA's headquarters in Washington, D.C.  In particular, PHMSA's initial decision to withhold this information as exempted confidential commercial information and its recent decision to publicly disclose Sunoco's confidential risk consequence modeling data were made and/or approved by PHMSA's FOIA Officer and chief counsel located in Washington, D.C.

## FREEDOM OF INFORMATION ACT FRAMEWORK

11.

FOIA mandates that federal agencies make certain information available to the public unless that information is otherwise exempt from public disclosure.  5 U.S.C. § 552(a).  The requirements of FOIA, however, do not apply to nine categories of information that are expressly exempt from public disclosure.  *Id.* at § 552(b)(1)-(9).

12.

Exemption 4 to the requirements of FOIA covers "trade secret and commercial or financial information obtained from a person [that is] privileged and confidential."  5 U.S.C. § 552(b)(4).

13.

Exemption 7(F) to the requirements of FOIA covers "records or information compiled for law enforcement purposes, but only to the extent that the product of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7).

14.

Under relevant PHMSA regulations, a party that seeks to submit information to the Agency that may be exempt from disclosure under a relevant FOIA exemption must clearly mark the information as confidential and request that the Agency withhold the information from public disclosure.  49 C.F.R. § 190.343.

15.

According to relevant DOT regulations, "DOT makes reasonably described records available upon request from a member of the public, when the request is submitted in accordance with this subpart, except to the extent that the records contain information exempt from FOIA's mandate of disclosure as provided in 5 U.S.C. 552(b)."  49 C.F.R. § 7.23(b).

**STATEMENT OF FACTS**

16.

Throughout August, October, and November of 2018, a representative from PHMSA inspected Sunoco's Flow Reversal/Repurposing Project on the ME2 pipeline system located in the Chester and Delaware counties of Pennsylvania to determine the system's compliance with various pipeline safety regulations.

17.

During that inspection, at PHMSA's request, Sunoco provided hazard analyses for the Agency's review that were prepared at Sunoco's request by Stantec Consulting Ltd. ("Stantec"). These reports included a (1) a March 27, 2017 report entitled "Hazard Assessment of the Proposed Mariner 2 East Pipeline" ("Stantec Report"); and (2) an October 15, 2018 report entitled "Energy Transfer: Mariner East 2 Pipeline Re-Route near Chester and Delaware, Pennsylvania – Butane Spill Assessment: Final Report" ("Stantec Final Report").

18.

Sunoco retained Stantec, a consultant with expertise in pipeline risk assessment and consequence modeling, to perform these confidential proprietary hazard analyses in order to fulfill Sunoco's regulatory obligations as part of its ongoing commercial operations.  The analyses contained specific results of incident dispersion and thermal radiation consequence modeling performed by Stantec related to the ME2 pipeline.  That is, the analyses modeled and identified specific areas along the pipeline that would be most impacted by a catastrophic incident on the ME2 pipeline.

19.

Stantec's reports were generated based on the unique conditions assumed by Stantec and based on specific proprietary information provided by Sunoco during its analyses.  Although third

parties can conduct their own modeling in an effort to estimate the potential impacts of a spill from a pipeline, it is unlikely that any third party could reproduce the specific risk consequence modeling results Stantec generated for Sunoco without Stantec's unique modeling assumptions.

20.

Sunoco uses the information contained in Stantec's hazard analyses to develop its Integrity Management Plan and for emergency planning.  These plans are required under federal pipeline safety regulations and are used to assess risks associated with pipelines and implement controls to reduce those risks.  *See* 49 C.F.R. § 192.911.  Within these plans, operators use risk consequence modeling data, like the information developed by Stantec, to identify potential areas that would be most impacted by a pipeline rupture, referred to as high consequence areas, and assess the worst-case impacts to those areas from a catastrophic pipeline rupture.  Operators also include this information in pipeline Facility Response Plans under 49 C.F.R. Part 194 and use the results of risk consequence modeling to identify and prioritize their response in the event of a pipeline rupture.  This information is confidentially shared with PHMSA, relevant states, and local emergency responders.

