Attachment A

PHMSA's Facility Response Plan Confidential Information Policy
(Jul. 21, 2017)



U.S. Department
of Transportation
**Pipeline and Hazardous
Materials Safety Administration**

1200 New Jersey Avenue, S.E.
Washington, D.C.   20590

July 21, 2017

The Honorable Ann O'Reilly
Administrative Law Judge
Office of Administrative Hearings
600 North Robert Street
P.O. Box 64620
St. Paul, MN 55164-0629

Re:     PHMSA's Protection of Worst Case Discharge Information

Dear Judge O'Reilly:

In response to a request from Enbridge Energy, Limited Partnership (Enbridge), the Pipeline and
Hazardous Materials Safety Administration's (PHMSA) Office of Pipeline Safety (OPS) is
providing information in the legal proceeding concerning Enbridge's Line 3 Replacement Project
regarding PHMSA's protection of Worst Case Discharge information for security reasons.
Enbridge submitted its request for testimony to PHMSA under 49 C.F.R. § 9.15. The information
in question in this proceeding, if provided to PHMSA's Office of Pipeline Safety, would be
protected from public release for reasons stated herein.

PHMSA's Oil Spill Preparedness and Emergency Support Division in OPS reviews and/or
approves oil spill response plans required under the Federal Water Pollution Control Act, as
amended by the Oil Pollution Act of 1990.  When an oil spill response plan is requested under
the Freedom of Information Act (FOIA), or PHMSA otherwise identifies a need to publicly
disclose a plan, PHMSA redacts sensitive information prior to public disclosure.

PHMSA protects particular pieces of information in oil spill response plans and other pipeline
records to prevent adversaries from using the information to target and damage or destroy pipeline
pipeline critical infrastructure. A specific set of information that PHMSA protects is Worst Case
Discharge volume and location, and corresponding derivative information (i.e. spill modeling
data) that could be used to rank desirable targets.  Worst Case Discharge is defined by the
pipeline safety regulations in 49 C.F.R. § 194.5 as the largest foreseeable discharge of oil,
including a discharge from fire or explosion, in adverse weather conditions. This volume will be
determined by each pipeline operator for each response zone and is calculated according to 49
C.F.R. § 194.105. Spill modeling data is utilized to calculate Worst Case Discharge by
determining which line section and/or location would lead to the largest foreseeable discharge of
oil.

49 U.S.C. § 60138(a)(2) provides that the Secretary of Transportation may, as she determines to
be appropriate, exclude four categories of information from oil spill response plans. The statute
specifies amount and location of worst case discharges (as defined in part 194 of title 49, Code of

Federal Regulations), including the process by which an owner or operator determines the worst case discharge, as one of the four categories.  Therefore, when publicly releasing an oil spill response plan, PHMSA redacts Worst Case Discharge information under 49 U.S.C. § 60138; 5 U.S.C. § 552(b)(3), which allows for the withholding of information "specifically exempted from disclosure by statute," and 5 U.S.C. § 552(b)(7)(F), which allows for the withholding of "records or information compiled for law enforcement purposes" if the release of such information "could reasonably be expected to endanger the life or physical safety of any individual." In addition to protecting Worst Case Discharge information, PHMSA also redacts security-sensitive information such as Control System Information, Facility Schematics, Security Plans, and Cyber Security information protected under 49 U.S.C. § 60138(a)(2) in oil spill response plans. PHMSA protects this information and Worst Case Discharge information under 5 U.S.C. § 552(b)(7)(F) when the information is contained in other pipeline records.

We have attached PHMSA's policy for redactions under 49 U.S.C. § 60138 (a)(2) for your reference.  PHMSA has posted the policy on its web site at https://www.phmsa.dot.gov/staticfiles/PHMSA/DownloadableFiles/Facility%20Response%20Plan%20Policy%20-%206-25.pdf .

If you have any questions concerning this letter, please contact Nathan Schoenkin, Emergency Support and Security Specialist, at 202-366-4774, Nathan.Schoenkin@dot.gov or David Lehman, Director of Oil Spill Preparedness and Emergency Support Division, at 202-366-4439 or David.Lehman@dot.gov .

Sincerely,

Alan K. Mayberry
Associate Administrator for Pipeline Safety

ALAN K
MAYBERRY
<span style="font-size:small">Digitally signed by ALAN K MAYBERRY
DN: c=US, o=U.S. Government, ou=DOT
Headquarters, ou=PHMSAHQ, cn=ALAN
K MAYBERRY
Date: 2017.07.21 09:14:39 -04'00'</span>

CC: Christina K. Brusven, Fredrikson & Byron, P.A.



**CHIEF COUNSEL AND PIPELINE SAFETY POLICY**

**PHMSA FACILITY RESPONSE PLAN POLICY**

**POLICY NUMBER:  PHMSA 2050.1A**

**U.S. DEPARTMENT OF TRANSPORTATION**

**PIPELINE AND HAZARDOUS MATERIALS
SAFETY ADMINISTRATION**

**ORIGINATING OFFICE:**  Office of Chief Counsel and Office of Pipeline Safety Emergency
Support and Security Division

**EFFECTIVE DATE:**  June 27, 2014

CYNTHIA L QUARTERMAN

Digitally signed by CYNTHIA L QUARTERMAN
DN: c=US, o=U.S. Government, ou=DOT Headquarters, ou=PHMSAHQ, cn=CYNTHIA L QUARTERMAN
Date: 2014.06.25 14:24:37 -04'00'

Cynthia L. Quarterman
Administrator, PHMSA

1. **PURPOSE**.  To prescribe the policy on the types of information falling into the four categories of information protected under 49 U.S.C. § 60138 in oil spill response plans ("Facility Response Plan").

2. **BACKGROUND**.  In January 2012, the President signed Pub. Law 112-90, the Pipeline Safety, Regulatory Certainty, and Job Creation Act of 2011, codified at 49 U.S.C. § 60101 *et seq*. ("the Pipeline Safety Act").  Under the Freedom of Information Act, 5 U.S.C. § 552(b)(3) (Exemption 3) allows the withholding of information prohibited from disclosure by another federal statute. On April 24, 2013, the Office of General Counsel of the Department approved the use of 49 U.S.C. § 60138 of the Pipeline Safety Act as an Exemption 3 statute.

   49 U.S.C. § 60138(a)(2) provides that the Secretary may, as he determines to be appropriate, exclude information from Facility Response Plans falling into the following categories:

   (A) proprietary information;
   (B) security-sensitive information, including information described in section 1520.5(a) of title 49, Code of Federal Regulations;
   (C) specific response resources and tactical resource deployment plans; and
   (D) the specific amount and location of worst case discharges (as defined in part 194 of title 49, Code of Federal Regulations), including the process by which an owner or operator determines the worst case discharge.

U.S. Department of Transportation        PHMSA Facility Response Plan Policy
Pipeline and Hazardous Materials Safety Administration      Policy Number: PHMSA 2050.1A

The authority to make the determination regarding the information in these categories to be protected from public disclosure has been delegated to PHMSA's Administrator.

3. **SCOPE**. Information to be excluded from public disclosure in Facility Response Plans.

4. **AUTHORITIES**.
     a. Pub. Law 112-90, the Pipeline Safety, Regulatory Certainty, and Job Creation Act of 2011, codified at 49 U.S.C. § 60101 *et seq.*
     b. 49 C.F.R. § 1.97(a)(1) and (10), Delegations to the PHMSA Administrator
     c. The Freedom of Information Act, 5 U.S.C. § 552(b)(3), <u>amended by</u> Pub. Law 110-175 and Pub. Law 111-83.

5. **POLICY.** PHMSA will apply section 60138 (a) (2) (A) – (D) to the four categories of information as follows:

     *a. Proprietary Information*
     Section 60138 (a)(2)(A) of the Pipeline Safety Act authorizes the Secretary to withhold *proprietary information* from Facility Response Plans. PHMSA construes "proprietary" information in the Pipeline Safety Act as "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential" information already protected from release under FOIA Exemption 4, 5 U.S.C. 552(b)(4). If a FOIA request is received for such information, PHMSA complies with DOT regulations in 49 CFR § 7.17 to consult with submitters of commercial and financial information if that information has been designated as confidential commercial information, or which DOT otherwise believes contains confidential commercial information.

     Once the information is publicly-released by the submitter, it is no longer considered "proprietary."

     *b. Security–Sensitive Information*
     Section 60138 (a)(2)(B) of the Pipeline Safety Act authorizes the Secretary to withhold *security-sensitive information* from Facility Response Plans, "including information described in section 1520.5(a) of title 49, Code of Federal Regulations," from public disclosure.

     Section 60138(a)(2)(B) includes information described in 49 CFR §1520.5(a), which are TSA's regulations on sensitive security information ("SSI"). (DOT's SSI regulations are found in 49 CFR Part 15). Section 1520.5(a) states that SSI is, "information obtained or developed in the conduct of security activities, including research and development, the disclosure of which, TSA has determined would –

2

(1) Constitute an unwarranted invasion of privacy (including, but not limited to, information contained in any personnel, medical, or similar file);
(2) Reveal trade secrets or privileged or confidential information obtained from any person; or
(3) Be detrimental to the security of transportation."

Sensitive Security Information in § 1520.5(a) is limited to "information obtained or developed in the conduct of security activities." Security-sensitive information as set forth in section 60138 (a)(2)(B) of the Pipeline Safety Act *includes* the information described in § 1520.5. As such, security-sensitive information is broader than SSI.

PHMSA construes security-sensitive information as information in a Facility Response Plan that, if disclosed, would be of significant operational utility to a person(s) seeking to harm the pipeline infrastructure of the U.S., therefore adversely affecting transportation security. The following chart identifies security-sensitive information as points of vulnerability, i.e., a location, information about a weakness, or area in a pipeline system more susceptible to significant damage, or as information that could interfere with an operator's ability to respond to a discharge of oil, i.e., reducing response resources or interfering with the deployment, direction, or coordination of response resources.

Using this standard, the following are the types of information that PHMSA believes could be used to target and damage pipeline infrastructure and will be withheld as *security-sensitive information* under 60138(a)(2)(B):

**Table of Information to be Redacted from Facility Response Plans as Security-Sensitive Information\*:**

| Description of Information | Examples Included in Category | Examples Excluded from Category |
|---|---|---|
| 1) Operational information pertaining to the safety and security of first responders and personnel. | Evacuation routes, first responder routes, rally points, and other detailed information pertaining to the location of personnel. | None |
| 2) Any operational attribute or label of an above-ground pipeline facility shown on maps, illustration, in narrative, or in other media used by the plan. | Pump Station, Meter Station, Motor Valve, Guard Shack, Oil Separator | Company Name, emergency telephone numbers, non-operational or broad descriptions of the general "function" of a facility |

3

*Effective Date: June 27, 2014*

U.S. Department of Transportation
Pipeline and Hazardous Materials Safety Administration

PHMSA Facility Response Plan Policy
Policy Number: PHMSA 2050.1A

| 3) Location of safety, security, and control systems and their components on maps, in narrative, or other media used by the plan. | Valves, Pressure Regulators, SCADA station, Control Center(s), Pump Station, Intrusion Detection sensors, fences, CCTV cameras, electrical generators, etc. | A facility's perimeter. General location (county/state) of response equipment. |
|---|---|---|
| 4) Locations on maps, in narrative, or other media used by the plan, of high consequence areas[i] (HCAs). | Illustrations, including shaded areas or polygons, identifying high consequence areas. Description or boundaries of HCAs. | General topographic map features, city limits, elevation, most landmarks |
| 5) Diagrams or functional descriptions of pipeline control systems, control system components, and communications/signaling systems used for pipeline control. | Schematic or other diagrams, blueprints, or portrayal or description of control system components and networks. Media and communications systems that can be used to connect these components. | General discussions that a control system exists. |
| 6) Tank battery diagrams and facility piping configuration descriptions. | Maps, diagrams, pictures, or other portrayals of breakout tanks, tank batteries, containment systems, and piping configuration at a tank facility. Tank capacities. Containment system components and capacities. Tank worst case discharge amounts, calculations and locations. | Widely available maps or pictures of tank farm facilities (i.e., Google Map). |
| 7) Security related information, which describes the continued physical security of an operator's facility, perimeter, employees, and surrounding population. | Threat scenarios, facility security and defense structures and procedures, and access control procedures used at facilities in an all hazards environment. Information describing the operator's coordination with government entities for security purposes also will be protected. | None. (Physical security information will be protected.) |
| 8) Information pertaining to the operators continued information security and cyber security operations. This information will be withheld in support of Presidential Policy Directive 21[1]. | Network configurations, control system equipment specifications, SCADA isolation times, and other information technology information that could be | None. (Cyber security information will be protected to ensure adversaries do not gain |

---

[1] Presidential Policy Directive 21 – Critical Infrastructure Security and Resilience

PHMSA Facility Response Plan Policy

*Effective Date: June 27, 2014*

U.S. Department of Transportation                     PHMSA Facility Response Plan Policy
Pipeline and Hazardous Materials Safety Administration        Policy Number: PHMSA 2050.1A

|  | used by an adversary to disrupt continued safe operations. | "insider" information.) |
|---|---|---|
| 9) Values derived from the Worst Case Discharge amounts. | Response capacity values that can be used by an adversary to calculate the Worst Case Discharge. | Only values with a mathematical link back to the Worst Case Discharge will be redacted. |

* Notes: (1) "Security-Sensitive Information" will sometimes overlap with "Sensitive Security Information" ("SSI") under 49 CFR Parts 15 and 1520. The DOT and DHS regulations at Parts 15 and 1520 mandate certain marking and handling measures for SSI, whereas the protection afforded under Section 60138 authorizes PHMSA to redact/withhold the information, including pursuant to a request submitted under the Freedom of Information Act (FOIA). Designation of information as Security-Sensitive Information under Section 60138 does not alleviate the obligation to mark and handle the information -- to the extent it also constitutes SSI -- in accordance with the DOT and DHS regulations at Parts 15 and 1520. (2) In the event that any "security-sensitive information" has been previously made public, PHMSA will consider the circumstances surrounding that prior disclosure in making its determination on whether such information should be redacted, taking into account then-current applicable laws and/or Government standards governing the treatment of previously-disclosed information.

### c. *Specific Resources and Tactical Resource Deployment Plans*
49 U.S.C. § 60138(a)(2)(C) of the Pipeline Safety Act authorizes the Secretary to withhold *specific response resources and tactical resource deployment plans.*

At this time, PHMSA will not withhold information under section 60138(a)(2)(C), but may decide to do so in the future.

### d. *Worst Case Discharge Information*
Section 60138(a)(2)(D) of the Pipeline Safety Act authorizes the Secretary to protect "the specific amount and location of worst case discharges" (as defined in part 194 of title 49, Code of Federal Regulations), including "the process by which an owner or operator determines the worst case discharge."

The pipeline safety regulations (49 CFR § 194.105) require operators to calculate three types of worst case discharge – worst case discharge for pipeline, worst case discharge for breakout tank, and the worst case discharge amount based on the largest historic spill, if it exists. Operators calculate the worst case discharge for pipeline failures and breakout tank failures separately and then select the calculation with the largest volume for final worst case discharge determination.

5

U.S. Department of Transportation
Pipeline and Hazardous Materials Safety Administration

PHMSA Facility Response Plan Policy
Policy Number: PHMSA 2050.1A

PHMSA will also protect information that is inextricably linked to the worst case discharge as being part of the process by which the owner or operator determines the worst case discharge. The worst case discharge is a function of several variables which must be redacted to ensure an adversary cannot work backwards to calculate the worst case discharge. Additionally several of the variables include values that could help an outsider gain "insider information" on the type of safety/security devices used to ensure the continuity and safe operations of the pipeline infrastructure. Such "insider information" could be used by an adversary to increase the effectiveness of a cyber-attack or physical attack.

Therefore, PHMSA will protect the following information concerning worst case discharges:

| Description of Information |
| --- |
| 1) Worst Case Discharge Amounts |
| 2) Worst Case Discharge Location |
| 3) Data inputs to methodology for calculating worst case discharge amounts, including values linked to isolation time, shutdown times, distance between  valves, draindown attributes, breakout tank capacity, maximum release time, maximum flow rate, and other specific data used to calculate worst case discharge amounts. |

---

[i] 49 CFR § 195.450 states that a high consequence area means:  (1) a *commercially navigable waterway*, which means a waterway where a substantial likelihood of commercial navigation exists; (2) a *high population area*, which means an urbanized area, as defined and delineated by the Census Bureau, that contains 50,000 or more people and has a population density of at least 1,000 people per square mile;  (3) an *other populated area*, which means a place as defined and delineated by the Census Bureau, that contains a concentrated population, such as an incorporated or unincorporated city, town, village or other designated residential or commercial area; and (4) an unusually sensitive area, as defined in § 195.6

6

Attachment B

PA PUC Right-to-Know Denial
(Mar. 11, 2019)



COMMONWEALTH OF PENNSYLVANIA
PENNSYLVANIA PUBLIC UTILITY COMMISSION
400 NORTH STREET, HARRISBURG, PENNSYLVANIA 17120

IN REPLY PLEASE
REFER TO OUR FILE

PUC RTK 2019-0007

March 11, 2019

Eric Friedman
2 Fallbrook Lane
Glen Mills, PA 19342

Final response sent via Email only:
Eric.law.friedman@gmail.com

Dear Mr. Friedman:

By this letter, the Pennsylvania Public Utility Commission (Commission or PUC) responds to your Right to Know request filed pursuant to the provisions of Pennsylvania's Right to Know Law (RTKL), 65 P.S. §§ 67.101 et seq., *as amended.* In your request received Monday, February 4, 2019, you stated:

"Background

On January 31, 2019, representatives of the Public Utility Commission appeared at a public meeting in East Goshen Township, Chester County. Event sponsor Rep. Carolyn Comitta provided an opportunity for the public to ask questions and receive PUC responses. During my opportunity at the microphone, I had the following exchange with PUC representative Paul Metro:

Q: You have an estimate of the blast radius that's associated with an accident on an HVL pipeline, yes?
A: We have reviewed the "buffer zone" calculation that's required by federal regulations.
Q: Do *YOU* have an estimate of what that distance looks like?
A: Pardon me, I couldn't hear the...
Q: Do *you* have an estimate of what that distance is?
A: Yes.

A video recording of this exchange is at https://youtu.be/bpbj10JXQOk

Request

Under Pennsylvania's Right-to-Know law, I respectfully request all records in the possession of Paul Metro, his superiors or subordinates, that relate to the calculation or estimation of the range at which thermal or overpressure events related to accidents on hazardous, highly volatile liquids (HVL) pipelines may be experienced. This request does not seek information provided by Sunoco if that information has been designated as confidential security information. Rather, it seeks records containing or related to calculations or estimates of blast radius (Sunoco's term) or

"buffer zone" (PUC's term) regarding accidents or releases from HVL pipelines in the possession of the PUC, including (but not limited to) information that was produced for PUC by an external source or that was developed internally.

Records responsive to this request are requested in electronic format, if they exist in that format (e.g. PDF)."

Your request is denied.

The documents responsive to your request have been designated as confidential security information (CSI), and therefore, as your request indicated, you are not seeking such documents. To the extent that your request does seek such documents, the Commission must deny your request, since the documents are designated CSI. Additionally, the documents are part of a noncriminal investigation and therefore are exempt from disclosure under the RTKL.

The Public Utility Confidential Security Information Disclosure Protection Act (PUCSIDPA) (35 P.S. §§ 2141.1 – 2141.8) prohibits disclosure of "Confidential Security Information" (CSI). 35 P.S. § 2141.2 (Definitions). CSI is "information contained within a record maintained by an agency in any form, the disclosure of which would compromise security against sabotage or criminal or terrorist acts and the non-disclosure of which is necessary for the protection of life, safety, public property or public utility facilities." 35 P.S § 2141.2. The documents requested were designated as CSI and are not disclosable.

In addition, the RTKL provides for exemptions for CSI. The RTKL prohibits disclosure of records that "would be reasonably likely to jeopardize or threaten public safety" or "which creates a reasonable likelihood of endangering the safety or the physical security of a … public utility, resource, infrastructure, [or] facility," including "infrastructure records that expose or create a vulnerability through disclosure." 65 P.S. § 67.708(b)(2) and (3). Therefore, the documents requested are not disclosable under the RTKL.

Finally, the documents are exempt from disclosure pursuant to the noncriminal investigation provision of the RTKL (65 P.S. § 67.708(b)(17)), which exempts from disclosure "records of an agency relating to a noncriminal investigation," including "investigative materials, notes, correspondence and reports," and records that would "reveal the institution, progress or result of an agency investigation." 65 P.S. § 67.708(b)(17).

For all of the reasons stated, the records requested are exempt from disclosure.

This response constitutes the final response of the Commission to your RTK Law Request.

### NOTICE OF RIGHT TO APPEAL

If you believe the PUC has wrongfully denied any part of your request, you may appeal within 15 business days from the date of this letter to:

Office of Open Records
16th Floor
333 Market Street
Harrisburg, PA  17126-0333

    <u>If you choose to file an appeal, you must do so within 15 business days of the mailing date of the agency's response</u>.  65 P.S. § 67.1101.  Please note that a copy of your original Right-to-Know request and this denial letter must be included when filing an appeal.  The law also requires that you state the reasons why the record is a public record and address the reasons the Agency denied your request.  Visit the Office of Open Records website at http://openrecords.pa.gov for further information on filing an appeal.

    Please be advised that this correspondence will serve to close this record with our office as permitted by law.

          Sincerely,

          Rosemary Chiavetta
          Secretary and Right to Know Officer
          Pa Public Utility Commission

cc:    Steven Bainbridge, PUC Assistant Counsel
       Right to Know File PUC RTK 2019-0007

Attachment C

Affidavit of Paul J. Metro
(Apr. 15, 2019)

OOR AP 2019-0502

## COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF OPEN RECORDS

| | | |
|---|---|---|
| Eric Friedman | : | |
| v. | : | **OOR AP 2019-0502** |
| Pennsylvania Public Utility Commission | : | |

## AFFIDAVIT OF
## PAUL J. METRO, MANAGER
## OFFICE OF THE SAFETY DIVISION, PIPELINE SAFETY SECTION
## PENNSYLVANIA PUBLIC UTILITY COMMISSION

---

Before me, the undersigned notary public, this day, April 15, 2019, personally appeared Paul J. Metro, Manager of the Safety Division, Pipeline Safety Section of the Pennsylvania Public Utility Commission, to me known, who being duly sworn according to law, deposes the following:

I, **Paul J. Metro**, say that I am authorized to make this affidavit on behalf of the Pennsylvania Public Utility Commission (Commission or PUC), being an employee of the Commission as Manager of the Safety Division, Pipeline Safety Section, and having the responsibility for investigating, analyzing, and responding to pipeline safety issues in Pennsylvania, and having knowledge of the facts relevant to the present matter, the facts set forth are true and correct to the best of my knowledge, information and belief, and I expect to be able to prove the same at any hearing hereof, attest as follows:

1) In my capacity as Manager of the Safety Division, Pipeline Safety Section of the Commission, I oversee Commission investigations of gas and hazardous volatile liquid pipelines.

2) On or about April 1, 2017, the Commission commenced an official investigation of the "Mariner East 1" (ME1) pipeline under my oversite.  The investigation is active and has been ongoing since that time.  On December 13, 2018, the Commission's Bureau of Investigation and Enforcement (BIE) filed a Formal Complaint C-2018-3006534 against Sunoco Pipeline L.P. a/k/a Energy Transfer Partners (Sunoco) to continue this investigation.  This proceeding is active and ongoing.

3) The Commission also has these additional investigations of Sunoco pipelines: March 2018 Investigation of ME1 ("Lisa Drive" Investigation of ME1); Investigation of "Mariner East 2" (ME2); and July 2018 Investigation of "Mariner East 2 – Bypass) (ME2-bypass).  All of these investigations are active and ongoing.