21.

The information contained in hazard analyses prepared by pipeline operators, including risk consequence modeling results, is highly confidential and it is routinely protected from disclosure to the public by PHMSA and pipeline operators.  PHMSA has historically withheld hazard analyses from public disclosure and typically redacts the results of risk consequence modeling from Facility Response Plans and spill-model discussions.  In 2017, PHMSA expressly recognized the need for protecting risk consequence modeling in Facility Response Plans.  (*See* Ex. A, PHMSA's Facility Response Plan Confidential Information Policy (Jul. 21, 2017) (noting that "waste case discharge information" is protected under FOIA exemption 7(F)).  Further,

PHMSA's website contains numerous examples of redacted Facility Response Plans under applicable FOIA exemptions, including exemptions 4 and 7(F) (available at https://www.phmsa.dot.gov/ and https://www.phmsa.dot.gov/foia/phmsa-electronic-reading-room). Sunoco is unaware of any other PHMSA enforcement action where it expressly quoted risk consequence modeling data that was submitted by an operator under the condition that the information would be treated as proprietary and confidential and subject to FOIA exemptions from public disclosure.

22.

If disclosed, the results of risk consequence modeling create a roadmap for anyone intending to damage the pipeline and/or harm the surrounding community. In particular, the specificity of the risk modeling data provides anyone seeking to cause harm the ability to identify the zones and populations where a pipeline incident would cause the greatest impact.

23.

Given the sensitive nature of the results of risk consequence modeling contained in the Stantec reports, the PA PUC has found that the Stantec hazard analyses contain confidential information that must be withheld from public disclosure. Multiple parties have requested the risk consequence modeling data contained in the Stantec reports from the PA PUC. In light of the confidential nature of the information, the PA PUC has denied all such requests. In response to one of those requests, the PA PUC held that the records should be withheld because they "would be reasonably likely to jeopardize or threaten public safety" or "create[ ] a reasonable likelihood of endangering the safety or the physical security of a . . . public utility, resource, infrastructure, of facility." (*See* Ex. B, PA PUC Right-to-Know Denial (Mar. 11, 2019)). The denial of one of these requests is currently pending on appeal before the Pennsylvania Supreme Court.

24.

When Sunoco provided Stantec's hazard analyses for PHMSA's review, it clearly marked the related documents, and every page therein, as "Proprietary and Confidential Information." This marking is consistent with applicable PHMSA regulations on submission of confidential materials.  *See* 49 C.F.R. § 190.343(a)(1).  With respect to the Stantec Report, Sunoco also labeled this report as "Confidential – Property of Energy Transfer Partners – Hazard Assessment of the Proposed Mariner East 2 Pipeline."

25.

Sunoco also attached a cover letter to the each of the Stantec reports which stated that the information was provided to PHMSA "conditioned upon [it] being treated according to available and "applicable federal and state confidential, proprietary, and infrastructure security treatments and procedures[.]"  (Ex. D, Letter to PHMSA from Sunoco Submitting the Stantec Report (Jul. 6, 2018); Ex. E, Letter to PHMSA from Sunoco Submitting the Stantec Report (Nov. 2, 2018)).  In its cover letters, Sunoco also stated that it "consider[ed] all of the information in the attachment to be confidential."  (*Id.*).  Further, Sunoco submitted the documentation "subject to [its] request for confidential treatment" under FOIA.  (*Id.*)

26.

Because Sunoco complied with all of the requirements of relevant PHMSA and DOT regulations, and both pipeline operators and PHMSA have traditionally protected this type of information as confidential, Sunoco expected that the Stantec risk consequence modeling data would be withheld from public disclosure.

27.

On May 17, 2019, PHMSA initiated an enforcement action against Sunoco and issued a NOPV detailing the Agency's allegations against Sunoco.

28.