4) The Commission records that "relate to the calculation or estimation of the range at which thermal or overpressure events related to accidents on hazardous, highly volatile liquids (HVL) pipelines may be experienced," (also described as "containing or related to calculations or estimates of blast radius (Sunoco's term) or "buffer zone" (PUC's term) regarding accidents or releases from HVL pipelines in the possession of the PUC, including (but not limited to)

OOR AP 2019-0502

information that was produced for PUC by an external source or that was developed internally")
(that is, the requested records), consist of the following, all filed with the Commission by Sunoco
Pipeline L.P. a/k/a Energy Transfer Partners (and marked as Confidential by Sunoco).  These
records are part of the active and ongoing investigations of these pipelines.  These records were
produced to the Commission by Sunoco and are marked as confidential.

> Hazard Assessment for ME1
> Date: 12-17-2013
> Pages: 56
>
> Hazard Assessment for proposed ME2 Pipeline
> Date 3-27-2017
> Pages: 67
>
> Hazard Assessment for Re-route of ME2 near Chester & Delaware County
> Date: 10-5-2018
> Pages: 33

5) In addition to the three reports indicated in paragraph four, the Commission has requested
records in the form of Inspection Reports created by Commission Safety Staff in which there are
references and reviews of these Hazard Assessments.  These Inspection Reports are part of the
active and ongoing investigations indicated above.

6) The Commission does not have any requested records other than records that are part of these
Commission's investigations.

7) The requested records are "Confidential Security Information" within the meaning of The
Public Utility Confidential Security Information Disclosure Protection Act (PUCSIDPA) (35
P.S. §§ 2141.1 – 2141.8).  In my professional opinion, disclosure of the requested records would
compromise security against sabotage or criminal or terrorist acts, and non-disclosure is
necessary for the protection of life, safety, public property or public utility facilities.

8) I based my opinion on the definition of "confidential security information" contained in
PUCSIDPA and on that there are reasonable grounds to believe disclosure may result in a safety
risk, including the risk of harm to any person, or mass destruction.

9) In my professional opinion, release of the requested records would compromise security
against sabotage or criminal or terroristic acts regarding pipeline facilities by illustrating the
extent of the impact zone, including casualty and damage assessments at various ranges,
regarding an accident (or sabotage event) on a pipeline.  These Reports and Inspection Reports
explicitly provides how such an assessment can be made (as well as the assessment for this
particular pipeline); information which could clearly be used by a terrorist to plan an attack a
pipeline (and particularly on these Sunoco pipelines, as they contains the specific operating
parameters of the pipelines) to cause the greatest possible harm and mass destruction to the
public living near such facilities.

10) In my professional opinion, release of the requested records would allow for awareness of
the potential effectiveness of a sabotage act on a pipeline (and in particular on these pipelines) to

harm the public and create mass destruction, thereby potentially inciting such acts and creating a great risk to public safety.

11) I arrived at my professional opinion that the requested records are Confidential Security Information in consultation with numerous other technical gas safety staff at the Commission, all of which agree with my professional assessment.

Paul J. Metro
Manager of the Safety Division
Pipeline Safety Section
Pennsylvania Public Utility Commission

Subscribed and sworn to before me this
April 15, 2019.

Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Joanna McElroy, Notary Public
City of Harrisburg, Dauphin County
My Commission Expires May 12, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Page **3** of **3**

Attachment D

Letter to PHMSA from Sunoco Submitting the Stantec Report
(Jul. 6, 2018)



4041 Market St
Aston, PA 19014-3197

July 6, 2018

US Department of Transportation
Pipeline and Hazardous Materials Safety Administration
PHMSA Eastern Region
820 Bear Tavern Road, Suite 103
West Trenton, NJ 08628
Attn: A. Breen, M. Valerio, C. Sellu, B. Small, J. Klesin, R. Burrough

**RE: Data Request: 6/22/18 ME-1 Activity # 158920 Request Items**

Gentlemen,

This letter and related data files  referenced as supporting documents are provided in response to the information request for documents and ILI Data submitted as part of the Energy Transfer Partners / Sunoco Pipeline LP (ETP/SPLP) PHMSA Activity # 158920 Sunoco Pipeline I05 Inspection of Cathodic Protection, Integrity Management and Mariner East 1 Refurbishment Project.

As described below, the information, responses and documents (collectively the "Production"), regardless of form or format, is provided conditioned upon the Production being treated according  to available and applicable federal and state confidentiality, proprietary, and infrastructure security treatments and procedures as specified below.

As to the Production to the Pipeline and Hazardous Materials Safety Administration ("PHMSA"), pursuant to 49 CFR §105.30, Sunoco Pipeline L.P. (SPLP) contends that the information contained in the enclosed documents (referenced above) being provided in electronic data file copy with this letter, and other similar information that may be provided by ETP/SPLP in the future related to the ongoing inspection, are confidential and proprietary.  We are not sending a second copy of the original with the confidential information deleted in accordance with paragraph (2) of Section 105.30 because we consider all of the information in the attached to be confidential.  The attached data files are being submitted at PHMSA's request but subject to ETP/SPLP's request for confidential treatment under 5 U.S.C. 552(b)(4) as incorporated by reference in and modified by the statute and/or regulation under which the information is being submitted.  This letter is based on knowledge, information and reasonable belief that the attached information is not known to have been disclosed or become available outside ETP/SPLP or related entities in the format or to the extent provided in the attached. Accordingly, we have marked the attached materials "Proprietary and Confidential Information" in bold font in the attached and will follow a similar procedure going forward, where it is deemed appropriate.

We appreciate your consideration of this request to maintain confidentiality. Please let us know if you require further information from us or would like to discuss this further.

Respectfully Submitted,

Garrett A. Ray

Digitally signed by Garrett A. Ray
Date: 2018.07.06 13:56:03 -04'00'

Garrett Ray
Specialist, Regulatory Compliance
Energy Transfer Partners / Sunoco Pipeline L.P.

cc :    A. Kravatz, T. Nardozzi, D. Nichols,  J. Perez, J. Dresh,
         C. Lason, Curt Stambaugh, Thomas Sniscak

Proprietary and Confidential Information

Attachment E

Letter to PHMSA from Sunoco Submitting the Stantec Report
(Nov. 2, 2018)



4041 Market Street
Aston, PA 19014

Pennsylvania Public Utility Commission
Gas Safety Division
Attn: Mr. Robert Horensky, Mr. Paul Metro, Mr. Michael Swindler
Commonwealth Keystone Building
Harrisburg, PA, 17105-3265

US Department of Transportation
Pipeline and Hazardous Materials Safety Administration
PHMSA Eastern Region
820 Bear Tavern Road, Suite 103
West Trenton, NJ 08628
Attn: Mr. Joe Klesin, Mr. Barry Small, Mr. Rob Burrough, Mr. Steve Nanney

November 2, 2018

RE:     PHMSA and PUC Inspection Meeting 10/10-11/2018 Data Request
        PTBR-MNTL 12 (GRE) Product Change and Flow Reversal Inspection

        This letter and attachments referenced and transmitted as supporting documents are provided in response to the information request for documents, data, maps and records files submitted as part of the Sunoco Pipeline L.P. (SPLP) reply to the subject PA PUC Data Request. PHMSA and PUC conducted an inspection of the PTBR-MNTL 12 Inch Pipeline Product Change and Flow Reversal on October 10 and 11, 2018. This submittal is in response to the data request submitted as a handwritten request for information at the inspection conclusion.

        As described below, the information, responses and documents (collectively the "Production"), regardless of form or format, is provided conditioned upon the Production being treated according to available and applicable federal and state confidentiality, proprietary, and infrastructure security treatments and procedures as specified below.

        As to the Production to the Pipeline and Hazardous Materials Safety Administration ("PHMSA"), pursuant to 49 CFR §105.30, SPLP contends that the information contained in the enclosed documents (referenced above) being provided in electronic data file copy via USB Flash Drive, and other similar information that may be provided by ET/SPLP in the future are confidential and proprietary. We are not sending a second copy of the original with the confidential information deleted in accordance with paragraph (2) of Section 105.30 because we consider all of the information in the attached to be confidential. The attached data file is being submitted at PHMSA's request but subject to ET/SPLP's request for confidential treatment under 5 U.S.C. 552(b)(4) as incorporated by reference in and modified by the statute and/or regulation under which the information is being submitted. This letter is based on knowledge, information and reasonable belief that the attached information is not known to have been disclosed or become available outside ET/SPLP or related entities in the format or to the extent provided in the attached. Accordingly, we have marked the attached materials "Proprietary and Confidential Information" in bold font in the attached and will follow a similar procedure going forward, where it is deemed appropriate.



4041 Market St
Aston, PA 19014-3197

**PHMSA and PUC Inspection Meeting 10/10-11/2018 Data Request**

As to the Production to the Pennsylvania Public Utility Commission ("PaPUC"), SPLP has marked in bold font in the attached, and hereby notifies, and requests treatment of the Production as confidential and proprietary as (1) Confidential Security Information  not subject to disclosure to third parties under the  provisions and procedures specified in the 'The Public Utility Confidential Security Information Disclosure Protection Act' (35 P.S. §§2141.1 to 2141.6) and the PUC's regulations implementing such Act at 52 Pa.Code §§102.1 -102.4, and (2) that in addition no disclosure of the Production shall  occur by the PaPUC's investigators who receive the Production without allowing ET / SPLP to obtain a Protective Agreement, from the bureau or bureaus functioning as the PaPUC's investigators, in the form and content that the Bureau of Investigation and Enforcement commonly signs with public utilities regarding confidential and proprietary information where there is no Protective Order in place.

Due to some of the data requested being related to CIS Survey that was being conducted, lab testing that is being conducted and paper record archival search which is ongoing, , SPLP respectfully requests additional time until 11/16/2018 to provide the data requested for Items 2 c.), 3, 9 and 11.

We appreciate your consideration of this request to maintain confidentiality. Please let us know if you require further information from us or would like to discuss this further.

Respectfully Submitted,

Albert Kravatz
Sr. Specialist, Regulatory Compliance

cc:     T. Nardozzi, D. Nichols, J. Perez; C. Stambaugh, T. Sniscak, C. Lason, C, Sonneborn,
        J. Street, G. McIlwain, J. Legge, R. Smith, J. Shuler, L. Jensen

**Proprietary and Confidential Information**
**Confidential Security Information not subject to Disclosure to third parties under the provisions and procedures specified in the 'The Public Utility Confidential Security Information Disclosure Protection Act' (35 P.S. §§ 2141.1 to 2141.6) and the PUC's regulations implementing such Act al 52 Pa. Code §§ I 02.1 -I 02.4.**

2

Attachment F

Email to PHMSA from Troutman Sanders on behalf of Sunoco
(Jun. 5, 2019)

| | |
|---|---|
| **From:** | Little, Catherine D. |
| **Sent:** | Wednesday, June 5, 2019 6:03 PM |
| **To:** | Agboola, Ajoke (PHMSA); Pittman, Forrest (PHMSA) |
| **Cc:** | Cook, Annie |
| **Subject:** | RE: CPF 1-2019-5006 |
| **Attachments:** | CONFIDENTIAL CPF 1-2019-5006 NOPV PCO (SSI Highlighted).pdf |

Ajoke and Forrest,

Thank you for the call yesterday and your email this afternoon regarding the above referenced matter. Attached please find the Notice of Probable Violation (NOPV) issued by PHMSA and received on May 20, 2019 that quotes directly from material that Sunoco Pipeline, L.P. (Sunoco or SPLP) submitted to the Agency clearly and expressly marked as "Proprietary and Confidential Information" and "Confidential Security Information not subject to Disclosure." Sunoco considers this information to be proprietary generally, but most importantly for Freedom of Information Act (FOIA) purposes, the Company believes that it is protected from public disclosure under FOIA as sensitive homeland security information pursuant to 5 U.S.C. § 552(b)(7) (referred to generally as FOIA Exemption 7).

Courts have consistently applied FOIA exemption 7 to protect this type of information for homeland security purposes. Along those lines, the dispersion analysis information that is expressly quoted is in line with information that PHMSA usually redacts from Facility Response Plans, such as worst case discharge information. For those reasons, and in order to further focus the Agency's review of this information, the attached copy of the NOPV highlights the relevant portions of the analysis and spill modeling (on pp. 4 and 5) that should be protected from public disclosure under FOIA. Specifically, and as we discussed, Sunoco requests that the highlighted information be redacted from the NOPV or that the NOPV be revised or reissued without reference to that information due to national security concerns with having that information in the public domain.

In addition, Sunoco requested the Pipeline Safety Violation Report (PSVR) in this matter on May 31, 2019, but has not yet received it. To the extent that the PSVR quotes the dispersion analyses or attaches portions of them as exhibits, on behalf of Sunoco, we request that information be redacted as well in the event that it is the subject of a FOIA request.

We look forward to hearing from you.

**Catherine D. Little**
**troutman** sanders
Direct: 404.885.3056 | Mobile: 404.932.4685
catherine.little@troutman.com

---

**From:** Agboola, Ajoke (PHMSA)
**Sent:** Wednesday, June 5, 2019 5:26 PM
**To:** Little, Catherine D. ; Cook, Annie

**Cc:** Pittman, Forrest (PHMSA)
**Subject:** RE: CPF 1-2019-5006Nardozzi, Todd G

Hello Catherine,

Yesterday when we spoke, our discussion focused on Energy Transfer's objection to the Stantec and Dynamic Risk report quotes in Item 2 of the NOPV. Can you please confirm that that is the only thing Energy Transfer is asserting a sensitive security information challenge to. Alternatively, can you highlight the language that Energy Transfer believes should be protected. This will help focus our review. Thank you.

All the best,
**Y. Ajoke Agboola**
Attorney Advisor
Office of Chief Counsel
Pipelines and Hazardous Materials Safety Administration
U.S. Department of Transportation
1200 New Jersey Avenue, SE
Room E26-206
Washington, DC 20590
Office: 202.366.8730
Cell: 202.807.8845

**PRIVILEGED & CONFIDENTIAL**: This e-mail, including any attachments, is confidential, intended only for the named recipient(s) above and may contain information that is privileged, confidential, attorney work product or otherwise legally protected. If you have received this message in error, or are not the named recipient(s), please immediately notify me and permanently delete this e-mail message and any attachments from your workstation and/or network mail system.

---

**From:** Little, Catherine D. [mailto:Catherine.Little@troutman.com]
**Sent:** Monday, June 3, 2019 10:54 PM
**To:** Agboola, Ajoke (PHMSA) <yewande.agboola@dot.gov>
**Cc:** Nardozzi, Todd G <TODD.NARDOZZI@energytransfer.com>; Pittman, Forrest (PHMSA) <forrest.pittman@dot.gov>; Lason, Chris <Chris.Lason@energytransfer.com>; Mcilwain, Gregory (Greg) <Gregory.Mcilwain@energytransfer.com>; Burrough, Robert (PHMSA) <robert.burrough@dot.gov>
**Subject:** Re: CPF 1-2019-5006

Thank you, Ajoke. I will give you or Forrest a call tomorrow.

Sent from my iPhone

**Catherine D. Little**
**troutman** sanders
Direct: 404.885.3056 | Mobile: 404.932.4685
catherine.little@troutman.com

On Jun 3, 2019, at 4:09 PM, Agboola, Ajoke (PHMSA) <yewande.agboola@dot.gov> wrote:

Hello Todd,

We are both free tomorrow afternoon from 1pm – 4pm. Catherine can call either of us. Thanks!

All the best,
**Y. Ajoke Agboola**
Attorney Advisor
Office of Chief Counsel
Pipelines and Hazardous Materials Safety Administration
U.S. Department of Transportation
1200 New Jersey Avenue, SE
Room E26-206
Washington, DC 20590
Office: 202.366.8730
Cell: 202.807.8845

**PRIVILEGED & CONFIDENTIAL**: This e-mail, including any attachments, is confidential, intended only for the named recipient(s) above and may contain information that is privileged, confidential, attorney work product or otherwise legally protected. If you have received this message in error, or are not the named recipient(s), please immediately notify me and permanently delete this e-mail message and any attachments from your workstation and/or network mail system.

**From:** Nardozzi, Todd G [mailto:TODD.NARDOZZI@energytransfer.com]
**Sent:** Monday, June 3, 2019 7:42 AM
**To:** Pittman, Forrest (PHMSA) <forrest.pittman@dot.gov>; Lason, Chris <Chris.Lason@energytransfer.com>; Mcilwain, Gregory (Greg) <Gregory.Mcilwain@energytransfer.com>
**Cc:** Agboola, Ajoke (PHMSA) <yewande.agboola@dot.gov>; Burrough, Robert (PHMSA) <robert.burrough@dot.gov>; Catherine.Little (catherine.little@troutmansanders.com) <catherine.little@troutmansanders.com>
**Subject:** RE: CPF 1-2019-5006
**Importance:** High

Mr. Pittman,

Thank you for your email. The NOPV contains CONFIDENTIAL sensitive security information protected from disclosure under FOIA, and that is the basis of our concern about the posting of the NOPV. We would appreciate it if our outside counsel could contact you on Monday to discuss the issue before the NOPV is posted. Can you please respond with your availability.

Thank you,

**Todd Nardozzi**
Sr. Manager
DOT Compliance
Energy Transfer
**O:** 713.989.7126
**C:** 281.229.5579

**From:** Pittman, Forrest (PHMSA) <forrest.pittman@dot.gov>
**Sent:** Friday, May 31, 2019 3:30 PM
**To:** Lason, Chris <Chris.Lason@energytransfer.com>; Nardozzi, Todd G
<TODD.NARDOZZI@energytransfer.com>; Mcilwain, Gregory (Greg)
<Gregory.Mcilwain@energytransfer.com>
**Cc:** Agboola, Ajoke (PHMSA) <yewande.agboola@dot.gov>; Burrough, Robert (PHMSA)
<robert.burrough@dot.gov>
**Subject:** CPF 1-2019-5006

Mr. Nardozzi:

I am following up on your recent conversations with PHMSA Eastern Region personnel
regarding PHMSA's May 17, 2019 Notice of Probable Violation and Proposed Compliance
Order (NOPV) in case CPF 1-2019-5006. In accordance with the Federal Pipeline Safety Laws,
at 49 U.S.C. § 60135, PHMSA makes enforcement information publicly available. PHMSA
achieves this enforcement transparency through posting its documents on the public website.

I understand that Sunoco Pipeline has expressed concerns about portions of the NOPV
referencing information from two Stantec reports that are marked as confidential. We are
reviewing the information in the NOPV for the application of any Freedom of Information Act
(FOIA) exemptions, but as preliminary matter, the standard qualifying required information as
confidential commercial information under FOIA Exemption 4, 5 U.S.C. § 552(b)(4), does not
appear to have been met.

PHMSA plans to post the NOPV as it does in all enforcement cases. Should you have additional
questions or comments, please contact me as soon as possible.

Sincerely,

**Forrest S. Pittman**
Attorney-Advisor
Office of the Chief Counsel
Pipeline and Hazardous Materials Safety Administration
United States Department of Transportation
1200 New Jersey Avenue SE, Zone E-26
Washington, DC 20590
forrest.pittman@dot.gov
Office: (202)366-9885
Cell: (202)430-3641

PRIVILEGED & CONFIDENTIAL: This e-mail, including any attachments, is confidential,
intended only for the named recipient(s) above and may contain information that is privileged,
confidential, attorney work product or otherwise legally protected. If you have received this
message in error, or are not the named recipient(s), please immediately notify me and
permanently delete this e-mail message and any attachments from your workstation and/or
network mail system.

Private and confidential as detailed here. If you cannot access hyperlink, please e-mail sender.

This e-mail message (and any attachments) from Troutman Sanders LLP may contain legally privileged and confidential information solely for the use of the intended recipient. If you received this message in error, please delete the message and notify the sender. Any unauthorized reading, distribution, copying, or other use of this message (and attachments) is strictly prohibited.

Attachment G

Email to Troutman Sanders on behalf of Sunoco from PHMSA
(Jun. 19, 2019)

| | |
|---|---|
| **From:** | Pittman, Forrest (PHMSA) <forrest.pittman@dot.gov> |
| **Sent:** | Wednesday, June 19, 2019 1:22 PM |
| **To:** | Little, Catherine D. |
| **Cc:** | Cook, Annie; Agboola, Ajoke (PHMSA) |
| **Subject:** | RE: CPF 1-2019-5006 |

**EXTERNAL SENDER**

Catherine,

In response to your email below, and to our conversation on June 4, PHMSA has reviewed the information contained in the NOPV and the Violation Report that you identified as sensitive security information.  PHMSA does not consider the information you identified to be Sensitive Security Information (SSI), or other security-related information protected from release under FOIA Exemption 7(F), 5 U.S.C. § 552(b)(7)(F)

It is our understanding that you are not claiming the existence of any confidential business information in the NOPV or Violation Report.  Accordingly, PHMSA plans to post both documents to its enforcement transparency website on June 27. If this is no longer your position, please inform me as soon as possible.

Thank you,


Forrest Pittman
Attorney-Advisor, PHMSA

**PRIVILEGED & CONFIDENTIAL**

**From:** Little, Catherine D. [mailto:Catherine.Little@troutman.com]
**Sent:** Wednesday, June 05, 2019 18:03
**To:** Agboola, Ajoke (PHMSA) <yewande.agboola@dot.gov>; Pittman, Forrest (PHMSA) <forrest.pittman@dot.gov>
**Cc:** Cook, Annie <annie.cook@troutman.com>
**Subject:** RE: CPF 1-2019-5006



Ajoke and Forrest,

Thank you for the call yesterday and your email this afternoon regarding the above referenced matter.  Attached please find the Notice of Probable Violation (NOPV) issued by PHMSA and received on May 20, 2019 that quotes directly from material that Sunoco Pipeline, L.P. (Sunoco or SPLP) submitted to the Agency clearly and expressly marked as "Proprietary and Confidential Information" and "Confidential Security Information not subject to Disclosure."  Sunoco considers this information to be proprietary generally, but most importantly for Freedom of Information Act (FOIA) purposes, the Company believes that it is protected from public disclosure under FOIA as sensitive homeland security information pursuant to 5 U.S.C. § 552(b)(7) (referred to generally as FOIA Exemption 7).

Courts have consistently applied FOIA exemption 7 to protect this type of information for homeland security purposes.  Along those lines, the dispersion analysis information that is expressly quoted is in line with information that PHMSA usually redacts from Facility Response Plans, such as worst case discharge information.  For those reasons, and in order to further focus the Agency's review of this information, the

attached copy of the NOPV highlights the relevant portions of the analysis and spill modeling (on pp. 4 and 5) that should be protected from public disclosure under FOIA.  Specifically, and as we discussed, Sunoco requests that the highlighted information be redacted from the NOPV or that the NOPV be revised or reissued without reference to that information due to national security concerns with having that information in the public domain.

In addition, Sunoco requested the Pipeline Safety Violation Report (PSVR) in this matter on May 31, 2019, but has not yet received it.  To the extent that the PSVR quotes the dispersion analyses or attaches portions of them as exhibits, on behalf of Sunoco, we request that information be redacted as well in the event that it is the subject of a FOIA request.

We look forward to hearing from you.


**Catherine D. Little**
**troutman** sanders
Direct: 404.885.3056 | Mobile: 404.932.4685
catherine.little@troutman.com


---

**From:** Agboola, Ajoke (PHMSA) <yewande.agboola@dot.gov>
**Sent:** Wednesday, June 5, 2019 5:26 PM
**To:** Little, Catherine D. <Catherine.Little@troutman.com>; Cook, Annie <annie.cook@troutman.com>
**Cc:** Pittman, Forrest (PHMSA) <forrest.pittman@dot.gov>
**Subject:** RE: CPF 1-2019-5006Nardozzi, Todd G <TODD.NARDOZZI@energytransfer.com>

Hello Catherine,

Yesterday when we spoke, our discussion focused on Energy Transfer's objection to the Stantec and Dynamic Risk report quotes in Item 2 of the NOPV. Can you please confirm that that is the only thing Energy Transfer is asserting a sensitive security information challenge to. Alternatively, can you highlight the language that Energy Transfer believes should be protected. This will help focus our review. Thank you.

All the best,
**Y. Ajoke Agboola**
Attorney Advisor
Office of Chief Counsel
Pipelines and Hazardous Materials Safety Administration
U.S. Department of Transportation
1200 New Jersey Avenue, SE
Room E26-206
Washington, DC 20590
Office: 202.366.8730
Cell: 202.807.8845


**PRIVILEGED & CONFIDENTIAL**:  This e-mail, including any attachments, is confidential, intended only for the named recipient(s) above and may contain information that is privileged, confidential, attorney work product or otherwise legally protected.  If you have received this message in error, or are not the named recipient(s), please immediately notify me and permanently delete this e-mail message and any attachments from your workstation and/or network mail system.