Within the NOPV, PHMSA expressly quoted the results of risk consequence modeling from the confidential Stantec hazard analyses.  Specifically, the NOPV quoted Stantec's detailed dispersion and thermal radiation consequence modeling results for worst case releases from the ME2.  The underlying PSVR also quoted these modeling results, even though the quoted results were not necessary to support the alleged violations in the NOPV.

29.

Because the confidential results of the risk consequence modeling have been traditionally protected by PHMSA and were not necessary to the alleged violations in the NOPV or PSVR, Sunoco believed that the Agency inadvertently included the findings of the risk assessment in the NOPV.

30.

On June 4, 2019, Sunoco brought the issue to PHMSA's attention during a teleconference. At that time, PHMSA requested that Sunoco submit requested redactions from the NOPV and the PSVR.  (Ex. F, Email to PHMSA from Troutman Sanders on behalf of Sunoco (Jun. 5, 2019)).  On June 5, 2019, Sunoco submitted its requested redactions to PHMSA.  (*Id.*)  Sunoco's proposed redactions were limited to specific confidential risk consequence modeling data.

31.

On June 19, 2019, via email, PHMSA advised Sunoco that it would not redact the risk consequence modeling results Sunoco identified and that it intended to publicly disclose the information on June 27, 2019.  (Ex. G, Email to Troutman Sanders on behalf of Sunoco from PHMSA (Jun. 19, 2019)).

32.

At this time, no third party had requested the information under FOIA, and the Agency was under no obligation to release the risk consequence modeling results.

33.

On June 24, 2019, Sunoco objected to PHMSA's decision to disclose an unredacted copy of the NOPV and explained that the Agency should shield the redacted risk consequence modeling results from disclosure under exemptions 4 and 7(F) of FOIA.  (Ex. H, Letter to PHMSA from Troutman Sanders on behalf of Sunoco (Jun. 24, 2019)).

34.

On November 6, 2019, PHMSA contacted Sunoco and again requested written justification to support Sunoco's position that the results of Stantec's risk consequence modeling should be protected under FOIA exemptions 4 and 7(F).  (Ex. I, Letter to Troutman Sanders on behalf of Sunoco from PHMSA (Nov. 6, 2019)).  In that correspondence, PHMSA advised that it would release the confidential results of the risk assessment within 5 days of its correspondence— notwithstanding that PHMSA took nearly five months to respond to Sunoco's June 24, 2019 correspondence.  (*Id.*)

35.

On November 14, 2019, Sunoco again timely responded to PHMSA's request for written justification and provided additional support for its position that the results of Stantec's risk consequence modeling were exempt from disclosure under FOIA exemptions 4 as confidential commercial information and under exemption 7(F) as information that could reasonably be expected to endanger the safety of the public.  (Ex. J, Letter to PHMSA from Troutman Sanders on behalf of Sunoco (Nov. 14, 2019)).

36.

As of November 14, 2019, PHMSA had not made the NOPV publicly available and no third party had made a request under FOIA for the NOPV or PSVR.

37.

On November 25, 2019, PHMSA's FOIA Officer, via email, advised that PHMSA agreed to incorporate Sunoco's proposed redactions into the NOPV that would be publicly disclosed.  (Ex. K, Email to Troutman Sanders on behalf of Sunoco from PHMSA (Nov. 25, 2019)).  The FOIA Officer advised that the Agency would be posting a redacted copy of the NOPV on the Agency's FOIA Electronic Reading Room on November 26, 2019.  (*Id.*)  The PHMSA FOIA Officer's correspondence did not reference the PSVR or indicate whether the Agency intended to redact the information from that document.  (*Id.*)

38.

In December 2019, PHMSA received two FOIA requests for an unredacted copy of the NOPV.  These requests were cataloged as PHMSA FOIA Case Nos. 2020-0044 and 2020-0046.  At least one of these requests was filed by Eric Friedman on behalf of the Middletown Coalition for Community Safety, a community group that is not associated with any local emergency responders or regulatory agency.

39.