**From:** Little, Catherine D. [mailto:Catherine.Little@troutman.com]
**Sent:** Monday, June 3, 2019 10:54 PM
**To:** Agboola, Ajoke (PHMSA) <yewande.agboola@dot.gov>
**Cc:** Nardozzi, Todd G <TODD.NARDOZZI@energytransfer.com>; Pittman, Forrest (PHMSA) <forrest.pittman@dot.gov>; Lason, Chris <Chris.Lason@energytransfer.com>; Mcilwain, Gregory (Greg) <Gregory.Mcilwain@energytransfer.com>; Burrough, Robert (PHMSA) <robert.burrough@dot.gov>
**Subject:** Re: CPF 1-2019-5006

Thank you, Ajoke. I will give you or Forrest a call tomorrow.

Sent from my iPhone


## Catherine D. Little
**troutman** sanders
Direct: 404.885.3056 | Mobile: 404.932.4685
catherine.little@troutman.com



On Jun 3, 2019, at 4:09 PM, Agboola, Ajoke (PHMSA) <yewande.agboola@dot.gov> wrote:

Hello Todd,

We are both free tomorrow afternoon from 1pm – 4pm. Catherine can call either of us. Thanks!

All the best,
**Y. Ajoke Agboola**
Attorney Advisor
Office of Chief Counsel
Pipelines and Hazardous Materials Safety Administration
U.S. Department of Transportation
1200 New Jersey Avenue, SE
Room E26-206
Washington, DC 20590
Office: 202.366.8730
Cell: 202.807.8845


PRIVILEGED & CONFIDENTIAL:  This e-mail, including any attachments, is confidential, intended only for the named recipient(s) above and may contain information that is privileged, confidential, attorney work product or otherwise legally protected.  If you have received this message in error, or are not the named recipient(s), please immediately notify me and permanently delete this e-mail message and any attachments from your workstation and/or network mail system.

**From:** Nardozzi, Todd G [mailto:TODD.NARDOZZI@energytransfer.com]
**Sent:** Monday, June 3, 2019 7:42 AM
**To:** Pittman, Forrest (PHMSA) <forrest.pittman@dot.gov>; Lason, Chris <Chris.Lason@energytransfer.com>; Mcilwain, Gregory (Greg) <Gregory.Mcilwain@energytransfer.com>
**Cc:** Agboola, Ajoke (PHMSA) <yewande.agboola@dot.gov>; Burrough, Robert (PHMSA)

<robert.burrough@dot.gov>; Catherine.Little (catherine.little@troutmansanders.com)
<catherine.little@troutmansanders.com>
**Subject:** RE: CPF 1-2019-5006
**Importance:** High

Mr. Pittman,

Thank you for your email.  The NOPV contains CONFIDENTIAL sensitive security information protected from disclosure under FOIA, and that is the basis of our concern about the posting of the NOPV.  We would appreciate it if our outside counsel could contact you on Monday to discuss the issue before the NOPV is posted.  Can you please respond with your availability.

Thank you,

<image001.jpg>                               <image003.jpg>

**Todd Nardozzi**
Sr. Manager
DOT Compliance
Energy Transfer

**O:** 713.989.7126
**C:** 281.229.5579

---

**From:** Pittman, Forrest (PHMSA) <forrest.pittman@dot.gov>
**Sent:** Friday, May 31, 2019 3:30 PM
**To:** Lason, Chris <Chris.Lason@energytransfer.com>; Nardozzi, Todd G
<TODD.NARDOZZI@energytransfer.com>; Mcilwain, Gregory (Greg)
<Gregory.Mcilwain@energytransfer.com>
**Cc:** Agboola, Ajoke (PHMSA) <yewande.agboola@dot.gov>; Burrough, Robert (PHMSA)
<robert.burrough@dot.gov>
**Subject:** CPF 1-2019-5006

Mr. Nardozzi:

I am following up on your recent conversations with PHMSA Eastern Region personnel regarding PHMSA's May 17, 2019 Notice of Probable Violation and Proposed Compliance Order (NOPV) in case CPF 1-2019-5006. In accordance with the Federal Pipeline Safety Laws, at 49 U.S.C. § 60135, PHMSA makes enforcement information publicly available.  PHMSA achieves this enforcement transparency through posting its documents on the public website.

I understand that Sunoco Pipeline has expressed concerns about portions of the NOPV referencing information from two Stantec reports that are marked as confidential.  We are reviewing the information in the NOPV for the application of any Freedom of Information Act (FOIA) exemptions, but as preliminary matter, the standard qualifying required information as confidential commercial information under FOIA Exemption 4, 5 U.S.C. § 552(b)(4), does not appear to have been met.

PHMSA plans to post the NOPV as it does in all enforcement cases. Should you have additional questions or comments, please contact me as soon as possible.

Sincerely,

**Forrest S. Pittman**
Attorney-Advisor
Office of the Chief Counsel
Pipeline and Hazardous Materials Safety Administration
United States Department of Transportation
1200 New Jersey Avenue SE, Zone E-26
Washington, DC 20590
forrest.pittman@dot.gov
Office: (202)366-9885
Cell: (202)430-3641

**PRIVILEGED & CONFIDENTIAL**:  This e-mail, including any attachments, is confidential, intended only for the named recipient(s) above and may contain information that is privileged, confidential, attorney work product or otherwise legally protected.  If you have received this message in error, or are not the named recipient(s), please immediately notify me and permanently delete this e-mail message and any attachments from your workstation and/or network mail system.

Private and confidential as detailed here. If you cannot access hyperlink, please e-mail sender.

---

This e-mail message (and any attachments) from Troutman Sanders LLP may contain legally privileged and confidential information solely for the use of the intended recipient. If you received this message in error, please delete the message and notify the sender. Any unauthorized reading, distribution, copying, or other use of this message (and attachments) is strictly prohibited.

---

This e-mail message (and any attachments) from Troutman Sanders LLP may contain legally privileged and confidential information solely for the use of the intended recipient. If you received this message in error, please delete the message and notify the sender. Any unauthorized reading, distribution, copying, or other use of this message (and attachments) is strictly prohibited.

Attachment H

Letter to PHMSA from Troutman Sanders on behalf of Sunoco
(Jun. 24, 2019)

Troutman Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308-2216



troutman.com

**Catherine D. Little**
catherine.little@troutman.com

June 24, 2019

**By Electronic Mail**

Mr. Forrest Pittman, Esq.
Attorney-Advisor
Pipeline and Hazardous Materials Safety Administration
U.S. Department of Transportation
1200 New Jersey Avenue, SE
Washington, DC 20590

**Re:     PHMSA NOPV CPF 1-2019-5006**

Dear Mr. Pittman:

On behalf of Sunoco Pipeline, L.P. (SPLP), this is to respond to your email correspondence dated June 19, 2019, in which the Pipeline and Hazardous Materials Safety Administration (PHMSA or the Agency) indicated that it does not consider the confidential sensitive security information identified by SPLP to be subject to protection under the Freedom of Information Act (FOIA) exemption 7, 5 U.S.C. § 552(b)(7)(F).  The Agency further indicated that it intends to publicly post documents containing the information on June 27, 2019.  SPLP respectfully disagrees and requests that the Agency reconsider the issue.  Because of the sensitive and confidential nature of the homeland security issues presented, we are copying Chief Counsel Paul Roberti on this letter.[1]

The Notice of Probable Violation (NOPV) in question was received by SPLP on May 20, 2019.  As issued, the NOPV included quotes taken from spill dispersion reports that SPLP had previously submitted to the Agency clearly marked as proprietary, confidential and sensitive security information not subject to disclosure.  Further, the same quotes are included in the underlying Pipeline Safety Violation Report (PSVR) upon which the NOPV is based.  *See NOPV and PSVR, enclosed as Attachments 1 and 2* (with the confidential sensitive security information highlighted).  In particular, the information quoted includes dispersion analysis predictions associated with a

---

[1] Similarly, we request that PHMSA treat this submission as confidential, as it addresses confidential security information protected from disclosure under the Freedom of Information Act, and/or as enforcement confidential.



specific pipeline regarding thermal radiation modelling consequences to a degree of feet that would be impacted in the event of a release.

As you know, when an operator submits information to the Agency marked as confidential, the Department of Transportation (DOT) and PHMSA rules require the Agency to maintain that information as confidential unless and until it is the subject of a request for disclosure. *49 C.F.R. Part 7; 49 C.F.R. Part 190.343* ("when you submit information to PHMSA […], we may make that information publicly available <u>unless you ask that we keep the information confidential</u>") (emphasis added).

If a FOIA request for disclosure is subsequently received that includes information marked as confidential and protected, the Agency is then required by law to contact the operator and request that it substantiate its claims that the information meets one of FOIA's express exemptions. *49 C.F.R. Part 7.23(b)* ("DOT makes reasonably described records available upon request from a member of the public […] except to the extent that the records contain information exempt […]."); *49 C.F.R. Part 7.29(a)* ("DOT notifies the submitter expeditiously and asks the submitter to submit any written objections to release"). If the Agency does not believe the information is protected by one of FOIA's various exemptions, then it is obligated to provide a written explanation to the operator, specifying its grounds for proceeding to disclose information claimed as confidential. *49 C.F.R. Part 7.29(b); 49 C.F.R. Part 190.343(b)*.

None of that established practice or procedure was followed by PHMSA in this case. To be clear, the information has not been the subject of a FOIA request. In this instance, the Agency improperly offers for public consumption in a NOPV information expressly marked by the operator as confidential proprietary security information. That information should have been maintained separately from public documents or, at a minimum, SPLP should have been asked to substantiate its claim in advance. The mistake was discussed with the Agency by telephone on June 4, 2019 and proposed redactions were provided by email on June 5, 2019. Instead of simply correcting it by reissuing or redacting the NOPV to exclude the confidential sensitive information, the Agency responded by email dated June 19, 2019 that concluded – without justification or further explanation – that it has a right to and intends to include and disclose the marked information "on June 27." *See Attachment 3 (email exchange between counsel for PHMSA and SPLP).*

That decision is simply not supported by law. The Agency did not even provide an explanation of why it believed both DOT's FOIA and PHMSA procedural rules should not apply in this instance. Further, it did not request that SPLP substantiate its claim. The Agency instead now proposes to post the NOPV on its website on June 27, 2019, at which time it will be publicly available, when the information itself is not necessary or critical to the enforcement allegations. To our knowledge, PHMSA has never before included confidential security information of this type in a NOPV, especially when the material was clearly marked as such.



SPLP's dispersion analysis information that was submitted to PHMSA and expressly marked as confidential security information could be used by those with ill intent against the American public and could endanger the physical safety of the public.  As such, it is the type of information that PHMSA typically redacts from Facility Response Plans when they are made public (including specific discussion of worst-case discharge information) and the type of information that PHMSA has redacted from spill-model discussions.  FOIA Exemption 7(F) protects information compiled for law enforcement purposes that if released "could reasonably be expected to endanger the life or physical safety of any individual."  *5 U.S.C. § 552(b)(7)(F); 49 C.F.R. Part 7.23(c)(7)(vi)*.  Courts have consistently applied FOIA Exemption 7(F) to protect this type of information for homeland security purposes.  <u>Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers</u>, 249 F.Supp.32 516 (D.D.C. 2017) (holding that PHMSA redactions to "spill-model discussions," including spill-risk scores and predictions of the volume of product released, were protected from public disclosure); <u>Pub. Emps. For Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico</u>, 740 F.3d 195, 200, 206 (D.C. Cir. 2014) (holding that inundation maps that displayed downstream areas and populations that would be affected if certain dams were to fail, the estimated time involved, and the peak flow times should be withheld under Exemption 7(F)).

The District Court in <u>Standing Rock</u> explained that its conclusion to protect certain "spill-model discussions" was consistent with both the D.C. Circuit's and Supreme Court Justice Alito's conclusion that "*in Exemption 7(F) cases involving documents relating to critical infrastructure, it is not difficult to show that disclosure may endanger the life or physical safety of any individual*." <u>Standing Rock Sioux Tribe</u>, 249 F.Supp.32 516 (citing <u>Pub. Emps. for Envtl. Responsibility</u>, 740 F.3d at 205–06 (quoting <u>Milner v. Dep't of Navy</u>, 562 U.S. 562, 582, 131 S.Ct. 1259, 179 L.Ed.2d 268 (2011) (Alito, J., concurring))).  Further, the D.C. Circuit in <u>PEER</u> explained that the inundation maps were protected because they "*would give anyone seeking to cause harm the ability to deduce the zones and populations most affected by dam failure*," and would allow "*[t]errorists or criminals*" to "*use that information to determine whether attacking a dam would be worthwhile, which dam would provide the most attractive target, and what the likely effect of a dam break would be*." <u>Pub. Emps. for Envtl. Responsibility</u>, 740 F.3d at 206 (D.C. Cir. 2014) at 206 (cited in <u>Standing Rock</u>, which noted "the spill-model discussions are much like the inundation maps").

In this case, the information in issue clearly presents potential homeland security concerns.  That fact alone should suggest protection under Exemption 7 of FOIA, at 5 U.S.C. § 552(b)(7)(F) (as should the Supreme Court's recent decision that lends further credence to taking a broader view to protect confidential information, in <u>Food Marketing Institute v. Argus Leader Media</u>, S.Ct. No. 18-481 (Decided June 24, 2019)).  Further, the manner in which this issue has arisen is inconsistent with both PHMSA and FOIA procedure and practice.  It was improper for PHMSA to include quotes from documents designated as confidential security information in a NOPV that would become part of the public record.  But for that mistake by the Agency, there would be no need to make – or repeat – this request.  PHMSA should correct its mistake, or at least provide a legal basis for its decision not to recognize established FOIA exemptions and not to follow established PHMSA procedure for handling confidential information.

June 24, 2019
Page 4



---

We would appreciate a written response on this issue as soon as possible and we would be happy to meet to discuss this issue further.  Until the issue is resolved, however, we respectfully request that PHMSA refrain from posting the NOPV in an unredacted form on the Agency's website.

Sincerely,

Catherine D. Little

Attachments

cc:     Paul Roberti, PHMSA Chief Counsel
        Ajoke Agboola, PHMSA Attorney Advisor
        Greg Mcilwain, VP Operations, Energy Transfer
        Dawn McGuire, Assistant General Counsel, Energy Transfer
        Curt Stambaugh, Assistant General Counsel, Energy Transfer

Attachment I

Letter to Troutman Sanders on behalf of Sunoco from PHMSA
(Nov. 6, 2019)



U.S. Department
of Transportation

Pipeline and Hazardous Materials
Safety Administration

1200 New Jersey Ave., SE
Washington, DC 20590

Transmitted via Electronic Mail to Catherine.Little@troutman.com – Read Receipt Requested

Date: November 6, 2019

Ms. Catherine D. Little
Troutman Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308-2216

> **Re:   Sunoco Pipeline, L.P. NOPV**
> **Request for Confidential Treatment**

Dear Ms. Little:

I am in receipt of your June 24, 2019 letter to the Pipeline and Hazardous Materials Safety Administration (PHMSA). As a follow-up on my staff's consultations with you in June, I am providing Sunoco Pipeline, L.P. (Sunoco) another opportunity to submit more detailed explanations for its objections to PHMSA's public posting of the Notice of Probable Violation for CPF 1-2019-5006.

PHMSA currently makes enforcement information publicly available. As my staff explained in its June communications on this matter, PHMSA achieves enforcement transparency, in accordance with the Federal Pipeline Safety Laws at 49 U.S.C. § 60135, through posting certain enforcement documents, including Notices of Probable Violation, on the agency's public website. PHMSA routinely posts operator-submitted information incorporated into PHMSA's enforcement documents, which informs the public of PHMSA's basis for any final determination in an enforcement action.

In your letter, Sunoco objected to the public release of three excerpts in PHMSA's May 17, 2019 Notice of Probable Violation and Proposed Compliance Order (Notice) issued in CPF 1-2019-5006 and in the accompanying Pipeline Safety Violation Report (PSVR). During follow-up communications with my staff, you attached a copy of the Notice highlighting the portions of the submission that Sunoco maintains should be protected from public disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. In the Notice and the PSVR, PHMSA quoted three excerpts from two reports prepared by Stantec Consulting Ltd ("Stantec reports") that Sunoco provided to PHMSA.[1]

---

[1] On page 4 of the Notice, PHMSA quoted two sentences from the report, "Hazard Assessment of the Proposed Mariner East 2 Pipeline" (Mar. 27, 2017) (Stantec Report). Sunoco designated each page of the Stantec Report as "Proprietary and Confidential Information." On page 5 of Notice, PHMSA also quoted two excerpts (two and three sentences, respectively) from the report, "Energy Transfer: Mariner East 2 Pipeline Re-Route near Chester and Delaware, Pennsylvania – Butane Spill Assessment; Final Report" (Oct. 15, 2018) (Stantec Final Report). Sunoco designated each page of the Stantec Final Report as "Proprietary and Confidential Information. Confidential Security Information not subject to Disclosure to third parties under the provisions and procedures specified in 'The Public Utility Confidential Security Information Disclosure

The Pipeline Safety Regulations in 49 C.F.R. § 190.343 set forth the procedures for requesting confidential treatment of commercial information and PHMSA's determination. In accordance with this section, the requester must mark the records, provide redacted along with unredacted copies of documents, and explain why the information is confidential commercial information. Sunoco designated the pages of the Stantec reports as "Proprietary and Confidential." At the time of submission, Sunoco did not provide redacted copies of the two reports, nor did it provide an explanation of why the marked records are confidential commercial information.

Nevertheless, because Sunoco designated the information as "Proprietary and Confidential," PHMSA is providing Sunoco with additional notice and the opportunity to comment on the excerpted information. *See* 49 C.F.R. § 190.343(b). *See also* Department of Transportation's (DOT's) FOIA regulations, 49 C.F.R. § 7.29 (outlining when and how DOT consults with submitters of commercial information); 5 U.S.C. § 552 (b)(4) (protecting "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential"). As discussed below, there are two specific criteria that must be applied to determine confidentiality.

In addition to providing further notice and an additional opportunity to comment on information designated as "Proprietary and Confidential" for analysis under Exemption 4, PHMSA is also providing its analysis regarding the applicability of FOIA Exemption 7(F) as you raised it in your June correspondence with my office.

## FOIA Exemption 7(F) (Law Enforcement Information)

Sunoco has raised security concerns regarding the three excerpts and asserts that the information is "sensitive security" information protected under FOIA Exemption (b)(7)(F). FOIA Exemption 7(F) protects information compiled for law enforcement purposes, "but only to the extent that the production of such law enforcement records or information" …. "could reasonably be expected to endanger the life or physical safety of any individual." We do not find that the release of this information "could reasonably be expected to endanger the life or physical safety of any individual." *See* 5 U.S.C. § 552 (b)(7)(F).

In your June 5 email, you stated that Sunoco considers the three excerpts to be "proprietary generally, but most importantly for Freedom of Information Act (FOIA) purposes, the Company believes that it is protected from public disclosure under FOIA as sensitive homeland security information pursuant to 5 U.S.C. § 552(b)(7) (referred to generally as FOIA Exemption 7)." You stated, "[a]long those lines, the dispersion analysis information that is expressly quoted is in line with information that PHMSA usually redacts from Facility Response Plans, such as worst case discharge information." In your June 24 letter, you reiterated Sunoco's security concerns and stated that this information is the type that PHMSA usually redacts from facility response plans and "the type PHMSA has redacted from spill model discussions."

Regarding the excerpt of Sunoco's dispersion and thermal radiation consequence modeling results for accidental releases, PHMSA disagrees that this is the type of information that PHMSA usually redacts from oil spill response plans and "the type PHMSA has redacted from spill model discussions."

---

Protection Act' (35 P.S. §§ 2141.1 to 2141.6) and the PUC's regulations implementing such Act at 52 Pa. Code §§ 102.1 – 102.4."

The information PHMSA redacts from oil spill response plans is specific; the information identifies a specific volume that could be released, a specific location that would be impacted, and includes various inputs used in the worst-case discharge calculations. The excerpt of Sunoco's dispersion and thermal radiation consequence modeling results for accidental releases provides general information that is applicable to the entire pipeline. The excerpts lack specificity; do not discuss location, and are more analogous to the type of data PHMSA makes publicly available in its Emergency Response Guidebook (ERG) or that the Environmental Protection Agency (EPA) provides through its CAMEO software suite, which helps emergency responders plan for chemical emergencies. For example, the ERG recommends evacuation distances of one mile for a large butane release.

It should be noted that Sunoco's interpretation of the holding in *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers* is much broader than the scope of information PHMSA, and ultimately the D.C. District Court, found to be exempted from public disclosure. 249 F. Supp. 3d 516, 522 (D.D.C. 2017). In *Standing Rock*, PHMSA identified 50 specific redactions to the spill model reports; it did not claim that Exemption 7(F) applied to the entire spill-modeling report. *Id.* More importantly, the information PHMSA identified for redaction consisted of specific or distinctive identifiers and included: maps of the pipeline at certain crossings; the names of pipeline segments that paired with timelines for detecting and shutting down spills; graphs of spill-risk scores at various points along the pipeline; maps of spill scenarios and predictions as to the volume of oil that would be released at specific locations; the names of systems used to monitor the pipeline for leaks; and methods of communication with those monitoring systems. *See id.* PHMSA did not identify generic information, that could otherwise be obtained from public sources, as being information PHMSA would withhold from public disclosure under Exemption 7(F).

Regarding Sunoco's claims that this information "presents potential homeland security concerns," PHMSA disagrees. The excerpts do not provide distinguishing characteristics that would make this HVL pipeline a more attractive target than any other HVL pipeline of similar diameter and operating pressure. Furthermore, there are known risks associated with transporting HVLs. It is known that a release of HVL can result in harm to the public and the environment. To balance the risks associated with transporting HVLs, the pipeline safety regulations require that operators maintain an adequate public awareness program, specifically to educate the public on the hazards of a release so that the public can respond appropriately. 49 CFR § 195.440. The excerpts provide generally-applicable information that can help people located along the pipeline, or those responding to an actual release, plan accordingly.

### FOIA Exemption 4 (Confidential Commercial Information)

In your June 24 letter, you discussed a claim of protection under Exemption 7(F) and you did not explicitly object to the release of any excerpted information pursuant to FOIA Exemption 4. FOIA Exemption 4 protects "commercial or financial information obtained from a person [that is] privileged or confidential." *See* 5 U.S.C. § 552(b)(4). In a June 24, 2019 decision, the U.S. Supreme Court addressed the meaning of the term "confidential." *See Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019). The Court in *Argus Leader* set out two criteria for agencies to apply when evaluating the basis for confidentiality. Information is considered confidential when: (1) "it is customarily kept private, or at least closely held, by the person imparting it," and (2) "if the party receiving it provides some assurance that it will remain secret." *Id.* at 2363.

PHMSA has reviewed the information in the three excerpts and does not believe that Exemption 4 applies. However, in accordance with 49 C.F.R. § 190.343(b) and DOT's FOIA regulations at 49 C.F.R. § 7.29 (consultation with submitters of commercial information), because Sunoco marked the information "proprietary and confidential," PHMSA is providing Sunoco an opportunity to address the two conditions set out by the Court in *Argus Leader* for determining whether information is "confidential" for purposes of Exemption 4 of the FOIA.

For Sunoco's further evaluation, attached for your reference is a copy of the pages from the Notice (pages 4 and 5 of 10) that Sunoco asserts contain "Proprietary and Confidential" information. If Sunoco wishes to continue objecting to the release of this information, it must "provide [PHMSA with] a detailed statement of any such objections," and "must specify all grounds for withholding any of the information." *See* 49 C.F.R. § 7.29. The burden is on Sunoco to identify with specificity all information that it seeks to exempt from FOIA and to persuade PHMSA that the information should not be disclosed. *Id.* PHMSA requests that Sunoco provide such a statement and further:

- Identify the specific words for which Sunoco believes confidentiality is necessary and supported by a FOIA exemption;
- **Clearly mark** the specific words to help PHMSA comply with DOT's FOIA policy regarding segregability. *See* 49 C.F.R. § 7.23(a) ("It is DOT policy to make its records available to the public to the greatest extent possible . . . includ[ing] releasing reasonably segregable and meaningful nonexempt information . . . ."). A general objection to the disclosure of information is insufficient.
- Address with written explanations the two conditions set out by the Court in *Argus Leader* and outlined by the Department of Justice (DOJ) in its October 3, 2019 Guidance ("Exemption 4 after the Supreme Court's Ruling in *Food Marketing Institute v. Argus Leader Media*."). To evaluate your explanations, PHMSA will apply the "Step-by-Step Guide for Determining if Commercial or Financial Information Obtained from a Person is Confidential Under Exemption 4 of the FOIA," issued by DOJ on October 7, 2019.