On December 20, 2019, PHMSA notified Sunoco of the two FOIA requests.  (Ex. L, Letter to Troutman Sanders on behalf of Sunoco from PHMSA (Dec. 20, 2019)).  Despite its earlier decision to redact the specific results of Stantec's risk consequence modeling from the NOPV, the Agency again requested that Sunoco provide written justification for redacting the modeling results within 10 business days of its notice.  (*Id.*)

40.

On January 7, 2020, Sunoco again timely provided a written justification for withholding the results of Stantec's risk consequence modeling under FOIA exemptions 4 and 7(F).  (Ex. M, Letter to PHMSA from Troutman Sanders on behalf of Sunoco (Jan. 7, 2020)).

41.

On March 5, 2020, PHMSA received another FOIA request seeking an unredacted copy of the NOPV.  This request was submitted on behalf of E&E News and was cataloged at Case No. 2020-0112.

42.

On September 30, 2020, PHMSA denied the FOIA requests for unredacted copies of the NOPV and PSVR.  (*See* Ex. N, PHMSA Denial of FOIA Request No. 2020-0012 (Sep. 30, 2020); Ex. O, PHMSA Denial of FOIA Request No. 2020-0044 (Sep. 30, 2020)).  In denying these requests, PHMSA found that the information was protected under FOIA exemption 4.  PHMSA did not address whether the information would also be protected under exemption 7(F).

43.

On December 9, 2020, PHMSA informed Sunoco of a FOIA appeal  (FOIA Case No. 2021-0021A) related to its earlier decision to deny the FOIA requests and requested further justification and explanation from Sunoco regarding the harm it would suffer if the unredacted NOPV were disclosed.  (Ex. P, FOIA Appeal (Nov. 12, 2020); Ex. Q Letter to Troutman Pepper on behalf of Sunoco from PHMSA (Dec. 9, 2020)).  Sunoco timely responded with further justification to support the confidential nature of the risk consequence modeling data on December 18, 2020.  (Ex. R, Letter to PHMSA from Troutman Pepper on behalf of Sunoco (Dec. 18, 2020)).

44.

On December 30, 2020, PHMSA received a second FOIA appeal (Case No. 2021-0045A) of its previous denial to release an unredacted version of the NOPV. (Ex. S, FOIA Appeal (Dec. 30, 2020)). In response to this appeal, PHMSA did not request that Sunoco provide any further justification to support withholding the risk consequence modeling data as confidential.

45.

On June 24, 2021, over six months after Sunoco provided further justification to PHMSA, the Agency notified Sunoco of its Final Determination to release an unredacted version of the NOPV with the specific results of Stantec's risk consequence modeling on July 2, 2021. (Ex. T, PHMSA Final Determination (Jun. 24, 2021)). In its Final Determination, PHMSA stated that, considering the arguments made in the appeals, it no longer agreed that the information was protected from disclosure under FOIA, whether exemption 4 or 7(F). (*Id.*)

46.

With respect to FOIA exemption 4, PHMSA concluded that the results of the Stantec risk consequence modeling were "not 'commercial' or 'confidential.'" (*Id.* at 3.) Despite being developed for purely commercial purposes, PHMSA asserted that the modeling results were not "commercial" because the information included "factual safety information." (*Id.* at 4.) Further, PHMSA claimed that the risk consequence modeling data was not confidential (even though Sunoco maintained the information as such) because (1) there were "no express or implied assurances of confidentiality when the information was shared with the government;" and (2) there were "express or implied indications at the time the information was submitted that the government would publicly disclose the information." (*Id.* at 5-7.)

47.