If Sunoco wishes to object to the release of any of the information that it designated as confidential, it must submit its written objections and a detailed statement to PHMSA **within five business days** from the date of this letter. Please submit any written response by email to Ms. Ajoke Agboola at yewande.agboola@dot.gov or by mail to:

> Ms. Ajoke Agboola
> Attorney Advisor
> Office of Chief Counsel, Room E26-206
> Pipeline and Hazardous Materials Safety Administration
> U.S. Department of Transportation
> 1200 New Jersey Avenue, SE
> Washington, DC 20590

Please notify us by email to yewande.agboola@dot.gov should you mail your response to the above address. If we do not receive a response from you by November 14, 2019, we will conclude that

11/6/2019                                                                                    Page 5

Sunoco does not object to the disclosure of the information subject to this consultation.  In such event, PHMSA will post its Notice to the public, in whole, without further notice to Sunoco.

Should you have any questions, please contact Ms. Ajoke Agboola, Attorney-Advisor, at the email address above.

Sincerely,

Paul Roberti
Chief Counsel

Attachment:   Consultation package (pages 4 and 5 of the May 17, 2019 Notice)

cc:      Ben Fred, Deputy Assistant Chief Counsel for Pipeline Safety
         Robert Burrough, Director, Eastern Region, OPS, PHMSA
         Greg Mcilwain, VP Operations, Energy Transfer LP
         Dawn McGuire, Assistant General Counsel, Energy Transfer LP
         Curt Stambaugh, Assistant General Counsel, Energy Transfer LP

Attachment J

Letter to PHMSA from Troutman Sanders on behalf of Sunoco
(Nov. 14, 2019)

Troutman Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA  30308-2216

troutman.com



**Catherine D. Little**
catherine.little@troutman.com

November 14, 2019

**By Electronic Mail**

Ms. Ajoke Agboola, Esq.
Attorney Advisor
Pipeline and Hazardous Materials Safety Administration
U.S. Department of Transportation
1200 New Jersey Avenue, SE
Washington, D.C.  20590

RE:     **Sunoco Pipeline, L.P.**
         **PHMSA NOPV CPF 1-2019-5006**
         **Request for Confidential Treatment**

Dear Ajoke:

On behalf of Sunoco Pipeline LP (SPLP or the Company), this is to respond to a letter from the Pipeline and Hazardous Materials Safety Administration (PHMSA or the Agency) received by SPLP on November 6, 2019.  The letter was transmitted by PHMSA Chief Counsel Paul Roberti, but it directed SPLP to reply to your attention.  The Agency's November 6, 2019, letter was in response to a letter SPLP submitted to PHMSA on June 24, 2019, in relation to the above referenced matter.

The issue presented in this exchange of correspondence arises under the Freedom of Information Act (FOIA), 5 U.S.C. 552(b).  In commencing the Notice of Probable Violation (NOPV) enforcement action referenced above, PHMSA included information previously submitted to the Agency under a claim of confidentiality under FOIA as sensitive security information and confidential business information (FOIA exemptions 7(F) and 4).  Applicable law requires that such information be maintained as confidential by an agency, until a third party requests its release under FOIA.  At that time, the agency is required to inform the submitter of information of the request and ask the submitter to substantiate the original claim of confidentiality.

That well established process was not followed in this case.  SPLP submitted the information at issue under a claim of confidentiality in 2018.  To our knowledge, no third party has requested this information from PHMSA.  Yet the Agency, on its own volition, elected to include express excerpts of this confidential information in enforcement documents that would become public.  SPLP presumed that inclusion was inadvertent, especially since it was not critical to the enforcement documents.  When SPLP pointed that out, however, the Agency – to our surprise – defended its unprecedented action and continues to do so in its latest November 6, 2019 letter.  The Agency claims to be doing this on the basis of transparency in enforcement, although never before has confidential information been made public in this manner.



## Background

PHMSA issued the NOPV referenced above on May 17, 2019.  The NOPV and its underlying Pipeline Safety Violation Report (PSVR) both included express excerpts of information previously submitted to the Agency as confidential.  We are not aware of PHMSA ever before disclosing this type of information where it was submitted as confidential without any request by a third party, and in contradiction to both FOIA and PHMSA regulatory procedures for handling FOIA information requests.  For that reason, we presumed the Agency had simply made an error in including the information.  We first raised that issue in a teleconference with the Agency on June 4, 2019.  At the conclusion of that call, PHMSA asked SPLP to submit requested redactions from the NOPV and PSVR.  The Company did so the very next day, on June 5, 2019.

PHMSA then defended its unprecedented and unsolicited inclusion of confidential information by email correspondence dated June 19, 2019.  In that letter, the Agency, without justification or further explanation, advised SPLP that PHMSA did indeed intend to disclose the information otherwise subject to a FOIA claim of confidentiality.  PHMSA stated that it intended to disclose the information in one week, on June 27, 2019 (an urgent date even though no third party had yet requested the information).  SPLP responded in detail in a letter dated June 24, 2019, objecting to the Agency's unusual action, and explaining why both Exemption 4 and Exemption 7(F) of FOIA protect such information from disclosure.

The Agency's recent reply letter, dated November 6, 2019, remains intransigent; PHMSA again rejects SPLP's claims for confidentiality and remains unwilling to redact the confidential information, contrary to applicable law.  Moreover, PHMSA's November 6, 2019, letter states that the Agency intends to disclose the confidential information within 5 days (this inexplicable '5 day' deadline coming after the Agency took nearly 5 months to respond to our last submittal).

## PHMSA's Actions are Inconsistent with FOIA Obligations

The facts are straightforward in this matter, as is the law.  In 2018, during an inspection by PHMSA that occurred on various days in August, October and November of that year, SPLP provided hazard analyses for the Agency's review, and marked them as "Proprietary and Confidential Information."  Specifically, the information marked as confidential concerns specific incident dispersion and thermal radiation consequence analysis distances from the pipeline.  This information is used for Integrity Management Plan purposes (to identify potential high consequence areas and to assess worst case impacts to those areas from a catastrophic pipeline rupture).  Hazard Analyses are included in Facility Response Plans to assist in identifying and prioritizing response efforts should a pipeline rupture occur.  This type of information is routinely treated and claimed as confidential by members of the regulated community, including SPLP, and routinely redacted by PHMSA if or when the Agency releases it for public review.  SPLP has consistently maintained and claimed this type of information as confidential.  Notably, to our knowledge PHMSA has never before sought to release this type of information, either as submitted by SPLP or for the industry as a whole.

As described in our June 24, 2019, letter, once information designated as confidential is submitted to a federal agency, FOIA requires that the government maintain that information as confidential. If a FOIA request for such information is received by the agency, the agency is required to notify



the submitter and ask it to substantiate the original claim of confidentiality. *5 U.S.C. § 552(b); 49 C.F.R. Parts 7.23(b), 7.29(a) and 190.343.*  If the submitter substantiates the basis for its original claim, the agency is prohibited from disclosing the information. *5 U.S.C. § 552(b); 49 C.F.R. Part 7.23(b).*

In this case, on its own volition, PHMSA intended to disclose this confidential information as part of an enforcement action.  No third party had requested the information.  There is no way to explain the Agency's action in this instance other than to call it a mistake or inadvertent disclosure; neither the FOIA or PHMSA regulations allow such an action, and there is no PHMSA precedent on point. Moreover, PHMSA did not provide the required notice to SPLP before it intended to disclose confidential information.  Instead, the Agency only asked for clarification or substantiation after the mistake was pointed out by SPLP and discussed in a teleconference.

SPLP complied with PHMSA's request and submitted redacted versions of the information that the Agency had inappropriately included in the NOPV and PSVR.  To our surprise, the Agency continues to maintain that it has a right to disclose this information and that it benefits the public interest.

## **FOIA Exemptions Appropriately Apply to the Subject Information**

*FOIA Exemption 7*

The Agency's November 6, 2019, letter attempts to justify its unprecedented action in this matter by claiming that SPLP's intent to invoke Exemption 7(F) of FOIA is not applicable because the information subject to a claim of confidentiality is 'not specific enough' and that similar pipelines could also present homeland security issues on general grounds.  The Agency's rationale is nonsensical.  There are multiple nuclear reactor facilities in the U.S., and multiple points where oil pipelines cross waters near drinking water intakes.  The fact that such situations present similar security risks does not make certain information less security sensitive.

Additionally, PHMSA claims the type of information subject to SPLP's claim of confidentiality is "more analogous to the type of data PHMSA makes publicly available in its Emergency Response Guidebook (ERG) or that the Environmental Protection Agency (EPA) provides through its CAMEO software suite, which helps emergency responders plan for chemical emergencies." SPLP disagrees.  To the contrary, the ERG is a relatively generic document that is intended for first responders and does not address specific details of any pipeline system, let alone detailed thermal radiation impacts measured in feet from the pipeline.  Similarly, the EPA's CAMEO software suite, while more specific, is not prospective.  Rather, it helps a first responder map a spill once it has occurred and based on the volume of spill.

For these reasons, SPLP takes issue with PHMSA's determination that the subject information could not "reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  Consequence modeling is some of the *most sensitive* confidential security information that is protected for homeland security purposes.  This information could provide a roadmap for anyone intending to either damage the pipeline and/or harm the surrounding community.  In particular, it would give anyone seeking to cause harm the ability to deduce the zones and populations that would be most impacted by a pipeline incident.



The Government Accountability Office recently commented on the vulnerability of pipelines to physical attacks:

> According to [the Transportation Security Administration within the Department of Homeland Security], pipelines are vulnerable to physical attacks—including the use of firearms or explosives—largely due to their stationary nature, the volatility of transported products, and the dispersed nature of pipeline networks spanning urban and outlying areas. The nature of the transported commodity and the potential effect of an attack on national security, commerce, and public health make some pipelines and their assets more attractive targets for attack. Oil and gas pipelines have been and continue to be targeted by terrorists and other malicious groups globally.

U.S. Gov't Accountability Off., GAO-19-48, *Critical Infrastructure Protection Actions Needed to Address Significant Weaknesses in TSA's Pipeline Security Program Management*, pp. 10-11 (Dec. 2018) (emphasis added), available at https://www.gao.gov/assets/700/696123.pdf.

Specifically with respect to consequence modeling, former Pennsylvania Public Utilities Commission Pipeline Safety Chief, Paul Metro, declared in an affidavit concerning the very pipeline system at issue in this matter:

> In my professional opinion, release of the requested records would compromise security against sabotage or criminal or terroristic acts regarding pipeline facilities by illustrating the extent of the impact zone, including casualty and damage assessments at various ranges, regarding an accident (or sabotage event) on a pipeline. These Reports and Inspection Reports explicitly provide how such an assessment can be made (as well as the assessment for this particular pipeline, and particularly on these Sunoco pipelines, as they contain the specific operating parameters of the pipelines) to cause the greatest possible harm and mass destruction to the public living near such facilities.

OOR Docket AP 2019-0502, Affidavit of Paul J. Metro, p. 2 (Apr. 15, 2019) (emphasis added).

Courts have held that such information is protected from FOIA disclosure for homeland security purposes. *See e.g.,* Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers, 249 F. Supp. 32 516 (D.C. Cir. 2017); Pub. Emps. For Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Comm'n, U.S.-Mexico, 740 F.3d 195 (D.C. Cir. 2014). It is for that very reason that the Company maintains this information as confidential, sensitive security information. In fact, this very information has been consistently maintained as exempt from disclosure under Pennsylvania's state freedom of information act laws. Further, PHMSA itself redacts this type of information from Facility Response Plans. *See PHMSA Facility Response Plan Policy, PHMSA 2050.1A (effective Jun. 27, 2014)* (explaining that PHMSA redacts, among other things, illustrations identifying HCAs, description or boundaries of HCAs as well as threat scenarios and response capacity values that can be used to calculate worst case discharge).



*FOIA Exemption 4*

PHMSA's November 6, 2019, letter further claims that Exemption 4 in FOIA does not apply in this instance, invoking the Supreme Court decision issued the very day SPLP submitted its June 24, 2019, letter.  In that decision, <u>Food Marketing Institute v. Argus Leader Media</u>, 139 S.Ct. 2356 (June 24, 2019) (<u>FMI</u>), the Court clarified that Exemption 4 of FOIA should be given broad interpretation, not requiring any special limitations (such as specific invocations of confidentiality or a showing of substantial competitive harm if the information was released).  The Court clearly stated that Exemption 4 of FOIA "*protects information that would not customarily be released to the public by the person from whom it was obtained*."  *Id*. at 2365.  Both SPLP's records and PHMSA records show that the Company does consistently and customarily consider and designate the information at issue as confidential.  PHMSA's invocation of the recent <u>FMI</u> decision by the Supreme Court serves only to further *support* SPLP's claim in this matter.

The Agency's November 6, 2019, letter at page 4 states that "*because Sunoco marked information as proprietary and confidential*" the Agency will provide the Company with another opportunity "to address the two conditions set out by the Court" in the <u>FMI</u> decision.  PHMSA's letter states that SPLP must 'provide a detailed statement' and 'specify all grounds' for withholding the information at issue (citing 49 C.F.R. Part 7.29).

Strangely, the Supreme Court's <u>FMI</u> decision does not provide the 'two conditions' set forth in PHMSA's November 6, 2019, letter (*i.e.,* 'detailed statements' and 'specifying all grounds for invocation of Exemption 4').  The Court instead states that the 'two conditions' are simply common sense, established by the Webster Dictionary's definition of 'confidential' and requiring only that the information submitted is "customarily kept private, or at least closely held," and that the information provided to a government agency is "told in confidence."  <u>Food Marketing Institute</u>, at 2365.

The information PHMSA proposes to make publicly available is (1) information in which SPLP has a commercial interest; (2) information that SPLP customarily maintains as confidential; and (3) information that SPLP provided to PHMSA under the expectation that it would remain confidential consistent with DOT and PHMSA FOIA regulations, long-standing exemptions and historical practice.  As such, this information clearly meets the standard under Exemption 4 as outlined in <u>FMI</u> and articulated in the Department of Justice's October 2019 guidance and Step-by-Step Guide.  This information is consistently kept private and closely-held by SPLP (as well as the entire pipeline industry).  In addition, DOT and PHMSA provide express assurance to operators that such information is protected through FOIA regulations, PHMSA's own 2014 Facility Response Plan Policy (referenced above), and implied assurance through their historical practice of protecting and redacting this type of information.  There was no indication to SPLP that PHMSA's practice would be any different in this case with respect to the hazard analyses at issue.

<u>**Conclusion**</u>

This is an unusual and unnecessary dispute, of PHMSA's own creation.  The Agency, for the first time we are aware of, included information submitted as FOIA confidential in enforcement documents destined to become public.  There is no question that the information was initially submitted as confidential, and no question that the Agency took this action of its own volition (not



in response to a FOIA request for disclosure of such information).  As such, the inclusion of this information in a NOPV and PSVR must have been inadvertent, because it is not supported by applicable law or Agency precedent.

The facts and the law are clear in this instance.  Information submitted previously by SPLP as confidential is entitled to be maintained as such by PHMSA under FOIA. That conclusion is made clear by existing statutes, regulations and a recent Supreme Court opinion.  It is also consistent with PHMSA's own precedent.

The Company believes it has already provided ample explanation of 'all grounds for invocation' of Exemptions 4 and 7(F) of FOIA.  To the extent there is any question about Exemption 4, the Supreme Court has fully addressed it.  As made clear by the recent Supreme Court <u>FMI</u> decision, the simple fact that SPLP routinely maintains this information as confidential should suffice, without any further "specific details."  Exemption 7 similarly applies to the information as confidential security information, by virtue of the FOIA statute, regulations and the Agency's own policies and procedures.

We are puzzled why the Agency does not simply correct this inadvertent mistake.  We are also troubled by how long the Agency has taken to engage on this issue, and that it has on two occasions now insisted on short turn around responses from the Company.  The Agency should rescind its proposed disclosure of this confidential information.  To further facilitate the resolution of this matter, we have enclosed the pages from the NOPV and PSVR that contain the offending language with the redactions necessary to maintain the confidentiality under FOIA Exemptions 4 and 7(F),  consistent with applicable law.

If this matter cannot be resolved amicably, SPLP believes the issues are important enough to the industry and the legal community to seek judicial review.  We strongly encourage the Agency to maintain the information submitted as confidential until the matter is resolved or judicial review complete.  We are of course always available to meet to discuss further if helpful, and we look forward to hearing from you.

Sincerely,

Catherine D. Little

Attachments

cc:     Paul Roberti, PHMSA Chief Counsel
        Ben Fred, Deputy Chief Counsel for Pipeline Safety
        Robert Burrough, Director, Eastern Region, OPS, PHMSA
        Greg Mcilwain, VP Operations, Energy Transfer
        Dawn McGuire, Assistant General Counsel, Energy Transfer
        Curt Stambaugh, Assistant General Counsel, Energy Transfer

**Proprietary and Confidential Information**
**Confidential Security Information**
**Not Subject to Disclosure**
**5 U.S.C. § 552**

**Attachment 1**

Confidential Protected from Disclosure under FOIA 5 U.S.C. § 552

As a result, Sunoco conducted material validation which included tensile tests prescribed by ANSI/API Spec 5L or other acceptable method for a total of 7 locations within the 24.5 mile GRE segment affected by the reversal and new MOP. The testing predominantly targeted 1937 vintage, 12.750-inch diameter, 0.375-inch wall thickness pipe and was based upon availability of specimens rather than random selection. Therefore, the representative sampling failed to meet the requirements of § 195.106(b)(1)(i) with respect to the number of tests required.

   **2.  § 195.440 Public awareness.**

   **(c) The operator must follow the general program recommendations, including baseline and supplemental requirements of API RP 1162, unless the operator provides justification in its program or procedural manual as to why compliance with all or certain provisions of the recommended practice is not practicable and not necessary for safety.**

Sunoco failed to follow recommended practice API RP 1162 (IBR, see § 195.3). Specifically, Sunoco failed to tailor its communications coverage area (buffer) to fit its particular pipeline, location, and potential impact consequences.

During review of Sunoco's flow reversal and repurposing project involving the 12-inch PTBR to MNTL pipeline segment, PHMSA evaluated Sunoco's Public Awareness Program (Public Awareness Plan HLA.17 and HLI.40 04012018) in light of a proposed change in transported product from refined petroleum products to highly volatile liquid (HVL) service (specifically natural gas liquids mainly comprised of propane and butane). As part of the inspection, PHMSA requested and reviewed pertinent risk assessments, including 3rd party consultant reports completed for the 12-inch reversal section and newly constructed portions of the ME2 project titled Hazard Assessment of the Proposed Mariner East 2 Pipeline (Stantec 03272017), Pipeline Flow Reversal Assessment (Dynamic Risk 10052018) and Mariner East 2 Pipeline Re-Route near Chester and Delaware, Pennsylvania - Butane Spill Assessment (Stantec Final 10152018).

During initial review of the Stantec 03272017 report covering the 20-inch diameter ME2 project, PHMSA noted that dispersion and thermal radiation consequence modelling results for accidental releases under Section 5.4 noted:

> …the maximum distance to the LFL along the entire pipeline route was predicted to be FOIA Ex. 4 & 7(F) The maximum predicted distances to thermal radiation consequences along the entire pipeline were: FOIA Ex. 4 & 7(F)

The report also negated the consequence of multiple releases based on the fact that the pipelines are buried and failure of one would require exposure of another, including ignition, to sufficiently heat and damage the adjacent line. Although PHMSA acknowledges the assessment, exception is taken for valve and pump station locations where multiple pipelines transporting various commodities exist aboveground. These locations undoubtedly incorporate a higher potential of risk and increased public impact in the event of multiple pipeline failures.

Confidential Protected from Disclosure under FOIA 5 U.S.C. § 552

Further inspection noted that Sunoco's original Public Awareness Plan specified mailings to the affected public located 660 feet on either side of the proposed HVL transmission line, and Sunoco noted that this was to be applicable to the entire ME2 project including the re-purposing/reversal section.

During numerous meetings regarding the project held in August 2018, PHMSA conveyed concerns associated with Sunoco's current 660-foot buffer for the HVL service citing API RP 1162 requirements that clearly state, "The transmission operator should tailor its communications coverage area (buffer) to fit its particular pipeline, location, and potential impact consequences."

In addition, review of the subsequent Dynamic Risk 10052018 report noted that a separate consequence assessment was completed by ET and provided to Dynamic Risk.  This analysis showed that any release from nearly any location along the reversal segment would be expected to impact high consequence areas as defined by § 195.450.  The report further concluded that:

> …due to significantly different consequences of a pipeline failure in NGL versus prior service, the prior emergency response plans and public awareness programs for the segment would be inappropriate for application to an NGL pipeline.  Energy Transfer should ensure emergency response plans and public awareness programs are updated appropriately, including outreach to both internal and external stakeholders such as local first responders.

The Stantec 10152018 report, focused on consequence modelling of a butane spill for the re-route of a 29-mile section of the ME2 pipeline project between Wallace Township and Aston, Pennsylvania due to the potential risk for the formation of a butane evaporating pool in the vicinity of release.

The report concluded that (emphasis added) "spill modeling used the source characterization to predict the extents of spill areas at 100-foot increments along the re-routed pipeline section. The spill model included evaporative and boiling effects based on the thermo-physical properties of butane and varying meteorology, including changes in wind speed and temperature. FOIA Ex. 4 & 7(F)
FOIA Ex. 4 & 7(F)

During follow-up meetings held in October 2018, Sunoco conveyed that they had modified their Public Awareness Plan coverage area by extending it to a 1000' buffer on either side of the pipeline.  Sunoco stated the basis for the increase was solely in response to PHMSA's concern and request conveyed during prior meetings.  Due to the statement, PHMSA requested a formal response to support the 1000' communication coverage limit, which was provided in November 2018.

Sunoco's response, dated November 2, 2018, explained the basis for selection of a 1000' buffer and extent of communication with the Affected Public.    The response stated, in part (emphasis added) "After **a discussion with representatives from the Pipeline and Hazardous Materials Safety Administration and the Pennsylvania Public Utilities Commission in August 2018, an internal company review was performed and a determination was made to increase the buffer beyond the required 660 feet to 1,000 feet for all company-operated NGL pipelines**

Confidential Protected from Disclosure under FOIA 5 U.S.C. § 552

**Proprietary and Confidential Information**
**Confidential Security Information**
**Not Subject to Disclosure**
**5 U.S.C. § 552**

**Attachment 2**

Confidential Protected from Disclosure under FOIA 5 U.S.C. § 552

# PIPELINE SAFETY VIOLATION REPORT
*US DOT Pipeline and Hazardous Materials Safety Administration*

Violation 2)

## PART E – VIOLATION INFORMATION

## VIOLATION 2

## PART E1 – DESCRIPTION OF VIOLATION

**Identify the regulation violated with the part, section, and most specific paragraph of Title 49 and include the text of the regulation.  Note: When other regulatory sections are used to help specify the requirement, these regulations should be included below in the operator's conduct that violated the regulation.**

**§ 195.440 Public awareness.**

**(c) The operator must follow the general program recommendations, including baseline and supplemental requirements of API RP 1162, unless the operator provides justification in its program or procedural manual as to why compliance with all or certain provisions of the recommended practice is not practicable and not necessary for safety.**

**Describe the operator's conduct that violated the regulation:**

Sunoco failed to follow recommended practice API RP 1162 (IBR, see § 195.3).  Specifically, Sunoco failed to tailor its communications coverage area (buffer) to fit its particular pipeline, location, and potential impact consequences.