With respect to FOIA exemption 7(F), PHMSA claimed, without explanation, that the results of the risk consequence modeling could not "reasonably be expected to endanger life or physical safety of any individual." (*Id.* at 8.)  Rather, PHMSA asserted that the results of the risk consequence modeling could be useful "to educate the public on possible hazards with an unintended release."  (*Id.*)  There is no exception in FOIA, however, to the application of exemption 7(F) because exempted information may have some other useful purpose.  Further, this information is provided confidentially to PHMSA, relevant state agencies, and local emergency responders.  In addition, two other third parties have performed their own risk assessment analyses for this pipeline that are available in the public record, thus greatly undermining any public need for Sunoco's proprietary and confidential modeling information.  PHMSA also asserted, without citation to any support in the statute, that exemption 7(F) "merely permits agencies to withhold certain information; it does not require withholding."  (*Id.*)  Based on this presumed power, PHMSA indicated that it would make a discretionary release of the risk assessment results despite the potential harm that could result.  Thus, even if it agreed with Sunoco's assessment that the information could be used to endanger the life or physical safety of any individual, PHMSA would still use its discretion – as the primary federal pipeline safety regulator – to release the information. (*Id.*)

48.

In its Final Determination, PHMSA agreed that Sunoco properly marked the Stantec risk assessments as confidential when it provided the confidential and sensitive security information to the Agency.  (*Id.* at 2-3.)

49.

Despite PHMSA's assertion, the targeted redactions of the specific results of Stantec's risk consequence modeling, as Sunoco previously claimed and demonstrated, are exempt from disclosure under FOIA exemptions 4 and 7(F).

50.

PHMSA's Final Determination that Stantec's risk consequence modeling results are not exempt from public disclosure under FOIA exemptions 4 and 7(F) ignores well-established law that recognizes protections for very similar types of information, fails to consider the confidential commercial and highly sensitive nature of the information and the potential harm that can be caused by its release, and relies on reasoning that is arbitrary, capricious, and contrary to law.

51.

Additionally, PHMSA's assumption of the discretion to disclose information which could reasonably be expected to endanger the life or physical safety of the public, as defined by exemption 7(F), is contrary to the statutory text of exemption 7(F), as well as existing DOT regulations, and the release of this information is arbitrary and constitutes an abuse of discretion. Moreover, PHMSA's Final Determination is inconsistent with the purpose of the Pipeline Safety Act to protect against "risks to life and property." 49 U.S.C. § 60102(a)(1). Under its regulations, PHMSA is not entitled to unfettered discretion to release information. 49 C.F.R. § 7.23(b) provides that the Agency will "make reasonably described records available upon request from a member of the public, . . . except to the extent that the records contain information exempt from FOIA's mandate of disclosure[.]"

52.

As Sunoco has continued to maintain, the results of Stantec's risk consequence modeling are protected confidential "commercial . . . information obtained from a person [that is] privileged

or confidential information" and subject to the protections of FOIA's exemption 4.  5 U.S.C. § 552(b)(4).  Sunoco requested that Stantec perform the risk consequence modeling in the course of Sunoco's commercial operations and for commercial purposes.  Without this information, Sunoco would be unable to comply with the federal pipeline safety regulations or operate the ME2 pipeline.  Moreover, as PHMSA acknowledges, Sunoco keeps this type of commercial information confidential.  Further, until now, PHMSA has routinely shielded similar information from disclosure.

53.

Additionally, the redacted results of Stantec's risk assessments constitutes "records or information compiled for law enforcement purposes . . . [that] could reasonably be expected to endanger the life or physical safety of any individual" and so is exempt from disclosure under FOIA exemption 7(F).  5 U.S.C. § 552(b)(7)(F).  If revealed, the results of Stantec's risk assessments could create a blueprint that would be instrumental for a third party attempting to damage the existing ME2 pipeline or cause significant harm to local communities.

54.

The susceptibility of pipelines to physical attacks is well-documented as has the occurrence of acts of physical pipeline sabotage and cyber attacks in recent years.  The Government Accountability Office commented on the vulnerability of pipelines to physical attacks and provided:

According to [the Transportation Security Administration within the Department of Homeland Security], pipelines are vulnerable to physical attacks—including the use of firearms or explosives—largely due to their stationary nature, the volatility of transported products, and the dispersed nature of   pipeline networks spanning urban and outlying areas. The nature of the transported commodity and the potential effect of an attack on national security, commerce, and public health make some pipelines and their assets more attractive targets for attack. Oil and gas pipelines

have been and continue to be targeted by terrorists and other malicious groups globally.[1]

55.