During review of Sunoco's flow reversal and repurposing project involving the 12-inch PTBR to MNTL pipeline segment, PHMSA evaluated Sunoco's Public Awareness Program (Public Awareness Plan HLA.17 and HLI.40 04012018) in light of a proposed change in transported product from refined petroleum products to highly volatile liquid (HVL) service (specifically natural gas liquids mainly comprised of propane and butane). As part of the inspection, PHMSA requested and reviewed pertinent risk assessments, including 3rd party consultant reports completed for the 12-inch reversal section and newly constructed portions of the ME2 project titled Hazard Assessment of the Proposed Mariner East 2 Pipeline (Stantec 03272017), Pipeline Flow Reversal Assessment (Dynamic Risk 10052018) and Mariner East 2 Pipeline Re-Route near Chester and Delaware, Pennsylvania - Butane Spill Assessment (Stantec Final 10152018).

During initial review of the Stantec 03272017 report covering the 20-inch diameter ME2 project, PHMSA noted that dispersion and thermal radiation consequence modelling results for accidental releases under Section 5.4 noted:

…the maximum distance to the LFL along the entire pipeline route was predicted to be ▮FOIA Ex. 4 & 7(F)▮ The maximum predicted distances to thermal radiation consequences along the entire pipeline were: ▮FOIA Ex. 4 & 7(F)▮

Confidential Protected from Disclosure under FOIA 5 U.S.C. § 552

# PIPELINE SAFETY VIOLATION REPORT

*US DOT Pipeline and Hazardous Materials Safety Administration*

Violation 2)

FOIA Ex. 4 & 7(F)

The report also negated the consequence of multiple releases based on the fact that the pipelines are buried and failure of one would require exposure of another, including ignition, to sufficiently heat and damage the adjacent line.  Although PHMSA acknowledges the assessment, exception is taken for valve and pump station locations where multiple pipelines transporting various commodities exist aboveground.  These locations undoubtedly incorporate a higher potential of risk and increased public impact in the event of multiple pipeline failures.

Further inspection noted that Sunoco's original Public Awareness Plan specified mailings to the affected public located 660 feet on either side of the proposed HVL transmission line, and Sunoco noted that this was to be applicable to the entire ME2 project including the re-purposing/reversal section.

During numerous meetings regarding the project held in August 2018, PHMSA conveyed concerns associated with Sunoco's current 660-foot buffer for the HVL service citing API RP 1162 requirements that clearly state, "The transmission operator should tailor its communications coverage area (buffer) to fit its particular pipeline, location, and potential impact consequences."

In addition, review of the subsequent Dynamic Risk 10052018 report noted that a separate consequence assessment was completed by ET and provided to Dynamic Risk.  This analysis showed that any release from nearly any location along the reversal segment would be expected to impact high consequence areas as defined by § 195.450.  The report further concluded that:

> …due to significantly different consequences of a pipeline failure in NGL versus prior service, the prior emergency response plans and public awareness programs for the segment would be inappropriate for application to an NGL pipeline.  Energy Transfer should ensure emergency response plans and public awareness programs are updated appropriately, including outreach to both internal and external stakeholders such as local first responders.

The Stantec 10152018 report, focused on consequence modelling of a butane spill for the re-route of a 29-mile section of the ME2 pipeline project between Wallace Township and Aston, Pennsylvania due to the potential risk for the formation of a butane evaporating pool in the vicinity of release.

The report concluded that (emphasis added) "spill modeling used the source characterization to predict the extents of spill areas at 100-foot increments along the re-routed pipeline section. The spill model included evaporative and boiling effects based on the thermo-physical properties of butane and varying meteorology, including changes in wind speed and temperature. FOIA Ex. 4 & 7(F)
FOIA Ex. 4 & 7(F)

During follow-up meetings held in October 2018, Sunoco conveyed that they had modified their Public Awareness Plan coverage area by extending it to a 1000' buffer on either side of the pipeline.  Sunoco stated the basis for the increase was solely in response to PHMSA's concern and request conveyed

Confidential Protected from Disclosure under FOIA 5 U.S.C. § 552

Attachment K

Email to Troutman Sanders on behalf of Sunoco from PHMSA
(Nov. 25, 2019)

**From:** Van Nostrand, Madeline (PHMSA) <madeline.vannostrand@dot.gov>
**Sent:** Monday, November 25, 2019 4:13 PM
**To:** Little, Catherine D. <Catherine.Little@troutman.com>
**Cc:** Agboola, Ajoke (PHMSA) <yewande.agboola@dot.gov>
**Subject:** Re: Sunoco Pipeline, L.P., NOPV CPF 1-2019-5006, Request for Confidential Treatment

**EXTERNAL SENDER**

Good Afternoon Ms. Little,

I am in receipt of your letter dated 11/14/2019.  I wanted to let you know that tomorrow, 11/26/2019, we will be posting a copy of the NOPV/PCO with Sunoco's proposed redactions, as attached, in PHMSA's FOIA Electronic Reading Room.

Kindest Regards,

**Madeline Van Nostrand**
FOIA Officer
Office of Chief Counsel
Pipeline and Hazardous Materials Safety Administration (PHMSA)
U.S. Department of Transportation
1200 New Jersey Avenue, S.E.
Washington, D.C. 20590

Tel: 202.366.0273
Email: madeline.vannostrand@dot.gov or PHMSA.FOIA@dot.gov
Website: https://www.phmsa.dot.gov/foia

**New!**  Click here to submit a FOIA request.

---

**From:** Little, Catherine D. <Catherine.Little@troutman.com>

**Sent:** Thursday, November 14, 2019 3:06:20 PM

**To:** Agboola, Ajoke (PHMSA) <yewande.agboola@dot.gov>

**Cc:** Roberti, Paul (PHMSA) <paul.roberti@dot.gov>; Fred, Benjamin (PHMSA) <Benjamin.Fred@dot.gov>; Burrough, Robert (PHMSA) <robert.burrough@dot.gov> Gregory.Mcilwain@energytransfer.com <Gregory.Mcilwain@energytransfer.com>; CURTIS.STAMBAUGH@energytransfer.com <CURTIS.STAMBAUGH@energytransfer.com>; Dawn.McGuire@energytransfer.com <Dawn.McGuire@energytransfer.com>; Cook, Annie <annie.cook@troutman.com>; Hogfoss, Robert E. <Robert.Hogfoss@troutman.com>

**Subject:** Sunoco Pipeline, L.P., NOPV CPF 1-2019-5006, Request for Confidential Treatment

Ajoke—

On behalf of Sunoco Pipeline, L.P. (SPLP), this is to both acknowledge receipt of and respond to a letter from the Pipeline and Hazardous Materials Safety Administration's Chief Counsel Paul Roberti dated November 6, 2019.  Consistent with the instructions set forth in the Nov. 6th letter, on behalf of SPLP, we are directing the attached reply to your attention.

We look forward to hearing from you.

**Catherine D. Little**
Direct: 404.885.3056 | Mobile: 404.932.4685
catherine.little@troutman.com
_____

**troutman** **sanders**
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
troutman.com
www.pipelaws.com

---

This e-mail message (and any attachments) from Troutman Sanders LLP may contain legally privileged and confidential information solely for the use of the intended recipient. If you received this message in error, please delete the message and notify the sender. Any unauthorized reading, distribution, copying, or other use of this message (and attachments) is strictly prohibited.

Attachment L

Letter to Troutman Sanders on behalf of Sunoco from PHMSA
(Dec. 20, 2019)



U.S. Department
of Transportation

1200 New Jersey Avenue, S.E.
Washington, D.C.  20590

**Pipeline and Hazardous
Materials Safety Administration**

December 20, 2019

Transmitted via Electronic Mail to catherine.little@troutman.com – Read Receipt Requested
Catherine D. Little
Troutman Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308-2216

Re: PHMSA FOIA Request Nos. 2020-0044 and 2020-0046

Dear Ms. Little:

This letter concerns two Freedom of Information Act (FOIA) requests submitted to the Department of Transportation's Pipeline and Hazardous Materials Safety Administration (PHMSA) seeking an unredacted copy of the Notice of Probable Violation (NOPV) issued to Sunoco Pipeline, L.P. (Sunoco) on 5/17/2019 in CPF No. 1-2019-5006.[1]

PHMSA is required to provide Sunoco, the submitter of information that it designated as "Proprietary and Confidential" (as it is excerpted in the NOPV), with written notice of the FOIA requests and the opportunity to comment.  *See* Executive Order 12,600, 52 Fed. Reg. 23,781 (June 25, 1987).  *See also* FOIA Exemption 4, 5 U.S.C. § 552 (b)(4) (protecting "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential"); Department of Transportation (DOT) FOIA regulations, 49 C.F.R. § 7.29.  For your review, please find attached the two FOIA requests and the pages of the NOPV (pages 4 and 5) that contain the information Sunoco designated as "Proprietary and Confidential Information."

---

[1] On page 4 of the NOPV, PHMSA quoted two sentences from the report, "Hazard Assessment of the Proposed Mariner East 2 Pipeline" (Mar. 27, 2017) (Stantec Report).  Sunoco designated each page of the Stantec Report as "Proprietary and Confidential Information."   On page 5 of the NOPV, PHMSA also quoted two excerpts (two and three sentences, respectively) from the report, "Energy Transfer: Mariner East 2 Pipeline Re-Route near Chester and Delaware, Pennsylvania – Butane Spill Assessment; Final Report" (Oct. 15, 2018) (Stantec Final Report).  Sunoco designated each page of the Stantec Final Report as "Proprietary and Confidential Information. Confidential Security Information not subject to Disclosure to third parties under the provisions and procedures specified in 'The Public Utility Confidential Security Information Disclosure Protection Act' (35 P.S. §§ 2141.1 to 2141.6) and the PUC's regulations implementing such Act at 52 Pa. Code §§ 102.1 – 102.4."   On 11/6/2019, PHMSA consulted with Sunoco under 49 C.F.R. § 190.343 and Sunoco maintained that certain portions of the excerpts from the Stantec reports are confidential commercial information. PHMSA has since posted the NOPV as redacted by Sunoco on PHMSA's enforcement transparency website, available at https://primis.phmsa.dot.gov/comm/reports/enforce/documents/120195006/120195006_NOPV%20PCO_05172019.pdf.

Exemption 4, 5 U.S.C. § 552(b)(4), permits withholding information that is both 1) confidential and 2) commercial or financial in nature.  Before we can deny access to a FOIA requester under Exemption 4, we need an adequate and convincing written justification from Sunoco for withholding the material.  A general objection to the disclosure of information is insufficient.

In order to evaluate the information on pages 4 and 5 of the NOPV that Sunoco maintains is confidential commercial information, PHMSA will apply the Department of Justice's Exemption 4 guidance that it issued following the U.S. Supreme Court decision in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019), available at https://www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-food-marketing-institute-v-argus-leader-media. Please use the below guidance to decide whether to request that PHMSA continue to withhold any information under Exemption 4:

- Is the information commercial in nature?
- Does your organization customarily and actually keep the information private or closely-held?
- Did PHMSA provide an express or implied assurance of confidentiality when your organization shared the information?
- Were there express or implied indications at the time the information was submitted that PHMSA would publicly disclose the information?

If Sunoco wishes to continue to object to the release of the remaining information it designated as "Proprietary and Confidential Information" in the excerpts, then Sunoco must "provide [PHMSA with] a detailed statement of any such objections," and "must specify all grounds for withholding any of the information."  *See* 49 C.F.R. § 7.29.  "The burden is on [Sunoco] to identify with specificity all information for which exempt treatment is sought and to persuade the agency that the information should not be disclosed."  *Id.*

You must submit your written objections to PHMSA **within 10 business days** from the date of this letter.  In addition, if you wish to object to the release of any of the designated information in the NOPV, please **clearly mark** that information to help PHMSA comply with DOT's FOIA policy regarding segregability.  *See* 49 C.F.R. § 7.23(a) ("It is DOT policy to make its records available to the public to the greatest extent possible . . . includ[ing] releasing reasonably segregable and meaningful nonexempt information . . . .").

Any objections must be received by email to PHMSA.FOIA@dot.gov or by mail to:

U.S. Department of Transportation
PHMSA FOIA Officer, PHC-30
Office of Chief Counsel
East Building, 2nd Floor, E26-105
1200 New Jersey Avenue, SE
Washington, DC 20590

Please notify us by email to PHMSA.FOIA@dot.gov should you mail your response to the above address. If we do not receive a response from you by **Tuesday January 7**, we will conclude that you do not object to the disclosure of the information designated as "Proprietary and Confidential Information." In such event, PHMSA will disclose the NOPV to the public in full, without further notice to you.

PHMSA's final review determination on the applicability of all other FOIA exemptions is complete. The law does not support the application of any other FOIA exemptions, including FOIA Exemption 7(F), 5 U.S.C. § 552.

Thank you for your time and consideration in this matter. If you have questions, please contact me at 202-366-0273 or PHMSA.FOIA@DOT.GOV.

Sincerely,

MADELINE M VAN NOSTRAND

Digitally signed by MADELINE M VAN NOSTRAND
Date: 2019.12.20 11:56:31 -05'00'

FOIA Officer, Office of Chief Counsel
Pipeline and Hazardous Materials Safety Administration

Attachment: 2020-0044 and 2020-0046 Consultation Package 2019.12.20.pdf

Attachment M

Letter to PHMSA from Troutman Sanders on behalf of Sunoco
(Jan. 7, 2020)

Troutman Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308-2216



troutman.com

**Catherine D. Little**
catherine.little@troutman.com

January 7, 2020

**By Electronic Mail to PHMSA.FOIA@dot.gov**

Ms. Madeline M. Van Nostrand
FOIA Officer
Office of Chief Counsel
Pipeline and Hazardous Materials Safety Administration
U.S. Department of Transportation
East Building, 2nd Floor, E26-105
1200 New Jersey Avenue, SE
Washington, D.C. 20590

RE:     **Sunoco Pipeline, L.P.**
        **PHMSA FOIA Request Nos. 2020-0044 and 2020-0046**
        **Written Justification to Withhold Confidential and Security Sensitive Information**

Dear Ms. Van Nostrand:

On behalf of Sunoco Pipeline LP (SPLP or the Company), this is to respond to a letter from the Pipeline and Hazardous Materials Safety Administration (PHMSA or the Agency) received by Troutman Sanders for SPLP on December 20, 2019.  The Agency's letter was issued in response to the two above-referenced third party Freedom of Information Act (FOIA) requests for an unredacted copy of Notice of Probable Violation (NOPV) CPF No. 1-2019-5006 issued to SPLP on May 17, 2019.  As provided in the written justification below, and in prior correspondence from SPLP to PHMSA dated June 24 and November 14, 2019, the Company maintains that the redacted information should be withheld from disclosure under FOIA Exemptions 4 and 7(F) as confidential business and sensitive security information.[1]  The designated protected information has already been clearly marked and redacted for PHMSA and provided with SPLP's November 14, 2019 letter (and enclosed with this letter as Attachment 7).

The facts and the law clearly support withholding the redacted passages. The information for which SPLP has made a confidentiality claim is routinely treated and claimed as confidential by the Company as well as other members of the regulated community.  In addition, this type of information is regularly redacted by PHMSA if it is the subject of a FOIA request or in making certain materials publicly available.  Further, this type of information has been held as confidential and sensitive security information by other agencies and the courts.

---

[1] 5 U.S.C. § 552(b)(4) and 7(F), respectively.



## Background

During inspections by PHMSA that occurred between August, October, and November 2018, in response to the Agency's request SPLP provided hazard analyses on the condition that they would be treated as confidential and proprietary and marked them as "Proprietary and Confidential Information" in light of the confidential business and security sensitive information contained in the analyses.[2] In particular, the information marked as confidential concerns specific incident dispersion and thermal radiation consequence analysis distances from the pipeline contained in two different reports: (1) a March 27, 2017 report entitled "Hazard Assessment of the Proposed Mariner 2 East Pipeline" (Stantec Report) and (2) an October 15, 2018 report entitled "Energy Transfer:  Mariner East 2 Pipeline Re-Route near Chester and Delaware, Pennsylvania – Butane Spill Assessment:  Final Report" (Stantec Final Report). The information from those reports is used by the Company for Integrity Management Plan purposes. Specifically, the information is used to identify potential high consequence areas and to assess worst case impacts to those areas from a catastrophic pipeline rupture, pursuant to 49 C.F.R. § 195.452. Hazard analyses are also used by the Company in the development of Facility Response Plans to assist in identifying and prioritizing response efforts should a pipeline rupture occur, pursuant to 49 C.F.R. Part 194.

The NOPV as issued by PHMSA included excerpted quotes from these very same documents that SPLP previously submitted to the Agency with claims for confidentiality under FOIA. Following receipt and review of the NOPV and the case file, SPLP raised concerns to the Agency, and the Company provided proposed redactions to PHMSA at the Agency's request on June 5, 2019.[3] PHMSA initially responded on June 19, 2019, that it intended to nevertheless disclose the information by publicly posting the NOPV on the Agency website.[4] SPLP objected, responding in a detailed letter dated June 24, 2019 and explaining again that the information is confidential and sensitive security information that is statutorily protected from disclosure under express FOIA exemptions.[5]

On November 6, 2019, PHMSA finally responded to SPLP's June 24th letter, requesting another response from SPLP within five business days.[6]  SPLP submitted an additional response on November 14, 2019, further explaining the basis for the FOIA exemptions and again providing proposed redactions to the NOPV.[7]  PHMSA then elected to post the NOPV as redacted by SPLP on PHMSA's enforcement website.

---

[2]  *See SPLP letters to PHMSA dated Jul. 6, 2018 and Nov. 2, 2018 submitting the Stantec Report and Stantec Final Reports, respectively (copies included with this letter as Attachments 1 and 2).*

[3]  *See e-mail to PHMSA from Troutman Sanders on behalf of SPLP (Jun. 5, 2019) (Attachment 3).*

[4]  *See e-mail to Troutman Sanders on behalf of SPLP from PHMSA (Jun. 19, 2019) (Attachment 4).*

[5]  *See letter to PHMSA from Troutman Sanders on behalf of SPLP (Jun. 24, 2019) (Attachment 5).*

[6]  *See letter to Troutman Sanders on behalf of SPLP from PHMSA (Nov. 6, 2019) (Attachment 6).*

[7]  *See letter to PHMSA from Troutman Sanders on behalf of SPLP (Nov. 14, 2019) (Attachment 7).*



## FOIA Exemptions Protect the Subject Information

PHMSA now seeks further written justification from SPLP for withholding the material under Exemption 4 of FOIA, specifically seeking a "detailed statement of any such objections" and specifying "all grounds for withholding any of the information."[8]  For the reasons stated in detail below, SPLP maintains the subject information redacted from the NOPV as confidential, and that information fully qualifies for protection under FOIA Exemption 4 as well as Exemption 7(F), consistent with applicable law including the Supreme Court's recent decision in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019).  Further, protection of this information from public disclosure is consistent with the Department of Justice (DOJ) "Guide to the Freedom of Information Act,"[9] including DOJ's recent guidance following *Argus Leader*. [10]

*FOIA Exemption 4*

SPLP's records and documents provided to PHMSA show that the Company consistently and customarily considers and designates the information at issue as confidential.  FOIA does not define the term "confidential" under Exemption 4.   The Supreme Court, however, recently interpreted the meaning of "confidential" under FOIA Exemption 4 in its *Argus Leader* decision.  In that case, the Court clarified that Exemption 4 of FOIA should be given broad interpretation, not requiring any special limitations (such as specific invocations of confidentiality or a showing of substantial competitive harm if the information was released).[11]  The Court held that "confidential" under FOIA Exemption 4 is based on the ordinary meaning of the term, which outlines two conditions:  (1) that the information submitted is "customarily kept private, or at least closely held," and (2) that the information provided to a government agency is "told in confidence."[12]

To justify SPLP's claim further and consistent with DOJ's "Step by Step Guide for Determining if Commercial Information is Confidential under Exemption 4," PHMSA specifically requested that SPLP respond to four questions, set forth below along with SPLP's responses.[13]

---

[8] 49 C.F.R. § 7.29.

[9] Available at https://www.justice.gov/oip/doj-guide-freedom-information-act-0.

[10] Available at https://www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-food-marketing-institute-v-argus-leader-media.

[11] *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019).

[12] *Id. at 2365.*

[13] SPLP is cooperatively responding to all four questions raised by PHMSA in its December 20th letter, but it is clear from the Supreme Court's holding in *Argus Leader Media* that the only questions required to be addressed are whether the information submitted is "customarily kept private, or at least closely held" and that the information be provided "in confidence" to the government.  *Id. at 2635.*  Further, the Supreme Court expressly declined to decide whether government assurances of continued confidentiality were necessary to Exemption 4.  *Id.* at 2363.  The third and fourth DOJ questions, then, are not germane to this inquiry, and the Company reserves the right to challenge the necessity of a response to the individual questions.



1. *Is the information commercial in nature?*

Yes.  The information presented in the Stantec Report and Stantec Final Report contains confidential commercial information about the SPLP system and hypothetical illustrations of potential impact zones, damage assessments and casualty assessments.  As such, SPLP has a strong commercial interest in the subject information as it relates to the potential impact of a pipeline incident on its pipeline system which transports products in interstate and intrastate commerce.  "Commercial" information is not defined in FOIA Exemption 4 but it has been broadly defined by the courts, with courts holding that it should be given its "ordinary meaning" and that "records are commercial so long as the submitter has a 'commercial interest' in them."[14]

SPLP's interest in the Stantec Reports arises from the fact that the modeling specifies the potential for harm to the pipeline system and the public.  As the D.C. Circuit has recognized, a company's commercial interests "'could be materially affected by the disclosure of'" information on "'safety problems experienced during the operation of . . . [its] facilities.'"[15]  SPLP's commercial interests could be similarly affected by disclosure of information on the consequences of pipeline incidents, even if those incidents are purely hypothetical.  The harm of that disclosure is especially foreseeable here given the increase in pipeline sabotage incidents around the country.[16]  Additionally, it is foreseeable that third parties could seek to use the protected information to contest or unnecessarily delay state or federal approvals for its projects.[17]

---

[14] *DOJ Guide to the Freedom of Information Act, Exemption 4 at p. 5 (citing Pub. Citizen Health Research Grp. v. FDA,* 704 F.2d at 1280, 1290 (D.C. Cir. 1983)).

[15] *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006) (quoting *Critical Mass Energy Project v. Nuclear Regulatory Comm'n,* 830 F.2d 278, 281 (D.C. Cir. 1987) (holding that independent reports on the "'possible causes and effects'" of safety incidents at nuclear power plants qualified as commercial information)).

[16] U.S. Gov't Accountability Off., GAO-19-48, *Critical Infrastructure Protection Actions Needed to Address Significant Weaknesses in TSA's Pipeline Security Program Management*, pp. 10-11 (Dec. 2018); FBI (2019). *FBI and Federal Partners Brief Pipeline Industry Leaders on National Security Threats to Energy Infrastructure*. Available at: https://www.fbi.gov/contact-us/field-offices/houston/news/press-releases/fbi-and-federal-partners-brief-pipeline-industry-leaders-on-national-security-threats-to-energy-infrastructure [Accessed 3 Jan. 2020] (reporting on a Nov. 7, 2019, meeting where representatives from the FBI, National Counterintelligence and Security Center, the U.S. Department of Energy, the Federal Energy Regulatory Commission, the Transportation Security Administration, the U.S. Department of Homeland Security, and leaders of pipeline and oil and gas companies met for a classified briefing about physical and cyber threats to U.S. energy infrastructure).

[17] *See Pub. Citizen Health Research Grp. v. FDA,* 704 F.2d 1280, 1290 (D.C. Cir. 1983) (holding that information was considered commercial where it was "instrumental in gaining marketing approval" from a regulator).