The potential harm that can be caused by the release of the Stantec risk consequence modeling data is also well-documented. According to then-PA PUC Pipeline Safety Chief, Paul Metro, the

> release of the requested records would compromise security against sabotage or criminal or terrorist acts regarding pipeline facilities by illustrating the extent of the impact zone, including casualty and damage assessments at various ranges, regarding an accident (or sabotage event) on a pipeline. These Reports and Inspection Reports explicitly provide how such an assessment can be made (as well as the assessment for this particular pipeline, and particularly on these Sunoco pipelines, as they contain the specific operating parameters of the pipelines) to cause the greatest possible harm and mass destruction to the public living near such facilities.

(Ex. C, Affidavit of Paul J. Metro (Apr. 15, 2019)). Mr. Metro was the longstanding Pipeline Safety Chief at the PA PUC with responsibility for investigating, analyzing, and responding to pipeline safety issues in Pennsylvania.

56.

It is reasonably foreseeable that the disclosure of the results of the risk assessments in the Stantec report could be used by a third party to damage the existing ME2 pipeline and/or cause a pipeline incident that would harm the surrounding community.

57.

PHMSA's Final Determination ignores the foreseeable harm that could be caused by the release of Stantec's risk consequence data contained in the NOPV and the PSVR and the applicability of FOIA exemptions 4 and 7(F).

---

[1] U.S. Gov't Accountability Off., GAO-19-48, *Critical Infrastructure Protection Actions Needed to Address Significant Weaknesses in TSA's Pipeline Security Program Management*, pp. 10-11 (Dec. 2018) (emphasis added), available at https://www.gao.gov/assets/700/696123.pdf.

## COUNT I – VIOLATION OF ADMINISTRATIVE PROCEDURE ACT ("APA")

58.

Paragraphs 1 through 57 are incorporated herein by reference as if fully set forth.

59.

Under the APA, a court can "hold unlawful and set aside agency action, findings and conclusion found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

60.

PHMSA's Final Determination to disclose the confidential results of Stantec's risk consequence modeling is a final agency action within the meaning of 5 U.S.C. § 704 that is reviewable under the APA.

61.

PHMSA's decision to disclose the confidential results of Stantec's risk consequence modeling is arbitrary and capricious, an abuse of discretion, and contrary to law, including applicable DOT regulations at 49 C.F.R. Part 7 and PHMSA regulations at 49 C.F.R. Part 190.

62.

By responding to multiple requests from PHMSA and providing numerous written justifications to support the confidentiality and sensitive nature of the risk consequence modeling results, Sunoco has exhausted all available administrative remedies.

63.

FOIA authorizes agencies to disclose certain information after receiving third-party requests for the records unless that information is subject to certain exceptions. 5 U.S.C. § 552(a).

64.

In this instance, the results of Stantec's risk consequence modeling are confidential commercial information that is customarily withheld from public disclosure, not only by Sunoco, but by other pipeline operators and, historically, by PHMSA.  The risk consequence modeling data was prepared to support Sunoco's commercial interests in maintaining the operation of its pipelines.  Without this information, Sunoco would be unable to comply with the federal pipeline safety requirements or operate the ME2 pipeline.  If publicly disclosed, this information can be used by third parties to disrupt the operations of the pipeline, thereby impacting Sunoco's commercial interests in the safe transportation of products in Pennsylvania and in interstate commerce.  Further, the information was submitted to PHMSA with the proper and numerous indications that the information should be maintained as confidential and, as a result, is exempt from disclosure under FOIA exemption 4, 5 U.S.C. § 552(b)(4).

65.

Additionally, the risk consequence modeling data can be used by a third party criminal or terrorist to cause the greatest possible harm and destruction to the ME2 pipeline and the surrounding communities.  Because withholding this information is necessary to protect the existing pipeline and those living near it, the information is exempt from disclosure pursuant to FOIA exemption 7(F), 5 U.S.C. § 552 (b)(7)(F).