2. *Does your organization customarily and actually keep the information private or closely-held?*

Yes.  Given the commercial and sensitive nature of the information at issue that the Company seeks to protect as explained in further detail below, this information is consistently and customarily kept private and closely held by SPLP, as well as the entire pipeline industry, and even State agencies.  This is why SPLP clearly designates this information as "Proprietary and Confidential" when it is submitted to PHMSA and other agencies.[18]

Specifically, the Company claimed confidentiality over <u>the same reports</u> during inspections and in response to information requests regarding information received and inspections conducted by both PHMSA and the Pennsylvania Public Utility Commission (PA PUC), Safety Division, Pipeline Safety Section.[19]  The transmittal letters enclosing the reports emphasized the confidential nature of the information, stating:

> As described below, the information, responses and documents (collectively the "Production"), regardless of form or format, is provided conditioned upon the Production being treated according to available and applicable federal and state confidentiality, proprietary, and infrastructure security treatments and procedures as specified below.
>
> [...]the information contained in the enclosed documents … and other similar information that may be provided by ETP/SPLP in the future … are confidential and propriety.  We are not sending a second copy of the original with the confidential information deleted in accordance with paragraph of Section 105.30 because we consider all of the information attached to be confidential.  The attached data … [are/is] being submitted at PHMSA's request but subject to ETP/SPLP's request for confidential treatment under 5 U.S.C. 552(b)(4) as incorporated by reference in and modified by the state and/or regulation under which the information is being submitted.  This letter is based on knowledge, information and reasonable belief that the attached information is not known to have been disclosed or become available outside ET/SPLP or related entities in the format or the extent provided in the attached.  Accordingly, we have marked the attached materials "Proprietary and Confidential Information" in bold font in the attached …[20]

---

[18] *See, e.g., Am. Small Bus. League v. DOD,* -- F. Supp. 3d --, 2019 WL 6255353, at *4 (N.D. Cal. Nov. 24, 2019) ("restrictive markings on documents and communications" evidenced an expectation of confidentiality).

[19] *See Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.,* No. 18-cv-2901, 2019 WL 7372663, at *12 (D.D.C. Dec. 31, 2019) (holding that the critical evidence on confidentiality is how the "particular party customarily treats the information, not how the industry as a whole treats the information") (internal quotation marks omitted).

[20] *See Attachments 1 and 2.*



Notably, former Chief of the PA PUC's Safety Division, Pipeline Safety Section himself attested to both the confidential and security sensitive nature of the information contained in the same Stantec Reports and the need to keep them confidential in related PA PUC proceedings (as explained further below).[21]

3. *Did PHMSA provide an express or implied assurance of confidentiality when your organization shared the information?*

Yes.  Both the U.S. Department of Transportation (DOT) as a whole and PHMSA specifically provide express assurance to operators that such information – when claimed as confidential by an operator – is protected through FOIA regulations[22] and PHMSA's own 2014 Facility Response Plan Policy.[23]  In addition, DOT and PHMSA provide implied assurance through their historical practice of protecting and redacting this type of information.[24]  The Supreme Court in *Argus Leader* recognized such assurances when referencing with approval lower court precedent that "Exemption 4 would 'protect information that a private individual wishes to keep confidential for his own purposes, but reveals to the government under the express or implied promise of confidentiality.'"[25]  In light of these express and implied assurances from DOT and PHMSA, there was no indication to SPLP that PHMSA's practice would be any different with respect to the hazard analyses at issue.[26]

4. *Were there express or implied indications at the time the information was submitted that PHMSA would publicly disclose the information?*

No.  There was no indication to SPLP at any time that the information the Company has

---

[21] *See* OOR Docket AP 2019-0502, Affidavit of Paul J. Metro (Apr. 15, 2019) (Attachment 8).

[22] *49 C.F.R. § 7.29; 49 C.F.R. § 190.243.*

[23] *See PHMSA Facility Response Plan Policy, PHMSA 2050.1A (effective Jun. 27, 2014)* (explaining that PHMSA redacts, among other things, illustrations identifying HCAs, description or boundaries of HCAs as well as threat scenarios and response capacity values that can be used to calculate worst case discharge).

[24] DOJ guidance issued to agencies applying the *Argus Leader* decision notes "an agency's long history of protecting certain commercial or financial information can serve as an implied assurance to submitters that the agency will continue treating their records in the same manner."  *DOJ Guide to the Freedom of Information Act, Exemption 4 at p. 6.*

[25] *Argus Leader*, 139 S. Ct. at 2363 (quoting *GSA v. Benson*, 415 F.2d 878, 881 (9th Cir. 1969)).  DOJ guidance issued to agencies applying this decision expressly acknowledges this, stating that "Such an assurance of confidentiality can be either explicit or implicit.  Neither the Court's decision in *Argus Leader* nor any of the authority it cited suggests a requirement of an express (as opposed to implied) assurance of confidentiality by the government."  *DOJ Guide to the Freedom of Information Act, Exemption 4 at p. 5.*

[26] *See also Am. Small Bus. League,* 2019 WL 6255353, at *7 (N.D. Cal. Nov. 24, 2019) (agencies implicitly assured confidentiality where they "anonymized the relevant information in public settings, such as during congressional hearings"); *see also U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (inferring confidential assurances from the "circumstances" and general practice around certain types of documents or sources).



maintained as confidential and submitted to PHMSA under a claim of confidentiality would be publicly disclosed, or that there was any indication of a possibility that PHMSA would deviate from its FOIA obligations as set forth in its 49 C.F.R. Part 190 and DOT's 49 C.F.R. Part 7 regulations.

In sum, the information PHMSA proposes to make publicly available is (1) information in which SPLP has a commercial interest; (2) information that SPLP customarily maintains as confidential; and (3) information that SPLP provided to PHMSA under the expectation that it would remain confidential consistent with DOT and PHMSA FOIA regulations, long-standing FOIA statutory exemptions and historical practice.  As such, this information clearly meets the standard under Exemption 4 as set forth in *Argus Leader* and in DOJ's subsequent guidance.[27]

*FOIA Exemption 7*

In addition to Exemption 4, the confidential information at issue should be protected by PHMSA under FOIA Exemption 7(F) given the sensitive security nature of the content.  Exemption 7(F) requires withholding of "records or information compiled for law enforcement purposes" that "could reasonably be expected to endanger the life or physical safety of any individual."[28]  In its letter dated November 6, 2019, PHMSA stated that FOIA Exemption 7(F) is not applicable because the information subject to a claim of confidentiality is "not specific enough" and that similar pipelines could also present homeland security issues on general grounds.[29]  As set forth in its November 14, 2019 letter, SPLP takes issue with PHMSA's determination that the subject information could not reasonably be expected to endanger the life or physical safety of any individual, particularly given that "a reasonable expectation of endangerment suffices."[30]

Consequence modeling is some of the <u>most sensitive</u> confidential security information that is protected for homeland security purposes.  This information could provide a roadmap for anyone intending to either damage the pipeline and/or harm the surrounding community.  In particular, it would give anyone seeking to cause harm the ability to deduce the zones and populations that would be most impacted by a pipeline incident, similar to inundation maps that show areas

---

[27] *Argus Leader Media*, 139 S. Ct. at 2356.

[28] 5 U.S.C. § 552(b)(7)(F).  Information compiled for "law enforcement purposes" extends, naturally, to information gathered during Agency inspections and relied upon for enforcement, as it was in this instance.

[29] PHMSA also stated in its November 6, 2019, letter that the type of information subject to SPLP's claim of confidentiality is "more analogous to the type of data PHMSA makes publicly available in its Emergency Response Guidebook (ERG) or that the Environmental Protection Agency (EPA) provides through its CAMEO software suite, which helps emergency responders plan for chemical emergencies." To the contrary, the ERG is a relatively generic document that is intended for first responders and does not address specific details of any pipeline system, let alone detailed thermal radiation impacts measured in feet from the pipeline. Similarly, the EPA's CAMEO software suite, while more specific, is not prospective. Rather, it helps a first responder map a spill once it has occurred and based on the volume of spill.

[30] *DOJ Guide to the Freedom of Information Act, Exemption 7(F), p. 1 (citing Pub. Emps. For Env't'l Resp. v. U.S. Sect. Int'l Boundary & Water Comm'n,* 740 F. 3d 195, 206 (D.C. Cir. 2014))*; accord Friedman v. U.S. Secret Serv.,* 282 F. Supp. 3d 291, 307 (D.D.C. 2017) (quoting *Pub. Emps. For Env't'l. Resp.*, 740 F.3d at 205)).



downstream from dams are at risk for flooding that have been held by the D.C. Circuit Court of Appeal to be protected from disclosure under Exemption 7(F).[31]  The potential for harm from the information is key to the analysis of whether to withhold information.[32]

That harm has already been substantiated based on federal court precedent through statements made by the PA PUC's Paul Metro with respect to these very reports.[33]   Specific to the consequence modeling in the Stantec Report and Stantec Final Report—which contains the very passages that SPLP seeks to protect from disclosure under FOIA by PHMSA—former PA PUC Pipeline Safety Chief, Paul Metro, declared in an affidavit:

> In my professional opinion, <u>release of the requested records would compromise security</u> against sabotage or criminal or terroristic acts regarding pipeline facilities by illustrating <u>the extent of the impact zone</u>, <u>including casualty and damage assessments at various ranges</u>, regarding an accident (or sabotage event) on a pipeline. These Reports and Inspection Reports explicitly provide how such an assessment can be made (as well as the assessment for this particular pipeline, and particularly on these Sunoco pipelines, as they contain the specific operating parameters of the pipelines) to cause the greatest possible harm and mass destruction to the public living near such facilities.[34]

Further, the vulnerability of pipelines to physical attacks has been recognized by the government and industry alike.  In November 7, 2019, a classified briefing among federal agencies and the oil and gas industry recognized "U.S. patented information and technology, particularly in the pipeline energy sector, as a target of foreign governments and companies seeking to increase their scientific, military, and economic advantages."[35] These types of threats were reemphasized

---

[31] *Id. at 2, 4 (citing Pub. Emps. For Envtl. Resp.,* 740 F.3d at 206 (approving withholding of inundation maps because of concern that terrorists could use the information in maps to cause flooding and destruction in populated areas)).

[32] In PHMSA's Nov. 6th letter (Attachment 6), PHMSA suggests that the consequence modeling contained in the Stantec reports might be "generic" to more than some arbitrarily defined length of pipeline and further that the information in the reports might "otherwise be obtained from public sources."  Both of these claims are factually incorrect.  More importantly, the plain text of Exemption 7(F) does not impose a separate confidentiality requirement like that in Exemption 4.  Information loses its exempt status only if it is completely beyond doubt that the "exact information at issue" is fully available to the public.  *Greenpeace, Inc. v. DHS*, 311 F. Supp. 3d 110, 130-31 (D.D.C. 2018) (internal quotation marks omitted) (rejecting an argument that information on chemical facilities should be disclosed because "the public already has access to information about many of these facilities and the chemicals they hold from various public sources (including the EPA)").

[33] *See, e.g.*, *Living Rivers, Inc. v. U.S. Bureau of Reclamation*, 272 F. Supp. 2d 1313, 1321-22 (D. Utah 2003) (sustaining an Exemption 7(F) claim on the basis of an affidavit that inundation maps could be used by bad actors as a roadmap to cause harm by flooding and destroying populated areas).

[34] Attachment 8 (emphasis added).

[35] FBI (2019).  *FBI and Federal Partners Brief Pipeline Industry Leaders on National Security Threats to Energy    Infrastructure.*    [online]    Available    at:    https://www.fbi.gov/contact-us/field-offices/houston/news/press-releases/fbi-and-federal-partners-brief-pipeline-industry-leaders-on-national-



just several days prior to this filing, in a National Terrorism Advisory Bulletin issued by the Department of Homeland Security highlighting Iran's abilities to carry out critical infrastructure and cyber enabled attacks, stating that "Iran is capable, <u>at a minimum, of carrying out attacks with temporary disruptive effects against critical infrastructure in the United States</u>."[36]

Last year, the Government Accountability Office similarly acknowledged:

> According to [the Transportation Security Administration within the Department of Homeland Security], <u>pipelines are vulnerable to physical attacks</u>—including the use of firearms or explosives—largely due to their stationary nature, the volatility of transported products, and the dispersed nature of pipeline networks spanning urban and outlying areas. The nature of the transported commodity and the potential effect of an attack on national security, commerce, and public health make some pipelines and their assets more attractive targets for attack. <u>Oil and gas pipelines have been and continue to be targeted by terrorists and other malicious groups globally</u>.[37]

Courts have held that the information that SPLP is seeking to protect is exempt from FOIA disclosure for homeland security purposes.[38]  It is for that very reason that the Company maintains this information as confidential, sensitive security information. In fact, this same information has been consistently maintained as exempt from disclosure under Pennsylvania's

---

security-threats-to-energy-infrastructure [Accessed 3 Jan. 2020] (reporting on a Nov. 7, 2019, meeting where representatives from the FBI, National Counterintelligence and Security Center, the U.S. Department of Energy, the Federal Energy Regulatory Commission, the Transportation Security Administration, the U.S. Department of Homeland Security, and leaders of pipeline and oil and gas companies met for a classified briefing about physical and cyber threats to U.S. energy infrastructure).

[36] *U.S. Department of Homeland Security, National Terrorism Advisory System Bulletin (Jan. 4, 2020)* (emphasis added).  The Bulletin further stated that "Previous homeland-based plots have included, among other things, scouting and planning against infrastructure targets and cyber enabled attacks against a range of U.S.-based targets" and that "Iran maintains a robust cyber program and can execute cyber attacks against the United States."  *Id.*

[37] U.S. Gov't Accountability Off., GAO-19-48, *Critical Infrastructure Protection Actions Needed to Address Significant Weaknesses in TSA's Pipeline Security Program Management*, pp. 10-11 (Dec. 2018). (emphasis added), available at https://www.gao.gov/assets/700/696123.pdf.

[38] *See, e.g., Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 249 F. Supp. 516, 522-23 (D.D.C. 2017) (protecting spill model reports under Exemption 7(F) because they might facilitate "intentionally inflicted harm"); *see also Pub. Emps. For Envtl. Resp.,* 740 F.3d at 206 ("[Disclosing the maps would give anyone seeking to cause harm 'the ability to deduce the zones and populations most affected by dam failure[,]'" and "[t]errorists or criminals could use that information to determine whether attacking a dam would be worthwhile, which dam would provide the most attractive target, and what the likely effect of a dam break would be."); *Greenpeace, Inc.*, 311 F. Supp. 3d at 128 (noting a common theme in Exemption 7(F) case law is "highly useful information for terrorists planning attacks on" facilities).



state freedom of information act laws.  Further, PHMSA itself redacts this type of information from Facility Response Plans.[39]

## Conclusion

The facts and the law are clear in this instance.  Commercial sensitive security information submitted previously by SPLP with a claim for protection under FOIA as confidential is entitled to be maintained as such by PHMSA under FOIA Exemptions 4 and 7(F).  That conclusion is made clear by existing statutes, regulations, and case law including recent Supreme Court precedent.  It is also consistent with PHMSA's own precedent, policies and procedures.

The Company believes it has already provided ample explanation of "all grounds for invocation" of FOIA Exemptions 4 and 7(F).  If this matter cannot be resolved amicably, SPLP believes the issues are important enough to the industry and the legal community to seek judicial review.  We are of course always available to meet to discuss further if helpful, and we look forward to hearing from you.

Sincerely,

Catherine D. Little

cc:   Greg Mcilwain (Sr. Vice President of Operations, Energy Transfer)
      Curt Stambaugh, Esq. (Assistant General Counsel, Energy Transfer)
      Annie Cook, Esq. (Troutman Sanders)

**Attachments:**
1. Letter to PHMSA from SPLP submitting the Stantec Report (Jul. 6, 2018) (without attachments)
2. Letter to PHMSA from SPLP submitting the Stantec Final Report (Nov. 2, 2018) (without attachments)
3. E-mail to PHMSA from Troutman Sanders on behalf of SPLP (Jun. 5, 2019) (without attachments)
4. E-mail to Troutman Sanders on behalf of SPLP from PHMSA (Jun. 19, 2019) (without attachments)
5. Letter to PHMSA from Troutman Sanders on behalf of SPLP (Jun. 24, 2019) (without attachments)
6. Letter to Troutman Sanders on behalf of SPLP from PHMSA (Nov. 6, 2019) (without attachments)
7. Letter to PHMSA from Troutman Sanders on behalf of SPLP (Nov. 14, 2019) (with attachments)
8. OOR Docket AP 2019-0502, Affidavit of Paul J. Metro (Apr. 15, 2019) (without attachments)

[39] *See PHMSA Facility Response Plan Policy, PHMSA 2050.1A (effective Jun. 27, 2014)* (explaining that PHMSA redacts, among other things, illustrations identifying HCAs, description or boundaries of HCAs as well as threat scenarios and response capacity values that can be used to calculate worst case discharge).

Attachment N

PHMSA Denial of FOIA Request No. 2020-0044
(Sep. 30, 2020)



U.S. Department
of Transportation

1200 New Jersey Avenue, S.E.
Washington, D.C.   20590

**Pipeline and Hazardous
Materials Safety Administration**

9/30/2020
FOIA Control Number: 2020-0044

<u>Transmitted via Electronic Mail – Read Receipt Requested</u>
Eric Friedman
<u>Middletown Coalition for Community Safety</u>
█████████████

Dear Mr. Friedman:

This letter responds to your Freedom of Information Act (FOIA) request dated 12/4/2019 and received in the Pipeline and Hazardous Materials Safety Administration's (PHMSA's) FOIA Office on 12/5/2019. You requested an unredacted copy of the Notice of Probable Violation (NOPV) issued in CPF No. 1-2019-5006 to Sunoco Pipeline, L.P. (Sunoco) on 5/17/2019. Sunoco redacted: (1) the distance to the lower flammable limit (LFL); (2) the maximum predicted distance to thermal radiation consequences; and (3) the maximum predicted spill extent.[1]

To evaluate the confidential nature of the information, PHMSA initiated a consultation with Sunoco on December 20, 2019 pursuant to the Department of Transportation's FOIA regulations, 49 C.F.R. § 7.29. PHMSA requested that Sunoco evaluate the information under <u>Food Marketing Institute v. Argus Leader Media</u>, 139 S. Ct. 2356 (2019).  In <u>Argus Leader</u>, the Court held that "at least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." 139 S. Ct. at 2366.  Furthermore, PHMSA requested that Sunoco evaluate the information

---

[1] As evidentiary support for the allegation that Sunoco failed to tailor its public awareness communications coverage area (buffer) to fits its particular pipeline, location, and potential impact consequences, PHMSA quoted three excerpts from two reports Sunoco had provided during the inspection. Specifically, on page 4 of the Notice, PHMSA quoted two sentences from the report, "Hazard Assessment of the Proposed Mariner East 2 Pipeline" (Mar. 27, 2017) (Stantec Report).  Sunoco designated each page of the Stantec Report as "Proprietary and Confidential Information."  On page 5 of the Notice, PHMSA quoted two excerpts (two and three sentences, respectively) from the report, "Energy Transfer: Mariner East 2 Pipeline Re-Route near Chester and Delaware, Pennsylvania – Butane Spill Assessment; Final report" (Oct 15, 2018) (Stantec Final Report).  Sunoco designated every page of the Stantec Final Report as "Proprietary and Confidential Information. Confidential Information not subject to Disclosure to third parties under the provisions and procedures specified in 'The Public Utility Confidential Security Information Disclosure Protection Act; (35 P.S. §§ 2141.1 to 2141.6) and the PUC's regulations implementing such Act at 52 Pa. Code §§ 102.1 – 102.4."

using the Department of Justice's (DOJ's) Exemption 4 guidance issued following <u>Argus Leader</u>, available at   <u>https://www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-food-marketing-institute-v-argus-leader-media</u>.

Sunoco responded to PHMSA on January 7, 2020 with justification to withhold the information under FOIA Exemption 4.  Sunoco applied the <u>Argus Leader</u> test, as set forth in the DOJ guidance, arguing that the information is commercial information that meets the criteria for "confidential" under FOIA Exemption 4.  Based on the justification from Sunoco, your request for the information redacted in the NOPV by Sunoco is denied because that information qualifies for protection under FOIA Exemption 4.  *See* 5 U.S.C. § 552(b)(4) (protecting from release "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential").  By this response to you, PHMSA does not claim any additional FOIA exemptions.

Because we have denied your request under FOIA Exemption 4, you may consider this determination a denial of your record request and file an appeal.  *See* Department of Transportation's FOIA regulations, 49 C.F.R. § 7.32(d).  I am the official responsible for this determination.

If you choose to appeal, your appeal must be made in writing and postmarked or transmitted within *ninety calendar days* from the date of the final response.  In order to be considered an official appeal, it must be addressed as follows:

Howard R. Elliott
Administrator, Pipeline and Hazardous Materials Safety Administration
1200 New Jersey Avenue, SE
Washington, DC 20590

Both the appeal and the envelope should be plainly marked "FOIA APPEAL."  Please make reference to your assigned FOIA Control Number 2020-0044 so that we may identify your case promptly.  In addition, you should include all information and arguments that form the basis of your appeal.  For more information on your right to an administrative appeal, refer to the Department's FOIA regulations, 49 C.F.R. § 7.32(d).

Furthermore, the 2007 FOIA amendments created the Office of Government Information Services (OGIS) to offer mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  Using OGIS services does not affect your right to pursue litigation, nor does it affect the timing of filing an appeal.  You may contact OGIS in any of the following ways:

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road - OGIS
College Park, MD 20740-6001
E-mail: ogis@nara.gov
Web: https://ogis.archives.gov
Telephone: 202-741-5770

Fax: 202-741-5769
Toll-free: 1-877-684-6448

This concludes our response to your request.  If you have any questions, you may contact Madeline Van Nostrand, FOIA Officer, by phone at 202-366-0273 or by email to PHMSA.FOIA@dot.gov.  You also may seek the services of our FOIA Public Liaison, Darius Kirkwood, Office of Governmental, International and Public Affairs, by phone at 202-366-4831 or by email to phmsapublicaffairs@dot.gov.

Sincerely,

MADELINE M VAN
NOSTRAND

Digitally signed by MADELINE M
VAN NOSTRAND
Date: 2020.09.29 21:57:36 -04'00'

FOIA Officer, Office of Chief Counsel
Pipeline and Hazardous Materials Safety Administration (PHMSA)

Attachment O

PHMSA Denial of FOIA Request No. 2020-0012
(Sep. 30, 2020)



U.S. Department
of Transportation

1200 New Jersey Avenue, S.E.
Washington, D.C.  20590

**Pipeline and Hazardous
Materials Safety Administration**

9/30/2020
FOIA Control Number: 2020-0112

<u>Transmitted via Electronic Mail – Read Receipt Requested</u>
Mike Soraghan
E&E News
801 N. Trade St.
Winston-Salem, NC 27101

Dear Mr. Soraghan:

This letter responds to your Freedom of Information Act (FOIA) request dated 3/4/2020 and received in
the Pipeline and Hazardous Materials Safety Administration's (PHMSA's) FOIA Office on 3/5/2020.
You requested an unredacted copy of the Notice of Probable Violation (NOPV) issued in CPF No. 1-
2019-5006 to Sunoco Pipeline, L.P. (Sunoco) on 5/17/2019. Sunoco redacted: (1) the distance to the
lower flammable limit (LFL); (2) the maximum predicted distance to thermal radiation consequences;
and (3) the maximum predicted spill extent.[1]

To evaluate the confidential nature of the information, PHMSA initiated a consultation with Sunoco on
December 20, 2019 pursuant to the Department of Transportation's FOIA regulations, 49 C.F.R. § 7.29.
PHMSA requested that Sunoco evaluate the information under <u>Food Marketing Institute v. Argus Leader
Media</u>, 139 S. Ct. 2356 (2019).  In <u>Argus Leader</u>, the Court held that "at least where commercial or
financial information is both customarily and actually treated as private by its owner and provided to the
government under an assurance of privacy, the information is 'confidential' within the meaning of
Exemption 4." 139 S. Ct. at 2366.  Furthermore, PHMSA requested that Sunoco evaluate the information

---

[1] As evidentiary support for the allegation that Sunoco failed to tailor its public awareness communications coverage area
(buffer) to fits its particular pipeline, location, and potential impact consequences, PHMSA quoted three excerpts from two
reports Sunoco had provided during the inspection. Specifically, on page 4 of the Notice, PHMSA quoted two sentences from
the report, "Hazard Assessment of the Proposed Mariner East 2 Pipeline" (Mar. 27, 2017) (Stantec Report).  Sunoco
designated each page of the Stantec Report as "Proprietary and Confidential Information."  On page 5 of the Notice, PHMSA
quoted two excerpts (two and three sentences, respectively) from the report, "Energy Transfer: Mariner East 2 Pipeline Re-
Route near Chester and Delaware, Pennsylvania – Butane Spill Assessment; Final report" (Oct 15, 2018) (Stantec Final
Report).  Sunoco designated every page of the Stantec Final Report as "Proprietary and Confidential Information.
Confidential Information not subject to Disclosure to third parties under the provisions and procedures specified in 'The
Public Utility Confidential Security Information Disclosure Protection Act; (35 P.S. §§ 2141.1 to 2141.6) and the PUC's
regulations implementing such Act at 52 Pa. Code §§ 102.1 – 102.4."

using the Department of Justice's (DOJ's) Exemption 4 guidance issued following Argus Leader, available at https://www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-food-marketing-institute-v-argus-leader-media.