66.

PHMSA's decision to publicly disclose the confidential and highly sensitive security information at issue is unlawful, improperly applies FOIA exemptions 4 and 7(F), and is contrary to established law and violates applicable Agency regulations.

67.

Sunoco will suffer irreparable harm if PHMSA releases the results of Stantec's risk assessments—both the existing ME2 pipeline and the surrounding community will be vulnerable to outside attack or sabotage.

68.

Given the important security and commercial implications and confidential nature of the information at issue, Sunoco respectfully requests that the Court set aside PHMSA's erroneous Final Determination and permanently enjoin PHMSA from releasing an unredacted version of the NOPV.

**WHEREFORE**, Sunoco prays that:

(1)    The Court enter judgment holding unlawful and setting aside PHMSA's decision to release an unredacted version of the NOPV as being in excess of PHMSA's statutory authority, otherwise contrary to law, arbitrary and capricious, and an abuse of discretion;

(2)    The Court declare that the subject information should be redacted from the NOPV and the PSVR;

(3)    Following a hearing and determination of the merits, the Court enjoin Defendants, or any person or entity acting in active concert with them or at their direction, from releasing or disclosing the subject information; and

(4)    The Court grant Sunoco such other and further relief as the Court deems just, equitable, and proper.

Dated: June 30, 2021                    Respectfully submitted,

By:  *Marc D. Machlin*

    Marc D. Machlin (D.C. Bar No. 358661)
    TROUTMAN PEPPER HAMILTON
     SANDERS LLP
    401 Ninth Street, N.W., Suite 1000
    Washington, D.C.  20004
    202.220.1439
    marc.machlin@troutman.com

    Dabney J. Carr (Va. Bar No. 28679;
    application for admission pending)
    TROUTMAN PEPPER HAMILTON
     SANDERS LLP
    Troutman Pepper Building
    1001 Haxall Point
    Richmond, VA 23219
    804.697.1238
    dabney.carr@troutman.com

    *Attorneys for Plaintiff Sunoco Pipeline L.P.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SUNOCO PIPELINE L.P.,
8111 Westchester Drive, Suite 600, Dallas, Texas,
75225,

                    Plaintiff,

      v.

U.S. DEPARTMENT OF TRANSPORTATION,
1200 New Jersey Avenue, SE Washington, D.C.
20590,

PIPELINE AND HAZARDOUS MATERIALS
SAFETY ADMINISTRATION,
1200 New Jersey Avenue, SE Washington, D.C.
20590

PETE BUTTIGIEG, SECRETARY OF THE
DEPARTMENT OF TRANSPORTATION, IN HIS
OFFICIAL CAPACITY,
1200 New Jersey Avenue, SE Washington, D.C.
20590,

and

TRISTAN BROWN, ACTING ADMINISTRATOR
OF THE PIPELINE AND HAZARDOUS
MATERIALS SAFETY ADMINISTRATION, IN
HIS OFFICIAL CAPACITY,
1200 New Jersey Avenue, SE Washington, D.C.
20590,

                    Defendants.

Civil Action No.

## VERIFICATION

Personally appeared before me, the undersigned officer, duly authorized to administer oaths in Texas, Joseph Perez, who, after being duly sworn, deposes and states that he is a representative of Sunoco Pipeline L.P., a subsidiary of Energy Transfer LP, and that, as such, he is authorized to make this Verification, and that the information contained in the within and

foregoing **Verified Complaint for Injunctive, Declaratory, and Other Relief** is true and correct

to the best of his knowledge, information, and belief.

Joseph Perez
Senior Vice President Engineering, Project Services
Energy Transfer
Sunoco Pipeline L.P.


Sworn to and subscribed
before me this 30th day
of June , 2021.

Notary Public

My commission expires:  01|26|2023

Dixie Dee Ruiz
My Commission Expires
01/26/2023
ID No. 11431861