Sunoco responded to PHMSA on January 7, 2020 with justification to withhold the information under FOIA Exemption 4. Sunoco applied the Argus Leader test, as set forth in the DOJ guidance, arguing that the information is commercial information that meets the criteria for "confidential" under FOIA Exemption 4. Based on the justification from Sunoco, your request for the information redacted in the NOPV by Sunoco is denied because that information qualifies for protection under FOIA Exemption 4. See 5 U.S.C. § 552(b)(4) (protecting from release "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential"). By this response to you, PHMSA does not claim any additional FOIA exemptions.

Because we have denied your request under FOIA Exemption 4, you may consider this determination a denial of your record request and file an appeal. See Department of Transportation's FOIA regulations, 49 C.F.R. § 7.32(d). I am the official responsible for this determination.

If you choose to appeal, your appeal must be made in writing and postmarked or transmitted within ninety calendar days from the date of the final response. In order to be considered an official appeal, it must be addressed as follows:

Howard R. Elliott
Administrator, Pipeline and Hazardous Materials Safety Administration
1200 New Jersey Avenue, SE
Washington, DC 20590

Both the appeal and the envelope should be plainly marked "FOIA APPEAL." Please make reference to your assigned FOIA Control Number 2020-0112 so that we may identify your case promptly. In addition, you should include all information and arguments that form the basis of your appeal. For more information on your right to an administrative appeal, refer to the Department's FOIA regulations, 49 C.F.R. § 7.32(d).

Furthermore, the 2007 FOIA amendments created the Office of Government Information Services (OGIS) to offer mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation, nor does it affect the timing of filing an appeal. You may contact OGIS in any of the following ways:

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road - OGIS
College Park, MD 20740-6001
E-mail: ogis@nara.gov
Web: https://ogis.archives.gov
Telephone: 202-741-5770

Fax: 202-741-5769
Toll-free: 1-877-684-6448

This concludes our response to your request.  If you have any questions, you may contact Madeline Van Nostrand, FOIA Officer, by phone at 202-366-0273 or by email to PHMSA.FOIA@dot.gov.  You also may seek the services of our FOIA Public Liaison, Darius Kirkwood, Office of Governmental, International and Public Affairs, by phone at 202-366-4831 or by email to phmsapublicaffairs@dot.gov.

Sincerely,

MADELINE M
VAN NOSTRAND

Digitally signed by MADELINE M
VAN NOSTRAND
Date: 2020.09.29 21:28:46 -04'00'

FOIA Officer, Office of Chief Counsel
Pipeline and Hazardous Materials Safety Administration (PHMSA)

Attachment P

FOIA Appeal
(Nov. 12, 2020)



Nov. 12, 2020

Howard R. Elliott
Administrator
Pipeline and Hazardous Materials Safety Administration
1200 New Jersey Avenue, SE
Washington, DC 20590

**RE: Freedom of Information Act Appeal – 2020-0112**


Administrator Elliott,

Pursuant to the federal Freedom of Information Act, 5 U.S.C. s. 552, I appeal the denial of my March 4, 2020 Freedom of Information Act request, Control Number: 2020-0112.

I requested an unredacted version of the Notice of Probable Violation in CPF 1-2019-5006. At least three redactions in the document are marked "Sunoco Redaction." The redacted version is available online at this link:
https://primis.phmsa.dot.gov/comm/reports/enforce/documents/120195006/120195006_NOPV%20PCO_05172019.pdf.

My request was denied in a letter forwarded by email Sept. 30, 2020. Little reasoning was provided.

I find it remarkable that a law enforcement agency would take direction from an entity that it believes has violated rules related to public safety. It is even more remarkable to see this when the subject information concerns how many members of the public would be impacted (i.e. harmed) by an incendiary explosion.

It is also important to note that FOIA provisions such as Exemption 4 only allow withholding. They do not require it.

The operator here is not demanding this redaction because the information somehow constitutes a "trade secret." Instead, the most likely reason is the political problems the company has encountered with opponents, along with state and local regulators, who have questioned the safety plan for the project
(http://www.puc.pa.gov/about_puc/consolidated_case_view.aspx?Docket=C-2018-3006116).

In any event, the information withheld by the redaction is not exempt and should be provided to me and to the public. To say that the information satisfies the conditions for being exempt from disclosure under Exemption 4 ignores both recent case law and clear statutory language.



To be exempt under this provision, Section 552(a)(8) of the statute requires the agency to weigh whether it "reasonably foresees that disclosure would harm" a protected interest. "Foreseeable harm" is the first of a four-part test which must be applied. The agency offers no indication of how it meets this test, nor any indication that it undertook this test. If the agency had done so, it would find it does not meet this test.

Such foreseeable harm must go beyond embarrassment and potential public disapproval. It must entail substantial harm to the competitive position of the person from whom the information is obtained, not simply embarrassment. There is no indication such harm is foreseeable.

This section of the statute was changed by Congress after the FOIA request was filed that later led to the decision in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019). The *Argus Leader* decision therefore does not account for the high bar for withholding that Congress added to the statute.

The agency's denial letter states it asked Sunoco to evaluate the information under *Argus Leader*, and the company did so. The denial letter did not state how the agency arrived at its decision beyond accepting the company's application of the *Argus Leader* test. As I stated above, this is not the relevant standard in the wake of the 2016 changes to the statute enacted by Congress.

The denial letter states that "PHMSA requested that Sunoco evaluate the information under *Food Marketing Institute v. Argus Leader Media, 139 S. Ct. 2356 (2019)*. I am surprised that the agency would predetermine what analysis should be used, as it indicates that the agency had already decided that the information should not be released.

*Argus Leader* applied to "commercial or financial information." It protected the information provider's competitive position. The subject information does not meet any of these criteria. It is safety information.

Beyond ignoring statutory language, the denial of my request dismisses the judgment of the agency's safety experts. PHMSA officials know when they draft these documents that they are to be posted online. Therefore, they would weigh the safety implications prior to posting any such information. They apparently did not see a safety or security problem in releasing this information unredacted. It is extraordinary for the agency's FOIA officials to dismiss the judgment of their own safety experts simply at the word of a violator.

To this point, I would note safety enforcement is common for this regulated entity. This is one of four enforcement actions against this project alone. Overall, there have been 50 enforcement actions against this company since 2012. To accept the word of



a violator on the very document laying out its violations undermines the agency's credibility.

FOIA is a government policy to promote disclosure. In the important work of maintaining pipeline safety, PHMSA should give considerable heed to the presumption of openness that rests at the heart of the FOIA statute.

I have attached a copy of the agency's denial letter. I trust that upon examination of these communications you will conclude that these redactions should be removed and the records fully disclosed.

As provided for in the act, I will expect to receive a reply within 20 days. Thank you for your assistance.


Sincerely,


Mike Soraghan
E&E News reporter
msoraghan@eenews.net
202-709-3699 (office and mobile)
@MikeSoraghan
122 C St. NW, Seventh Floor
Washington, DC, 20001

**E&E NEWS**
www.eenews.net | @EENewsUpdates
Energywire, Climatewire, Greenwire, E&E Daily, E&E News PM

Attachment Q

Letter to Troutman Pepper on behalf of Sunoco from PHMSA
(Dec. 9, 2020)



U.S. Department
of Transportation

1200 New Jersey Avenue, S.E.
Washington, D.C.   20590

**Pipeline and Hazardous
Materials Safety Administration**

**12/9/2020**

Transmitted via Electronic Mail to Catherine.Little@Troutman.com – Read Receipt Requested
Catherine Little
Troutman Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308-2216

Dear Ms. Little:

This letter is regarding a Freedom of Information Act (FOIA) appeal received by the Pipeline and Hazardous Materials Safety Administration (PHMSA) on November 13, 2020, which concerns Sunoco Pipeline, L.P. (Sunoco). This appeal, which followed PHMSA's denial of an initial FOIA request on September 30, 2020, seeks an unredacted copy of the Notice of Probable Violation (NOPV) issued in CPF No. 1-2019-5006 to Sunoco on May 17, 2019.

As part of the FOIA appeal review process, PHMSA must evaluate whether the information that was redacted from the NOPV (i.e., (1) the distance to the lower flammable limit; (2) the maximum predicted distance to thermal radiation consequences; and (3) the maximum predicted spill extent) was properly withheld. The FOIA Improvement Act of 2016, states, in part, that agencies "shall withhold information" under the FOIA "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A). Accordingly, PHMSA requests that Sunoco provide a written explanation of any harm that it would suffer if the unredacted NOPV issued in CPF No. 1-2019-5006 were to be disclosed. In light of the deadlines associated with FOIA appeals, PHMSA requests that Sunoco provide this information no later than seven business days from the date of this letter.

If you have any questions regarding this matter, please feel free to contact me at amal.deria@dot.gov.

Sincerely,

AMAL MOHAMED
DERIA

Digitally signed by AMAL
MOHAMED DERIA
Date: 2020.12.09 13:11:44 -05'00'

Office of Chief Counsel
Pipeline and Hazardous Materials Safety Administration
(PHMSA)

Attachment R

Letter to PHMSA from Troutman Pepper on behalf of Sunoco
(Dec. 18, 2020)

Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA  30308-2216

troutman.com



**Catherine D. Little**
D 404.885.3056
catherine.little@troutman.com

December 18, 2020

**VIA ELECTRONIC MAIL**

Amal Deria, Esq.
Attorney Advisor
Office of Chief Counsel
US Department of Transportation
Pipeline and Hazardous Materials Safety Administration
1200 New Jersey Ave, Washington, DC 20590

**Re:    Sunoco Pipeline, L.P.**
**PHMSA FOIA Case No. 2020-0112**
**Further Justification to Withhold Confidential and Security Sensitive Information**

Dear Attorney Deria:

On behalf of Sunoco Pipeline, L.P. ("SPLP" or the "Company"), this is to respond to your correspondence dated December 9, 2020, in which you request that Sunoco "provide a written explanation of any harm that it would suffer if the unredacted NOPV [Notice of Probable Violation] issued in CPF No. 1-2019-5006 were to be disclosed."  As substantiated in detail in prior correspondence from SPLP to PHMSA including that dated January 7, 2020,[1] and as clearly supported by both the facts and the law, release of the redacted information would cause substantial and reasonably foreseeable harm to SPLP that is germane to the interests protected by both Exemption 4 and Exemption 7(F) of the Freedom of Information Act ("FOIA").  *See* 5 U.S.C. § 552(a)(8)(A)(i)(I), (b)(4), (7)(F).

The information redacted in the NOPV relates to detailed dispersion and consequence modeling distances for releases from the Mariner East 2 pipeline project, specifically including the maximum distance to the lower flammable limit, the maximum predicted distances to thermal radiation consequences, and spill modeling distances.  Each of these items is expressed in terms of the precise distance in feet from the pipeline, and, for that reason, the reasonably foreseeable harm

---

[1] The NOPV as issued by PHMSA included excerpted quotes from dispersion and consequence analysis modelling reports that were provided by SPLP to PHMSA on the condition that they would be maintained as confidential and proprietary pursuant to federal FOIA exemptions protecting confidential business and sensitive security information and SPLP marked the documents accordingly.  Upon receipt of the NOPV, SPLP promptly raised concerns to PHMSA regarding these excerpts in June and July 2019 and objected to their disclosure based on statutory protection under express FOIA exemptions.



from disclosing each item is substantially the same.[2]  *See id.* § 552(a)(8)(A)(i)(I).  As described below, disclosure of this information is reasonably foreseeable to cause harm in two primary respects:  to public safety and to the Company's commercial interests.

**Reasonably Foreseeable Public Safety Harm**

The release of the precise consequence modeling distances would threaten individual safety, the core purpose of FOIA Exemption 7(F).  *See id.* § 552(b)(7)(F).  As explained in SPLP's January 7, 2020 letter, any of the three types of consequence modeling distances is some of <u>the most sensitive</u> confidential security information that is protected for homeland security purposes, and release of that information would facilitate — and therefore might encourage — sabotage, damage, or harm to the pipeline.[3]  A hostile actor could use the redacted information as a roadmap to determine where or how an attack would cause the greatest harm, a fact well recognized by former Pennsylvania Public Utility Commission Pipeline Safety Chief who noted "*release of the requested records would compromise security against sabotage or criminal or terroristic acts regarding pipelines facilities by illustrating the extent of the impact zone, including casualty and damage assessments at various ranges, regarding an accident (or sabotage event).*"[4]

Because sensitive information of this nature might incentivize such attacks, federal courts have repeatedly recognized the harm caused by disclosing information about the consequences of attacks on or accidents at critical infrastructure, such as pipelines, because spill modelling might facilitate "intentionally inflicted harm."[5]  The harm in this case is only magnified by the complementary nature of the three redacted modeling results. The incentive for hostile activity created by disclosure is sufficient on its own to make the risk to safety foreseeable.  *See* 5 U.S.C. § 552(a)(8)(A)(i)(I).  The foreseeability of this harm with respect to pipelines has been independently confirmed by the Federal Bureau of Investigation, the Department of Homeland

---

[2] *See Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018) ("[T]he court does not read the statutory 'foreseeable harm' requirement to go so far as to require the government to identify harm likely to result from disclosure of each of its Exemption 5 withholdings. A categorical approach will do.").

[3] Letter from Troutman Sanders LLP to Madeline M. Van Nostrand, PHMSA FOIA Officer, at 7-8 (Jan. 7, 2020).

[4] *See id.* at 8; *see also id.* Attachment 8.

[5] *See Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 206 (D.C. Cir. 2014) (exempting inundation maps depicting consequences of dam failure); *Greenpeace, Inc. v. Dep't of Homeland Sec'y*, 311 F. Supp. 3d 110, 128-30 (D.D.C. 2018) (attacks at chemical facilities); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 249 F. Supp. 3d 516, 522-23 (D.D.C. 2017) (pipeline spill modeling); *Living Rivers, Inc. v. U.S. Bureau of Reclamation*, 272 F. Supp. 2d 1313, 1321-22 (D. Utah 2003) (dam inundation maps).

Amal Deria, Esq.
December 18, 2020
Page 3



Security, and the Governmental Accountability Office, as laid out in SPLP's prior correspondence.[6]

**Reasonably Foreseeable Harm to Confidentiality or Commercial Interests**

As an initial matter, the question of whether FOIA Exemption 4 requires a showing of reasonably foreseeable harm beyond the confidential nature of the information itself is not settled.   One federal court has concluded that, under "the plain and ordinary meaning of Exemption 4[,]" "the relevant protected interest is that of the information's *confidentiality* — that is, its private nature."[7] Consequently, "[d]isclosure would necessarily destroy the private nature of the information, no matter the circumstance."[8]   That conclusion holds in this case, too.

Disclosure would also cause reasonably foreseeably harm even if the interests protected by Exemption 4 are read more expansively to include, for instance, SPLP's commercial interests.[9] *See id.* § 552(b)(4).   Of course, any increased risk of hostile action against one of SPLP's pipelines is not only a risk to individual safety (the most important concern), but also harm to the Company's commercial interest in the project.  Even beyond the threat of physical harm, however, disclosure of this information can still harm SPLP's commercial interests.  Again, as explained in prior correspondence to PHMSA, third-party actors clearly intend to deploy certain safety-related information about this project to delay, object to, or interfere with regulatory approvals.[10]  Given the commercial and sensitive nature of the information at issue, it is consistently and customarily maintained as private and closely held by SPLP, as well as the entire pipeline industry and even State agencies.   As such, SPLP clearly designates this information as "Proprietary and Confidential" when it is submitted to governmental agencies  consistent with federal laws.[11]

---

[6] *See* Letter from Troutman Sanders LLP to Madeline M. Van Nostrand, PHMSA FOIA Officer, at 4, 4 n.16, 8-9, 8-9 nn.35-37 (Jan. 7, 2020).

[7] *Am. Small Bus. League v. U.S. Dep't of Def.*, 411 F. Supp. 3d 824, 836 (N.D. Cal. 2019).

[8] *Id.*

[9] *Cf. Ctr. for Invest. Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 113 (D.D.C. 2019) (suggesting that the foreseeable-harm standard might require impacts to the submitter's economic interests under Exemption 4).

[10] *See id.* at 4, 4 n.17 (citing *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)).

[11] The requester of this information has previously asserted that "distance vs. hazard calculations have been widely discussed in the community around the pipeline including in public government reports[.]" Letter from Mike Soraghan, E&E News, to Madeline Van Nostrand, PHMSA at 1 (Mar. 4, 2020).  The requester links to a November 28, 2018 report prepared by G2 Integrated Solutions for the County of Delaware, Pennsylvania.  The report cited by the requester is a completely distinct analysis prepared by a different entity that provides only general risk assessment estimates.  Nowhere does it include the results redacted in the NOPV or results similar to those redacted in the NOPV.  As such, this report has no bearing on the exempt status of the modeling results redacted from the NOPV.  To lose that status, "the 'same agency' must have previously disclosed the 'exact information' at issue."  *Greenpeace, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 131 (D.D.C. 2018) (quoting *Valfells v. CIA*, 717 F. Supp. 2d 110, 117 (D.D.C. 2010)).

**Amal Deria, Esq.**
December 18, 2020
Page 4



---

**Summary**

As set forth above and detailed in prior correspondence, the facts and the law clearly support the continued protection of this commercial sensitive security information under FOIA Exemptions 4 and 7(F).   Further, the release of the redacted information would cause substantial and reasonably foreseeable harm to SPLP and potentially the public.   For that reason, continued protection of this information is mandated by and consistent with existing statutes, regulations, case law, and PHMSA's own precedent, policies and procedures.

Should you have any further questions, please let us know.

Sincerely,

Catherine D. Little

Enclosure

cc:    Greg Mcilwain (Sr. Vice President of Operations, Energy Transfer)
        Curt Stambaugh, Esq. (Assistant General Counsel, Energy Transfer)
        Annie Cook, Esq. (Troutman Pepper)

Attachment S

FOIA Appeal
(Dec. 30, 2020)

APPEAL OF DENIED FOIA REQUEST, PHMSA CONTROL NO. 2020-0044



December 30, 2020

Howard R. Elliott                                                    FOIA APPEAL
Administrator                                                       2021-0045
Pipeline and Hazardous Materials Safety Administration
1200 New Jersey Avenue SE
Washington DC 20590

**Submitted via email to** howard.elliott@dot.gov **and** phmsa.foia@dot.gov

Dear Mr. Elliott:

On December 4, 2019 I requested an unredacted copy of the Notice of Probable Violation
(NOPV) which PHMSA issued in CPF No. 1-2019-5006 to Sunoco Pipeline, L.P. (Sunoco) on
May 17, 2019. On September 30, 2020 PHMSA denied my request. I respectfully appeal.

I note that I may have exceeded the 90-calendar day window for an administrative appeal of this
denial by one day. Given the extraordinary circumstances of the COVID-19 outbreak, I
respectfully request that you exercise your discretion to administratively process my appeal. I
note that it took PHMSA nearly 10 months to deny my request, following a denial of my request
for expedition. I did not contest either the denial of expedition (despite the significant public
safety concerns associated with my request) nor the length of time it took to issue the denial. I
will appreciate your processing of my request despite the possible inadvertent exceedance of a
time limit on my part by a few hours. If you decide not to process my appeal, I respectfully ask
that you treat it as a new FOIA request for an unredacted copy of the above NOPV.

**Background.**

On May 17, 2019, PHMSA issued an NOPV to Sunoco alleging probable violations of a number
of applicable federal regulations. In all prior cases of which I am aware, NOPVs are published
promptly on PHMSA's "Enforcement Transparency" website. This one, however was not
published for months afterwards, despite the fact that a docket entry was created for it that
provided the regulations "probably" violated. And when it finally was posted, information had
been redacted from it—information that was indicative of what Sunoco calls the "blast radius" of
a hazardous, highly volatile liquids export pipeline that it proposed to construct in a densely
populated area.

PHMSA's denial of my request, issued September 30, 2020, further identifies the redacted
information as "two sentences from the report, "Hazard Assessment of the Proposed Mariner
East 2 Pipeline" (Mar. 27, 2017) (Stantec Report)" and "two excerpts (two and three sentences,
respectively) from the report, "Energy Transfer: Mariner East 2 Pipeline Re-Route near Chester

and Delaware, Pennsylvania – Butane Spill Assessment; Final report" (Oct 15, 2018) (Stantec Final Report)."

## Discussion.

PHMSA made these quotes a part of the record by including them in an NOPV. It is unprecedented, to the best of my knowledge, for PHMSA to withhold an NOPV from public view. It appears that what happened is that Sunoco claimed *post hoc* that the quoted sections of these reports were confidential and should be withheld from public view. If this is the case, I respectfully disagree for the following reasons, which I respectfully reserve the right to supplement in the future as new information becomes available.

1. As stated above, it appears that this is the first time that PHMSA has ever withheld an NOPV from public view. This conflicts with the commitment to openness regarding regulatory violations embodied in PHMSA's "Enforcement Transparency" website.

2. PHMSA consulted with Sunoco regarding my request and evidently allowed it to assert arguments for why the redacted sections should be withheld. I requested a copy of Sunoco's objections so that I could respond to whatever arguments it made. Sunoco objected to the release of *its objections* to me. Ultimately, PHMSA chose to withhold these objections and to treat my request for them as a new FOIA request. PHMSA has still not adjudicated this subsequent FOIA request (meaning it has neither been granted nor denied). Nevertheless, as of this writing, I have not been provided Sunoco's objections to my FOIA request, nor its objections to the release of its objections.

3. In footnote 1 of its denial of my request, PHMSA states "Sunoco designated every page of the Stantec Final Report as "Proprietary and Confidential Information. Confidential Information not subject to Disclosure to third parties under the provisions and procedures specified in 'The Public Utility Confidential Security Information Disclosure Protection Act; (35 P.S. §§ 2141.1 to 2141.6) and the [Pennsylvania] PUC's [Public Utility Commission] regulations implementing such Act at 52 Pa. Code §§ 102.1 – 102.4."" But PHMSA is not subject to Pennsylvania state statutes nor to regulations of the Pennsylvania Public Utility Commission. Any designation by Sunoco under those laws or statutes are not binding upon PHMSA; nor is PHMSA even in a position to determine whether such a designation was even properly made under the cited authorities. In fact, PHMSA made the quoted sections publicly accessible under its own policies by including them in an NOPV. This claim was undoubtedly raised by Sunoco, but PHMSA should find it without merit as it is based upon authorities under which PHMSA has no obligations. If PHMSA relied on Pennsylvania laws or regulations in withholding the redacted information, I respectfully assert it did so in error.

4. The withheld information, which pertain to the distances to which harmful or fatal effects or property damage can be expected in the event of continued highly volatile liquids releases from Sunoco pipelines, is not confidential information. There are a number of reports that examine these distances; for example, the so-called Citizens Risk Assessment of Mariner East, completed by Quest Consultants and a Risk Assessment of Mariner East completed by G2 Integrated Solutions and procured by Delaware County Council. Both

of these reports are publicly available in their entirety. Quest used a proprietary tool called CANARY by Quest to estimate a 2,135 fatal impact radius; and CANARY is a product that Quest makes available for purchase or lease. G2 used a tool called Phast to model a 6,800 potential fatality zone. These numbers are in the public domain, along with their underlying assumptions. Sunoco's corresponding distances are surely in the range modeled by these two reports. None of these figures are confidential information in the same sense that, for example, a company's order book or shipping volumes might be. Rather, these are distances that can be modeled using commercially available off-the-shelf software and which depend solely upon the (nonproprietary) laws of physics and assumptions that can be varied by the user. Sunoco may wish to avoid acknowledging even the existence of what it calls the "blast radius;" its section 195.440 public awareness program entirely fails to communicate the extreme hazard associated with an unignited heavier-than-air combustible vapor cloud. However, the existence of something that derives from the inherently hazardous properties of highly volatile liquids and the laws of physics, and that can be modeled by anyone who makes the effort is not something for which FOIA provides an exemption.

5. Sunoco itself has already published this information elsewhere. In a publicly available document it calls "EMERGENCY RESPONSE PROCEDURES MANUAL FOR SUNOCO PIPELINE, LP 8" ETHANE PIPELINE SARNIA, ON CANADA" (copy attached) Sunoco publishes details of what it calls (in this document) a "blast radius" and "Emergency Planning Zone" or EPZ. Regarding the EPZ associated with an 8-inch ethane pipeline, Sunoco writes, "The High Vapor Pressure Ethane pipeline which has a high vaporization rates expand into plumes of flammable vapor and follows topography with wind direction and will include all areas within 1.0 km (0.6 mi) of the pipeline." Sunoco continues "SPLP [Sunoco] has applied the technical parameters covered in the EPZ analysis for HVP [high vapor pressure] pipelines and has determined that the following EPZ distances for the selected pipeline diameters be used...700 meters." There is no basis to keep secret information that Sunoco itself has already made public in another location.

6. PHMSA misapplies the *Argus Leader* standard. Based apparently on Sunoco's arguments (which again I have neither seen nor been afforded an opportunity to address) PHMSA asserts that the two-part test from the *Argus Leader* Supreme Court case justifies the withholding of the redacted information under FOIA Exemption 4. But this argument is unavailing; in fact, neither standard articulated in *Argus Leader* is applicable here.

Exemption 4 protects from release "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." Here, we are not dealing with commercial or financial information; the only remaining question is it is a "trade secret." For all of the reasons stated above, I assert the size of the blast radius associated with Sunoco's proposed pipeline is no more a trade secret than the sum of 5+5 or the composition of the atmosphere.

With respect to the first Argus Leader test, the Department of Justice writes on its website (www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-food-marketing-institute-v-argus-leader-media) "First, in order to qualify as "confidential," the party imparting the

information (i.e., the submitter) should customarily treat the information as private. As the Supreme Court explained, "it is hard to see how information could be deemed confidential if its owner shares it freely." This is precisely the situation here: not only is the information that Sunoco would like to keep secret widely and publicly available through sources like the Delaware County Risk Assessment of Mariner East; Sunoco has <u>itself</u> already made this information public in, e.g., the document cited in paragraph 5 above. Moreover, its availability was already determined by PHMSA in the requested NOPV; PHMSA explicitly cited it in order to justify its enforcement action. That decision should not be revisited based upon Sunoco's after-the-fact objections.

The second test from Argus Leader is also unavailing. Department of Justice:

> "Second Condition—Assurance of Confidentiality by Government. As mentioned above, while the Supreme Court's opinion did not determine to what extent the second condition—an assurance of confidentiality by the government—must also be met, agencies should as a matter of sound administrative practice consider whether the context in which the information was provided to the agency reflects such an assurance."

PHMSA conclusively demonstrated that it provided no such assurance to Sunoco when it included the redacted material in an NOPV—a document that in all previous cases of which I am aware PHMSA makes public promptly and in its entirety. PHMSA should not revisit this decision afterwards. Doing so makes it impossible for the public to evaluate or make effective use of the subject NOPV, thereby defeating the purpose of making these NOPVs public in the first place.

## <u>Conclusion.</u>

For the foregoing reasons, I respectfully appeal the denial of my FOIA request 2020-0044, and request the release in its entirety of the subject NOPV. Should this appeal be denied simply on the basis of timeliness, I respectfully request that this letter be treated as a new request under FOIA for the subject NOPV.

Respectfully submitted,


Eric Friedman

Attachment T

PHMSA Final Determination
(Jun. 24, 2021)



**U.S. Department**
**of Transportation**

1200 New Jersey Avenue, S.E.
Washington, D.C.  20590

**Pipeline and Hazardous**
**Materials Safety Administration**

**06/24/2021**
**FOIA Control Numbers: 2021-0021A and 2021-0045A**

***Transmitted via Electronic Mail to catherine.little@troutman.com – Read Receipt Requested***

Catherine D. Little
Troutman Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308-2216

Dear Ms. Little:

On December 9, 2020, PHMSA informed you that a Freedom of Information Act (FOIA) appeal had been filed related to your client, Sunoco Pipeline L.P. (Sunoco), and indicated that the agency would be evaluating whether information redacted from a Notice of Probable Violation (NOPV), CPF 1-2019-5006, was properly withheld. As part of the appeal review process, PHMSA requested that Sunoco provide a written explanation of any harm that it would suffer if the NOPV was disclosed in full. On December 18, 2020, you sent a letter responding to that request (December 18 Letter).  On December 30, 2020, PHMSA received a second FOIA appeal seeking the same unredacted NOPV.

Your December 18 Letter stated that disclosing the redacted portions of the NOPV would be "reasonably foreseeable to cause harm to Sunoco in two primary respects: to public safety and to the Company's commercial interests." December 18 Letter at 2. The December 18 Letter further alleged that the information redacted in the NOPV should continue to be withheld because the redacted information is "commercial sensitive security information under FOIA Exemptions 4 and 7(F)." December 18 Letter at 4. In an earlier letter to PHMSA, dated January 7, 2020 ("January 7 Letter"), you also stated that the information falls under FOIA Exemptions 4 and 7(F).[1]

After considering all of Sunoco's objections regarding the release of the redacted information, as well as the arguments made in the appeals, we have concluded that the information is not covered

---

[1] In a letter dated December 20, 2019, PHMSA informed you that it had received two FOIA requests for unredacted versions of the Notice of Probable Violation (NOPV) that PHMSA issued on May 17, 2019 in enforcement action CPF No. 1-2019-5006, which has been posted in redacted form on PHMSA's website.  We explained that PHMSA was consulting with Sunoco because Sunoco asserted that the redacted information was confidential.

In accordance with Executive Order 12600 (Pre-disclosure notification procedures for confidential commercial information) and U.S. Department of Transportation (DOT) FOIA regulations in 49 C.F.R. § 7.29(a) and (b), if DOT receives a request for a record that includes information designated by the submitter as confidential commercial information, DOT notifies the submitter and provides the submitter an opportunity to submit any written objections to release.  The agency considers carefully a submitter's objections and specific grounds for nondisclosure prior to determining whether to disclose commercial information.

by FOIA Exemption 4.  We have also determined that the redacted information is not covered by Exemption 7(F), and that PHMSA would choose to exercise its discretion to release the information even if Sunoco could show that Exemption 7(F) applied.

Accordingly, PHMSA intends to release unredacted copies of the NOPV in response to two FOIA appeals on July 2, 2021.  PHMSA further intends to post an unredacted copy of the NOPV and this letter on its website on the same date or shortly thereafter.

*Background*

In 2018, PHMSA performed an inspection of Sunoco's GRE Flow Reversal/Repurposing Project on the Mariner East 2 pipeline system. On May 17, 2019, PHMSA issued an NOPV and Proposed Compliance Order, CPF 1-2019-5006, alleging violations of the pipeline safety regulations. Specifically, the NOPV alleged that Sunoco violated PHMSA's public awareness program regulations by failing to tailor its written public education communication coverage area (Buffer Area) to its pipeline's unique attributes and characteristics, location, and potential impact consequences, in accordance with 49 C.F.R. § 195.440(c).

PHMSA's public awareness program is designed to educate the public living and working in proximity to a transmission pipeline of possible hazards associated with unintended releases from a hazardous liquid pipeline facility. 49 C.F.R. § 195.440(d)(2).  When promulgating these regulations, PHMSA noted that "[p]romoting pipeline safety requires enhanced communications (by pipeline operators) with the public to increase public awareness of pipeline operations and safety issues."[2]   Section 195.440(c) requires operators to follow the general program recommendations, including baseline and supplemental requirements of American Petroleum Institute Recommended Practice (API RP) 1162, *Public Awareness Programs for Pipeline Operators*, unless the operator provides justification in its program or procedural manual as to why compliance with all or certain provisions of the recommended practice is not practicable and not necessary for safety.

As evidentiary support for the allegation that Sunoco failed to tailor its public awareness Buffer Area to fit its particular pipeline, location, and potential impact consequences, PHMSA quoted three excerpts in its NOPV from two reports Sunoco had provided during the 2018 inspection. Specifically, on page 4 of the NOPV, PHMSA quoted two sentences from the report, "Hazard Assessment of the Proposed Mariner East 2 Pipeline" (Mar. 27, 2017) (Stantec Report).  Sunoco marked each page of the Stantec Report as "Proprietary and Confidential Information."

On page 5 of the NOPV, PHMSA quoted two excerpts (two and three sentences, respectively) from the report, "Energy Transfer: Mariner East 2 Pipeline Re-Route near Chester and Delaware, Pennsylvania – Butane Spill Assessment; Final report" (Oct 15, 2018) (Stantec Final Report).  Sunoco marked every page of the Stantec Final Report as "Proprietary and Confidential Information. Confidential Information not subject to Disclosure to third parties under the provisions and procedures specified in 'The Public Utility Confidential Security Information

---

[2] Pipeline Safety:  Pipeline Operator Public Awareness Program, 70 Fed. Reg. 28833, 28833 (May 19, 2005) (parenthetical in the original).

Disclosure Protection Act; (35 P.S. §§ 2141.1 to 2141.6) and the PUC's regulations implementing such Act at 52 Pa. Code §§ 102.1 – 102.4."

After Sunoco received the NOPV issued by PHMSA, Sunoco contacted PHMSA expressing concerns and objecting to PHMSA's plan to post the NOPV with the quoted information on its public website.  PHMSA and Sunoco discussed the issue in multiple communications.

PHMSA currently makes enforcement information publicly available, in accordance with the Federal pipeline safety laws at 49 U.S.C. § 60135, through posting certain enforcement documents, including Notices of Probable Violation, on the agency's public website.  To the extent operator-submitted information is incorporated into PHMSA's enforcement documents, that information is also posted.  PHMSA's public website informs the public of PHMSA's enforcement program generally and provides case-specific information, including the basis for any allegations and the final determination in each enforcement action.

While discussions with Sunoco regarding record sensitivities were ongoing, PHMSA posted a copy of the NOPV as redacted by Sunoco to ensure timely availability to the public of at least a portion of it.  Subsequently, PHMSA received multiple FOIA requests for the unredacted NOPV. At that time, PHMSA determined that there was justification to withhold the redacted information in the NOPV pursuant to FOIA Exemption 4 and denied the FOIA requests. If a record or part of a record is withheld, requesters may submit appeals to the PHMSA Administrator. 49 C.F.R. § 7.32. On November 13, 2020, PHMSA received a FOIA appeal seeking an unredacted copy of the NOPV. On December 30, 2020, PHMSA received a second FOIA appeal seeking the same information. The FOIA appeal process provides an opportunity for the agency to review the initial decision, taking into account any arguments or facts presented by the requester/appellant, additional information provided by the submitter (if any), and any relevant information that may have been missed or applied incorrectly.

After a new review on appeal of the complete FOIA file and case law, PHMSA has determined that FOIA Exemption 4 does not apply.

*FOIA Exemption 4*

Exemption 4 of the FOIA authorizes an agency to withhold from disclosure those records that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).  Because a company such as Sunoco is considered a "person" under FOIA, PHMSA obtained the information from a person.[3]  Sunoco does not contend that the redacted information consists of "trade secrets," is "financial information," or is "privileged."  For the reasons outlined below, moreover, PHMSA finds that the information is not "commercial" or "confidential."  The information therefore cannot be protected by FOIA Exemption 4.

---

[3]  5 U.S.C. § 551(2) (defining "person" as "an individual, partnership, corporation, association, or public or private organization other than an agency").

Commercial Information

Sunoco claims that the redacted information is "confidential commercial information about [Sunoco's pipeline] system and hypothetical illustrations of potential impact zones, damage assessments and casualty assessments."   January 7 Letter at 4. Sunoco states that it has a "commercial interest in the subject information as it relates to the potential impact of a pipeline incident on its pipeline system which transports products in interstate and intrastate commerce." Id. Sunoco asserts that its commercial interest "arises from the fact that the modeling specifies the potential for harm to the pipeline system and the public." Id.

In evaluating whether information is commercial for purposes of Exemption 4, courts have stated that not all information submitted by a company is necessarily commercial.  The D.C. Circuit has stated, "all information submitted to the government cannot be considered commercial just because the actor submitting the information is engaged in for-profit business." See Pub. Citizen Health Research Grp. v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983). In Center for Investigative Reporting v. U.S. Department of Labor, 424 F. Supp. 3d 771 (N.D. Cal. 2019), the court stated, "information is deemed commercial if it relates to the commercial activity of a business, but 'not every bit of information submitted to the government by a commercial entity qualifies for protection.'"

The information that Sunoco wishes to withhold is factual safety information – distance to lower flammable limit, the maximum predicted distance to thermal radiation consequences, and the maximum predicted spill – used by and for emergency response.  As in Chicago Tribune Co. v. FAA, No. 97-2363, 1998 WL 242611, at *3 (N.D. Ill. May 7, 1998), a case concerning a request for airline records of medical incidents, Sunoco's information is not commercial in nature because it is factual information developed for emergency response and "do[es] not contain any in-depth analysis of the [business] in dealing with these incidents." Additionally, these numerical values or numbers relate to the well-known physical properties of the natural gas liquids mainly comprised of propane and butane being transported and the known safety concerns that come from moving highly volatile liquid. As a regulated pipeline operator, the development of such information is specifically driven by safety-related compliance obligations under PHMSA's pipeline safety regulations.  Thus, the information cannot be considered "commercial" for purposes of protection under FOIA Exemption 4.

Confidential Information

Even if the redacted information were commercial, it could not be protected under Exemption 4 because it is not confidential.  To examine whether the information fits within the definition of "confidential," PHMSA turned to Food Marketing Institute v. Argus Leader Media, 139 S. Ct. 2356 (2019).  In Argus Leader, the Court held that "at least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." 139 S. Ct. at 2366.  To evaluate the confidential nature of the information, PHMSA applied Exemption 4 guidance issued by the Department of Justice (DOJ) following Argus Leader, available at https://www.justice.gov/oip/exemption-4-after-supreme-courts-ruling-food-marketing-

institute-v-argus-leader-media;        https://www.justice.gov/oip/step-step-guide-determining-if-commercial-or-financial-information-obtained-person-confidential.

The DOJ guidance provides three steps to follow to determine if information is "confidential" under Exemption 4.  The information must first meet the threshold requirement that the submitter "customarily keep the information private or closely-held."  Sunoco asserts that it customarily keeps the redacted information private or closely-held, and PHMSA assumes for the sake of argument that this assertion is correct.

Even if the submitter maintains that the information is customarily kept private, the DOJ guidance provides two additional steps for the agency to evaluate before the information can be found confidential under Exemption 4.  A submitter generally "could not reasonably expect confidentiality upon submission and so the information is not confidential" if: (1) the government did not "provide an express or implied assurance of confidentiality when the information was shared with the government"; and (2) there were "express or implied indications at the time the information was submitted that the government would publicly disclose the information."  After evaluating these two additional steps (steps two and three of DOJ's guidance), PHMSA has determined that the redacted information is not confidential.

- <u>PHMSA did not provide Sunoco an express or implied assurance of confidentiality.</u>

Sunoco argues that PHMSA provided express or implied assurances of confidentiality through Department of Transportation (DOT) and PHMSA regulations governing the submitter consultation process, through its 2014 Facility Response Plan Policy, and through historical practice.  January 7 Letter at 6.  PHMSA disagrees.

*First*, neither DOT's FOIA regulations nor PHMSA's process for submitters to request confidential treatment of records under 49 C.F.R. § 190.343 provides express or implied assurances of confidentiality.  The purpose of DOT's FOIA regulations in 49 C.F.R. § 7.29 is to inform submitters of the DOT consultation procedures under FOIA that precede the determination regarding disclosing commercial information. In § 7.29(b), DOT states:

> The responsible DOT component, to the extent permitted by law, considers carefully a submitter's objections and specific grounds for nondisclosure prior to determining whether to disclose commercial information.

Likewise, the purpose of 49 C.F.R. § 190.343 is clear.  It states that "[w]hen you submit information to PHMSA during a rulemaking proceeding, as part of your application for special permit or renewal, **or for any other reason**, we may make that information publicly available unless you ask that we keep the information confidential" (emphasis added).  The regulation then proceeds to outline a submittal procedure for requesting confidential treatment, in which case PHMSA notifies the submitter of the consultation process set forth in 49 C.F.R. § 7.29.  In fact, § 190.343(b) specifically notes that information may be disclosed over a submitter's objections.  Therefore, these regulations provide notice to Sunoco that the information *may* be released and do not provide any assurance of confidentiality.

*Second*, PHMSA's 2014 policy on Facility Response Plans (oil spill response plans or OSRPs) does not provide express or implied assurance to operators of confidentiality of the information at issue. The purpose of the 2014 policy is to "prescribe the policy on the types of information falling into the four categories of information protected under 49 U.S.C. § 60138 in oil spill response plans." By their terms, the 2014 policy and Section 60138 only apply to OSRPs submitted under 49 CFR Part 194. Because the information at issue here was not submitted in an OSRP, neither the 2014 policy nor Section 60138 is relevant.

*Third*, although Sunoco argues that PHMSA made an implied assurance of confidentiality through a historical practice of protecting the information at issue, Sunoco did not provide any examples showing that PHMSA historically protects such information. In fact, PHMSA has been unable to identify any instance where it has treated this type of information as confidential. Thus, there is no historical practice of protecting the information at issue.

- <u>There were express or implied indications that PHMSA would disclose the information.</u>

In 2018 when Sunoco submitted the two reports containing the pieces of information that PHMSA incorporated, there were two separate express or implied indications that PHMSA would disclose the information to the public.

*First*, the submission to PHMSA took place prior to the ruling in <u>Argus Leader</u>. At that time, the governing law provided that if a person was required to provide information to PHMSA, PHMSA would only treat that information as "confidential" under Exemption 4 if it determined that disclosure would be likely "to cause substantial harm to the competitive position of the person from whom the information was obtained" or "to impair the Government's ability to obtain necessary information in the future." <u>People for the Ethical Treatment of Animals v. HHS</u>, 901 F.3d 343, 350 (D.C. Cir. 2018) (quoting <u>Nat'l Parks & Cons. Ass'n v. Morton</u>, 498 F.2d 765, 770 (D.C. Cir. 1974)). Therefore, at the time of submission, there were express or implied indications that PHMSA would disclose the information unless application of the <u>National Parks</u> standard compelled confidential treatment.

The <u>National Parks</u> standard would not have compelled confidential treatment: the release of the redacted information will not cause substantial competitive harm or impair PHMSA's ability to obtain necessary information in the future. Prior to <u>Argus Leader</u>, Sunoco did not assert that Exemption 4 applied, and instead only discussed Exemption 7(F). <u>See</u> Attachment 4 to January 7 Letter (June 5, 2019 email). PHMSA, moreover, is not persuaded by the allegations of harm made by Sunoco. PHMSA, for example, disagrees with Sunoco's assertions that the release of the unredacted NOPV would increase the risk of a hostile action against its pipeline. The information at issue here, i.e., the distance to the lower flammable limit, the maximum predicted distance to thermal radiation consequences and the maximum predicted spill extent, is general in nature and does not identify any particular areas of weakness or points of vulnerability. PHMSA finds that release of information of general applicability to the entire pipeline does not provide specific targeting information that could be used by a potential bad actor. The information at issue does not provide any information that would make Sunoco's Mariner East 2 pipeline a more attractive

target than similar HVL pipelines.[4]   Indeed, PHMSA is aware that this type of information is already in the public domain and any person can derive similar results using standard calculations based on the well-known physical properties of the natural gas liquids, mainly comprised of propane and butane, being transported.  For example, inputting limited pipeline variables into a publicly-available software product allows any person to calculate similar thermal radiation consequences.[5]   PHMSA has also concluded that Sunoco does not demonstrate substantial competitive harm by arguing that "disclosure of this information can still harm SPLP's commercial interests," because "third-party actors clearly intend to deploy certain safety-related information about this project to delay, object to, or interfere with regulatory approvals."  December 18 Letter at 3.  Exemption 4 does not shield pipeline safety information from public view merely because members of the public might find it relevant to ongoing regulatory proceedings.  See Jurewicz v. USDA, 741 F.3d 1326, 1331 (D.C. Cir. 2014) ("Exemption 4 . . . does not guard against mere embarrassment in the marketplace or reputational injury.").

*Second*, there were express or implied indications that PHMSA would use the information in enforcement documents.  As Sunoco is aware, PHMSA achieves enforcement transparency, in accordance with the Federal pipeline safety laws at 49 U.S.C. § 60135, through posting certain enforcement documents, including NOPVs, on the agency's public website.  For more than ten years, PHMSA has posted operator-submitted information incorporated into PHMSA's enforcement documents, a practice that informs all operators (and the public) of PHMSA's basis for making an allegation of violation.  Thus, Sunoco was aware that at the time the information was submitted that PHMSA might well disclose the information to the public in the event of a safety violation.

Because PHMSA did not provide an express or implied assurance of confidentiality, and because there were indications at the time the information was submitted that PHMSA would publicly disclose the information, the information cannot be considered "confidential" and therefore could not be protected under FOIA Exemption 4 even if it were "commercial." [6]

---

[4] PHMSA's Office of Pipeline Safety Preparedness, Emergency Support and Security Division has reviewed this information and does not find that the information, if released, would compromise the security of the pipeline.

[5] In fact, in our research on the public availability of this type of information, PHMSA noted instances where public sources discuss this type of modeling data. *See, e.g.,* Mark J. Stephens, *A Model for Sizing High Consequence Areas Associated with Natural Gas Pipelines*, C-FER Technologies Report 99068 (October 2000) available at https://pstrust.org/docs/C-FerCircle.pdf (last accessed June 2021).  In December 12, 2019 correspondence to PHMSA, moreover, the FOIA requester, Middletown Coalition for Community Safety (MCCS), states:

> [M]ultiple estimates of these distances are already publicly available from a number of studies posted on the MCCS web site, including one assessment completed by the government of Delaware County, Pennsylvania, and released publicly in its entirety in December 2018. There are also publicly available tools to model these distances, including the software program CANARY, available for lease from Quest Consultants of Norman, Oklahoma. Modeling such impacts is a matter of materials and physics, and has nothing to do with proprietary trade secrets.

[6] The FOIA Improvement Act of 2016 provides that even if information is covered by a FOIA exemption, an agency may withhold the information only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A).  Because PHMSA has determined that the redacted information is not covered by a FOIA exemption, it does not need to address this provision.

*FOIA Exemption 7(F)*

PHMSA has also concluded that Exemption 7(F) does not permit withholding of the unredacted NOPV. Exemption 7(F) protects law enforcement records, but only to the extent that release of the records "could reasonably be expected to endanger life or physical safety of any individual." In fact, providing this information can reasonably be expected to educate the public on the possible hazards associated with an unintended release of propane and butane and does not endanger the life or safety of any individual. This is safety information sought by the public and is used for emergency response.

PHMSA disagrees that release of this information would endanger the life or physical safety of any individual. In any event, Exemption 7(F) merely permits agencies to withhold certain information; it does not require withholding, and PHMSA would make a discretionary release even if Exemption 7 applied. PHMSA believes that any harm attributable to release of this type of information is considerably outweighed by the benefit to the public at-large from being able to better plan emergency response.

*Conclusion*

Accordingly, PHMSA intends to grant the two FOIA appeals seeking unredacted copies of the NOPV and provide this record to the appellants on July 2, 2021. PHMSA also intends to post an unredacted copy of the NOPV and this letter on its website on the same date or shortly thereafter. Please contact me at phmsachiefcounsel@dot.gov if you intend to seek an injunction before that date, or if you have questions.


Sincerely,

Vasiliki Tsaganos

Vasiliki Tsaganos
Deputy Chief Counsel, Office of Chief Counsel
Pipeline and Hazardous Materials Safety Administration