THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUNOCO PIPELINE, L.P., <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF TRANSPORTATION, *et al.*, <br><br> Defendants. | Case No. 1:21-cv-01760-TSC |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................1

BACKGROUND ..............................................................................................................................2

LEGAL STANDARDS....................................................................................................................4

ARGUMENT ....................................................................................................................................4

I.     Sunoco does not allege a cognizable reverse-FOIA claim under the APA. ................4

II.    The data at issue does not fall within a FOIA exemption.........................................7

       A.     The pipeline-rupture data is not "commercial" information within the meaning of FOIA's exemption 4. ...................................................................7

       B.     The risk-analysis data does not fall within FOIA's exemption 7(F) because it could not reasonably be expected to endanger any individual. ......11

III.   Defendants should not be required to produce an administrative record in connection with this motion. ......................................................................................13

CONCLUSION...............................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Akbar v. Cuccinelli*,
   2020 WL 1287817 (D.D.C. Mar. 18, 2020) ........................................................................ 14

*Alston v. Johnson*,
   208 F. Supp. 3d 293 (D.D.C. 2016) .................................................................................. 4

*\*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................... 4, 13

*\*Baker & Hostetler LLP v. U.S. Dep't of Com.*,
   473 F.3d 312 (D.C. Cir. 2006) ........................................................................................ 8, 9

*\*Brancheau v. Sec'y of Lab.*,
   2012 WL 140239 (M.D. Fla. Jan. 18, 2012) ...................................................................... 5

*\*Campaign for Fam. Farms v. Glickman*,
   200 F.3d 1180 (8th Cir. 2000) ......................................................................................... 5

*\*Canadian Com. Corp. v. Dep't of Air Force*,
   442 F. Supp. 2d 15 (D.D.C. 2006) ................................................................................... 5

*Carlson v. U.S. Postal Serv.*,
   504 F.3d 1123 (9th Cir. 2007) ......................................................................................... 8

*\*Chicago Trib. Co. v. FAA*,
   1998 WL 242611 (N.D. Ill. May 7, 1998) ............................................................... 9, 10, 11

*\*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) .............................................................................................. 1, 5, 6

*\*COMPTEL v. FCC*,
   910 F. Supp. 2d 100 (D.D.C. 2012) ................................................................................. 8

*Connecticut v. U.S. Dep't of the Interior*,
   344 F. Supp. 3d 279 (D.D.C. 2018) ................................................................................ 14

*Critical Mass Energy Project v. Nuclear Regul. Comm'n*,
   830 F.2d 278 (D.C. Cir. 1987) ......................................................................................... 9

*Desai v. U.S. Citizenship & Immigr. Servs.*,
   2021 WL 1110737 n.7 (D.D.C. Mar. 22, 2021) ................................................................ 13

*Detroit Int'l Bridge Co. v. Fed. Highway Admin.*,
    666 F. Supp. 2d 740 (E.D. Mich. 2009) .................................................................... 5

*\*Doe, 1 v. Fed. Election Comm'n*,
    920 F.3d 866 (D.C. Cir. 2019) ............................................................................. 5, 6

*\*Fla. Med. Ass'n, Inc. v. Dep't of Health, Educ., & Welfare*,
    947 F. Supp. 2d 1325 (M.D. Fla. 2013) .................................................................. 5

*\*Greenberg v. FDA*,
    803 F.2d 1213 (D.C. Cir. 1986) ............................................................................. 8

*Hunt v. Miller*,
    2020 WL 1156538 (D.D.C. Mar. 10, 2020) .......................................................... 13

*\*Judicial Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
    --- F. Supp. 3d ---, 2021 WL 930350 (D.D.C. Mar. 11, 2021) ........................... 8, 9

*\*Kahn v. Fed. Motor Carrier Safety Admin.*,
    648 F. Supp. 2d 31 (D.D.C. 2009) ......................................................................... 8

*Karim-Panahi v. 4000 Massachusetts Apartments*,
    302 F. Supp. 3d 330 (D.D.C. 2018) ....................................................................... 4

*\*Living Rivers, Inc. v. U.S. Bureau of Reclamation*,
    272 F. Supp. 2d 1313 (D. Utah 2003) .................................................................. 12

*\*100Reporters LLC v. United States Dep't of Just.*,
    316 F. Supp. 3d 124 (D.D.C. 2018) ..................................................................... 10

*Mdewakanton Sioux Indians of Minnesota v. Zinke*,
    264 F. Supp. 3d 116 (D.D.C. 2017) ..................................................................... 14

*\*Nat'l Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) ................................................................................. 8

*\*New York Times Co. v. U.S. Food & Drug Admin.*,
    --- F. Supp. 3d ---, 2021 WL 1178126 (S.D.N.Y. Mar. 29, 2021) ..................... 9, 10

*Nohria v. Renaud*,
    2021 WL 950511 n.3 (D.D.C. Mar. 14, 2021) ..................................................... 14

*Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*,
    704 F.2d 1280 (D.C. Cir. 1983) ......................................................................... 9, 10

*Pub. Citizen v. U.S. Dep't of Health & Hum. Servs.*,
  66 F. Supp. 3d 196 (D.D.C. 2014) ...................................................................9, 10

*Pub. Citizen v. U.S. Dep't of Health & Hum. Servs.*,
  975 F. Supp. 2d 81 (D.D.C. 2013) ....................................................................8, 9

*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*,
  740 F.3d 195 (D.C. Cir. 2014) ............................................................................12

*Rural Hous. All. v. U.S. Dep't of Agric.*,
  498 F.2d 73 (D.C. Cir. 1974) ................................................................................8

Slovinec v. Georgetown Univ.,
  268 F. Supp. 3d 55 (D.D.C. 2017) ........................................................................4

*Tripp v. Dep't of Def.*,
  193 F. Supp. 2d 229 (D.D.C. 2002) ...............................................................5, 6, 7

**Statutes**

5 U.S.C. § 552(b) ............................................................................... 1, 6, 7, 11

18 U.S.C. § 1905 ......................................................................................... 6

49 U.S.C. § 60135 ....................................................................................... 3

**Regulations**

49 C.F.R. § 7.23(b) ..................................................................................... 7

49 C.F.R. § 7.29(b) ..................................................................................... 3

49 C.F.R. § 7.32 ......................................................................................... 3

49 C.F.R. § 190.343(a) ............................................................................... 6

49 C.F.R. § 195.440 ................................................................................... 2

## INTRODUCTION

This case is about whether Plaintiff Sunoco can force the government to redact a few lines of safety information about the general effects of a potential pipeline rupture from a 10-page document that cites Sunoco for certain pipeline-safety violations. The answer is no. "Congress did not limit an agency's discretion to disclose information when it enacted the [Freedom of Information Act]," and "the Act does not afford [a party] any right to enjoin agency disclosure." *Chrysler Corp. v. Brown*, 441 U.S. 281, 294 (1979). So in a reverse-FOIA case like this one—where a party seeks to *prevent* the government from disclosing information—a plaintiff must plausibly allege, through the Administrative Procedure Act, a violation of some law other than FOIA. *Id.* at 317–18. Sunoco cannot and has not done so; the company's APA claim is based almost exclusively on a purported FOIA violation. *See* Compl. ¶¶ 58–68, ECF No. 1. So the complaint should be dismissed at the outset.

Even if Sunoco could proceed under FOIA through the APA, it has not plausibly alleged that the information at issue—risk-analysis data about the possible consequences of a pipeline rupture—falls within FOIA's exemption 4 or exemption 7(F). *See id.* The pipeline-rupture information is outside exemption 4's protection for "commercial or financial information" that is "privileged or confidential" because it is not in any sense "commercial," like sales statistics, income, profits, losses, inventories, operating costs, or customer lists. 5 U.S.C. § 552(b)(4). The risk-analysis data is also outside exemption 7(F)'s protection for law-enforcement information that "could reasonably be expected to endanger the life or physical safety of any individual" because the redacted information at issue is general, not specific, and does not identify any particular points of vulnerability in Sunoco's approximately 350-mile pipeline. *Id.* § 552(b)(7)(F). Put simply, Sunoco would fail to plausibly state a claim even if it could proceed under FOIA alone.

## BACKGROUND

After the Pipeline and Hazardous Materials Safety Administration inspected Sunoco's Mariner East 2 pipeline system in Pennsylvania, the agency issued a Notice of Probable Violation (NOPV) and Proposed Compliance Order, alleging that Sunoco violated certain pipeline-safety regulations.[1]  *See* Compl. ¶¶ 1–2.  One such violation was Sunoco's failure to tailor its public-awareness communications to the pipeline's unique attributes, characteristics, location, and potential impact consequences.  *See* PHMSA Final Determination (June 24, 2021), Compl. Ex. T at 2, ECF No. 1-1; 49 C.F.R. § 195.440(c).  The purpose of this requirement is to educate the public about the possible hazards from unintended releases of a pipeline carrying hazardous liquids, like the Mariner East 2's transportation of propane and butane—two flammable hydrocarbon gases that can cause considerable hazards if released.  49 C.F.R. § 195.440(d)(2).

As support for this violation, the 10-page NOPV excerpted a few lines of data from risk-analysis reports that Sunoco had commissioned from Stantec Consulting Ltd. and provided to the agency during the 2018 inspection.  Comp. ¶¶ 17–18; *see* Ex. 1.  The excerpts quoted general information about the possible consequences of a pipeline rupture, but did not identify any particular geographical areas of weakness or points of vulnerability in the approximately 350-mile pipeline.  Compl. Ex. T at 6; *see* Energy Transfer, *What is Mariner East?* (last visited Sept. 24, 2021), available here.  For example, one excerpt referenced the "maximum distance to the [lower flammable limit] *along the entire pipeline route*" and the "maximum predicted distances to thermal radiation consequences *along the entire pipeline*":

> During initial review of the Stantec 03272017 report covering the 20-inch diameter ME2 project, PHMSA noted that dispersion and thermal radiation consequence modelling results for accidental releases under Section 5.4 noted:
>
> > …the maximum distance to the LFL along the entire pipeline route was predicted to be [Sunoco Redaction]. The maximum predicted distances to thermal radiation consequences along the entire pipeline were: [Sunoco Redaction]

---

[1] A redacted version of the NOPV is attached as Exhibit 1.  The Court may consider this critical document (the basis for the only claim in this case) because it is referenced in the complaint.  *See* Legal Standards, *infra*.

2

Ex. 1 at 4 (emphasis added). The only other excerpted data referenced the "the maximum predicted spill extent" and similarly did not identify any particular points of vulnerability in the pipeline. Compl. Ex. T at 6 ("The information at issue here, i.e., the distance to the lower flammable limit, the maximum predicted distance to thermal radiation consequences and the maximum predicted spill extent, is general in nature and does not identify any particular areas of weakness or points of vulnerability."); Ex. 1 at 5.

In accordance with pipeline-safety laws, the agency publicly posted the NOPV on its website with the redactions above marked as "Sunoco Redaction" to reflect that the redactions were requested by Sunoco. *See* Ex. 1; *see* 49 U.S.C. § 60135 (requiring "a monthly updated summary to the public of all gas and hazardous liquid pipeline enforcement actions"). Discussions between Sunoco and the agency about maintaining these redactions were ongoing when the agency received multiple FOIA requests for the unredacted NOPV.[2] While the agency initially declined to release the unredacted NOPV, it received further submissions on this topic through its FOIA-appeal process. *See* 49 C.F.R. § 7.32. And "[a]fter a new review on appeal of the complete FOIA file and case law," the agency decided to publicly release the unredacted NOPV because it was not covered by FOIA exemption 4 or 7(F). Compl. Ex. T at 3. Consistent with its regulations, the agency provided Sunoco written notice of its decision to publicly release the NOPV. 49 C.F.R. § 7.29(b); Compl. Ex. T.

Sunoco then filed this reverse-FOIA lawsuit, advancing one claim under the APA that the agency's decision to release the unredacted NOPV "improperly applies FOIA exemptions 4 and 7(F), and is contrary to established law and violates applicable Agency regulations." Compl. ¶ 66. Sunoco did not cite any law that mandates withholding of the unredacted NOPV.

---

[2] Although the complaint also mentions the underlying Pipeline Safety Violation Report (PSVR), Compl. ¶ 2, the agency has made no determination to disclose the unredacted PSVR. The agency released redacted portions of the PSVR in February 2021, after consultation with Sunoco.

3

## LEGAL STANDARDS

"To withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Slovinec v. Georgetown Univ.*, 268 F. Supp. 3d 55, 58–59 (D.D.C. 2017) (Chutkan, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But the "presumption of truth accorded factual allegations at this stage does not apply to a plaintiff's legal conclusions in the complaint, including those couched as factual allegations." *Id.* at 59 (citing *Iqbal*, 556 U.S. at 678). And "[a] complaint containing only threadbare recitals of the elements of a cause of action, supported by mere conclusory statements cannot survive a motion to dismiss." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity." *Karim-Panahi v. 4000 Massachusetts Apartments*, 302 F. Supp. 3d 330, 336 (D.D.C. 2018) (Chutkan, J.) (citation omitted); *Slovinec*, 268 F. Supp. 3d at 59 (same). Where, as here, "a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Alston v. Johnson*, 208 F. Supp. 3d 293, 298 (D.D.C. 2016) (Chutkan, J.) (quotation marks omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id.* (citation omitted).

## ARGUMENT

### I. Sunoco does not allege a cognizable reverse-FOIA claim under the APA.

Sunoco's only claim is primarily premised on the idea that Defendants violated the APA by "improperly appl[ying] FOIA exemptions 4 and 7(F)" and deciding to release the unredacted NOPV. *See* Compl. ¶¶ 59–68. But to state a cognizable reverse-FOIA claim, Sunoco "must show that the release of the information at issue was somehow unlawful," and "[i]n order to make this showing, plaintiff generally ca[nn]ot rely on a claim that a FOIA

4

exemption requires the withholding of information from disclosure." *Tripp v. Dep't of Def.*, 193 F. Supp. 2d 229, 238 (D.D.C. 2002). That's because "FOIA is exclusively a disclosure statute." *Chrysler*, 441 U.S. at 292. And FOIA exemptions generally "*allow* agencies to withhold documents, but do not *require* withholding." *Tripp*, 193 F. Supp. 2d at 238; *Chrysler*, 441 U.S. at 292 (explaining that FOIA exemptions only "demarcate[] the agency's obligation to disclose"; they "do[] not foreclose disclosure"); *Campaign for Fam. Farms v. Glickman*, 200 F.3d 1180, 1185 (8th Cir. 2000) ("[A]n agency has discretion to disclose information within a FOIA exemption, unless something independent of FOIA prohibits disclosure."). So if an agency discloses information in response to a FOIA request, "the agency cannot possibly violate FOIA." *Doe, 1 v. Fed. Election Comm'n*, 920 F.3d 866, 872 (D.C. Cir. 2019).

Reverse-FOIA cases therefore fail to state a claim when a plaintiff—like Sunoco here—simply alleges that the agency misapplied certain FOIA exemptions. *Fla. Med. Ass'n, Inc. v. Dep't of Health, Educ., & Welfare*, 947 F. Supp. 2d 1325, 1353 (M.D. Fla. 2013) ("[T]o establish that disclosure of information would be arbitrary and capricious under the APA, a plaintiff must show that the release of the information at issue is somehow unlawful." (citation omitted)); *Brancheau v. Sec'y of Lab.*, 2012 WL 140239, at *4 (M.D. Fla. Jan. 18, 2012) ("[T]o make the required showing in a reverse FOIA suit such as this one, the Plaintiffs ca[nn]ot rely on a claim that FOIA exemptions required the withholding. Rather, they must point to some other law that required withholding of the information."); *Detroit Int'l Bridge Co. v. Fed. Highway Admin.*, 666 F. Supp. 2d 740, 746–47 (E.D. Mich. 2009) ("FOIA leaves to agency discretion the decision whether to disclose otherwise exempted information; therefore some other law must mandate withholding before the APA can be used to obtain such relief."); *Canadian Com. Corp. v. Dep't of Air Force*, 442 F. Supp. 2d 15, 33 (D.D.C. 2006) (explaining that "the very genesis of the 'reverse-FOIA' cause of action" is "when another statute . . . affirmatively protects the requested information from disclosure"); *Tripp*, 193 F. Supp. 2d at 239 ("Plaintiff's APA claim ca[nn]ot be based on an alleged violation of FOIA caused by the release of this information."); *see Chrysler*, 441 U.S. at 290–94; *Doe, 1*, 920 F.3d at 872.

5

Put simply, FOIA "only provides a cause of action to compel disclosure, but not an action to prohibit disclosure." *Tripp*, 193 F. Supp. 2d at 238 (citing *Chrysler*, 441 U.S. at 317–19).

For this reason, "[m]any reverse-FOIA cases are explained in light of the Trade Secrets Act, 18 U.S.C. § 1905, which can constrain an agency's disclosure discretion." *Doe, 1*, 920 F.3d at 872 n.10. But Sunoco did not base its APA claim on the Trade Secrets Act. And it could not do so. The risk-analysis data that appears in the unredacted NOPV does not "concern[] or relate[] to the trade secrets, processes, operations, style of work, or apparatus . . . of any person, firm, partnership, corporation, or association." 18 U.S.C. § 1905. Indeed, although FOIA's exemption 4 allows an agency to withhold "trade secrets," 5 U.S.C. § 552(b)(4), Sunoco nowhere alleges that the risk-analysis data is a "trade secret" under exemption 4, much less the Trade Secrets Act. *See, e.g.*, Compl. ¶ 52 (alleging only that the risk-analysis data is "protected confidential 'commercial . . . information,'" not a "trade secret"); Compl. Ex. T at 3 ("Sunoco does not contend that the redacted information consists of 'trade secrets,' is 'financial information,' or is 'privileged.'"). Nor does the data at issue "concern[] or relate[] to . . . the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures." 18 U.S.C. § 1905. The risk-analysis data in the NOPV is general information about the possible consequences of a pipeline rupture; it has nothing to do with Sunoco's "income, profits, losses, or expenditures." *Id.*

Sunoco also cannot rely on "applicable Agency regulations" to state a cognizable APA claim because those regulations do not *require* Defendants to withhold the risk-analysis data at issue. *See* Compl. ¶ 66; *id.* ¶ 61 (citing "DOT regulations at 49 C.F.R. Part 7 and PHMSA regulations at 49 C.F.R. Part 190"). One regulation explains that parties "may ask [the agency] to give confidential treatment to information" provided to the agency. 49 C.F.R. § 190.343(a). But the same regulation explicitly states that the agency may "decide[] to disclose the information over [a party's] objections," and "will notify [the party] in writing" if it is about to do so. *Id.* § 190.343(b). That is exactly what happened here. Sunoco's only other

cited regulation is similarly permissive. While it provides that Defendants will make "reasonably described records available upon request from a member of the public . . . except to the extent that the records contain information exempt from FOIA's mandate of disclosure," 49 C.F.R. § 7.23(b), nothing in the regulation *mandates* that exempt records are withheld. To the contrary, the regulation makes clear the agency's "policy to make its records available to the public to the greatest extent possible." *Id.* § 7.23(a).

Because Sunoco does not allege that disclosure of the unredacted NOPV is contrary to any law, it has failed to state an actionable reverse-FOIA claim under the APA. *Tripp*, 193 F. Supp. 2d at 239. Sunoco's complaint should therefore be dismissed.

## II.     The data at issue does not fall within a FOIA exemption.

Even if Sunoco could proceed under FOIA through the APA, it fails to plausibly allege that the risk-analysis data in the NOPV—general information about the possible consequences of a pipeline rupture that does not identify any particular points of vulnerability—falls with FOIA exemption 4 or exemption 7(F). So Sunoco's only claim should be rejected.

### A.     The pipeline-rupture data is not "commercial" information within the meaning of FOIA's exemption 4.

Sunoco claims that the risk-analysis data in the NOPV falls within FOIA's exemption 4 because it is "confidential commercial information that is customarily withheld from public disclosure." Compl. ¶ 64. This claim is a misplaced. Exemption 4 allows an agency to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). But Sunoco does not allege that the data at issue are either "trade secrets" or "financial information." *See, e.g.*, Compl. ¶¶ 52, 64; Compl. Ex. T at 3 ("Sunoco does not contend that the redacted information consists of 'trade secrets,' is 'financial information,' or is 'privileged.'"). And general risk-analysis data about the possible consequences of a pipeline rupture is in no sense "commercial."

"The terms in Exemption 4 are to be given their ordinary meanings, and information is 'commercial' under this exemption if, in and of itself, it serves a commercial function or is

7

of a commercial nature." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002) (quotation marks and citations omitted); *Pub. Citizen v. U.S. Dep't of Health & Hum. Servs.*, 975 F. Supp. 2d 81, 101 (D.D.C. 2013) (consulting dictionaries and explaining that "the tem 'commercial' is generally defined to mean 'engaged in commerce' or 'having reference to, or bearing on commerce'"); *see also Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1129 (9th Cir. 2007) ("[I]nformation is commercial if it relates to commerce, trade, or profit"). The risk-analysis data at issue does not come close to meeting that standard. The data, "in and of itself," reveals only general information about the possible consequences of a pipeline rupture. It has nothing to do with "basic commercial operations, such as sales statistics, profits and losses, and inventories." *Judicial Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*, --- F. Supp. 3d ---, 2021 WL 930350, at *3 (D.D.C. Mar. 11, 2021) (quoting *Pub. Citizen*, 975 F. Supp. 2d at 99). It does not reveal information on "revenue, net worth, income, [or] EBITDA [earnings before interest, taxes, depreciation, and amortization]." *Kahn v. Fed. Motor Carrier Safety Admin.*, 648 F. Supp. 2d 31, 36 (D.D.C. 2009). It does not concern "business sales statistics, research data, overhead and operating costs, [or] financial conditions." *COMPTEL v. FCC*, 910 F. Supp. 2d 100, 115 (D.D.C. 2012). It does not contain loan-application information, *Rural Hous. All. v. U.S. Dep't of Agric.*, 498 F.2d 73, 79 (D.C. Cir. 1974), or customer lists, *Greenberg v. FDA*, 803 F.2d 1213, 1216 (D.C. Cir. 1986). And it is completely unrelated "to the income-producing aspects of" Sunoco. *Judicial Watch*, 2021 WL 930350, at *3 (quoting Pub. Citizen, 975 F. Supp. 2d at 99). The risk-analysis data is, in short, not "commercial [in] nature." *Nat'l Ass'n of Home Builders*, 309 F.3d at 38.

It is true that FOIA exemption 4 may apply more broadly "when the provider of the information has a commercial interest in the information submitted to the agency." *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 319 (D.C. Cir. 2006). But "the D.C. Circuit has cautioned that, consistent with the narrow construction given to FOIA exemptions, not every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4." *Judicial Watch*, 2021 WL 930350, at *3 (quoting *Pub. Citizen*,

8

975 F. Supp. 2d at 101). The critical aspect of "commercial" information remains "what it reveals about the company's internal operations or income-producing activities." *New York Times Co. v. U.S. Food & Drug Admin.*, --- F. Supp. 3d ---, 2021 WL 1178126, at *9 (S.D.N.Y. Mar. 29, 2021); *see Pub. Citizen v. U.S. Dep't of Health & Hum. Servs.*, 66 F. Supp. 3d 196, 209 (D.D.C. 2014) ("[T]he applicability of Exemption 4 rests on what information can be gleaned from the disputed records about the company's commercial enterprises and whether that information can be used affirmatively by the company's competitors."). Again, the risk-analysis data here reveals nothing about Sunoco's internal operations or income-producing activities. Just as information about medical emergencies on airline flights is not "commercial," *Chicago Trib. Co. v. FAA*, 1998 WL 242611, at *2 (N.D. Ill. May 7, 1998), neither is information about hypothetical pipeline-rupture emergencies, *see* Compl. ¶ 20 (explaining that Sunoco uses the risk-analysis data "for emergency planning" and shares it "with PHMSA, relevant states, and local emergency responders").

In contrast, "a non-profit organization's reports *describing the operations* of its members' nuclear power plants contained 'commercial' information" because "the commercial fortunes of member utilities could be materially affected by the disclosure of health and safety problems experienced during the operation of nuclear power facilities."[3] *Baker & Hostetler*, 473 F.3d at 319 (emphasis added) (quoting *Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 830 F.2d

---

[3] The D.C. Circuit has also said that "documentation of the health and safety experience of [a company's] products" may be "commercial" if it is "instrumental in gaining marketing approval for their products." *Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). But Sunoco does not allege that the generalized data redacted in the NOPV was instrumental in gaining approval for its pipeline. Rather, it alleges only that it uses the *detailed* risk-consequence-modeling data from the Stantec reports for the Integrity Management Plans required by Defendants' pipeline safety regulations. Compl. ¶ 20. And unlike the documented adverse reactions to intraocular lenses in *Health Research Group*, the generalized risk-analysis data at issue here does not relate to past "health and safety experience[s]" of a pipeline and therefore does not reveal anything about Sunoco's "commercial enterprises" that "can be used affirmatively by the company's competitors." *Pub. Citizen*, 66 F. Supp. 3d at 209.

278, 281 (D.C. Cir. 1987))). And "letters describ[ing] favorable market conditions for domestic [lumber] companies" were considered "commercial" because their disclosure "would help rivals to identify and exploit those companies' competitive weaknesses." *Id.* at 320.

But factual information—whether it be customer complaints, a company's work plan, in-flight medical emergencies, or the potential consequences of a pipeline rupture—is not "commercial" if it is divorced from "basic commercial operations that relate to the income-producing aspects of [the company's] business" and does not "elaborate on [a company's] business or describe its competitive landscape." *100Reporters LLC v. United States Dep't of Just.*, 316 F. Supp. 3d 124, 141 (D.D.C. 2018) (holding that a company's work plan—which "do[es] not elaborate on [a company's] business or describe its competitive landscape"—is not "commercial" information because it "does not reveal basic commercial operations that relate to the income-producing aspects of [the company's] business" (citing *Pub. Citizen Health Rsch. Grp.*, 704 F.2d at 1290)); *New York Times Co.*, 2021 WL 1178126, at *8 (concluding that "[n]either customer nor non-customer complaints are properly classified as commercial information," but a company's "internal classifications and analysis of these complaints may [ ] be appropriately described as commercial and therefore entitled to protection under Exemption 4"); *Chicago Trib. Co.*, 1998 WL 242611, at *3 ("[T]he documents at issue merely contain factual information regarding the nature and frequency of in-flight medical emergencies and do not contain any in-depth analysis of the airlines in dealing with these incidents."). Put simply, "[t]he mere fact that an event occurs," or may occur, "in connection with a commercial operation does not automatically transform documents regarding that event into commercial information." *Chicago Trib. Co.* 1998 WL 242611, at *2.

Because Sunoco has failed to plausibly allege that the risk-analysis data in the NOPV is "commercial" information, its APA claim fails. "The plain language of" FOIA "reveals that the information itself must be commercial in nature" to fall within exemption 4. *Chicago Trib. Co.* 1998 WL 242611, at *3. "If Congress intended the exemption to cover documents containing information concerning anything that occurs [or may occur] during a commercial

10

operation, the words 'commercial information' are scarcely suitable words to express the idea." *Id.*

### B. The risk-analysis data does not fall within FOIA's exemption 7(F) because it could not reasonably be expected to endanger any individual.

Sunoco's reverse-FOIA claim also fails because it does not plausibly allege that the risk-analysis data currently redacted in the NOPV "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). The reason is straightforward: the redacted information at issue here—the distance to the lower flammable limit, the maximum predicted distance to thermal radiation consequences, and the maximum predicted spill extent—"is general in nature and does not identify any particular areas of weakness or points of vulnerability." Compl. Ex. T at 6; Ex. 1 at 4–5 (referencing the "maximum distance to the [lower flammable limit] *along the entire pipeline route*" and the "maximum predicted distances to thermal radiation consequences *along the entire pipeline*" (emphasis added)).

Sunoco does not proffer any allegations to the contrary. Instead, Sunoco cursorily asserts that if the risk-analysis data "became publicly available, it would provide a roadmap to third party criminals or terrorists who may seek to cause the greatest possible damage to the pipeline and harm nearby communities." Compl. ¶¶ 1, 22, 65. But the information redacted from the NOPV only indicates the existence of points *somewhere* along the pipeline with a certain distance to the maximum flammable limit, a certain distance to thermal-radiation consequences, and certain predicted spill extents. The unredacted NOPV says nothing about *where* along the approximately 350-mile pipeline those points are located, and therefore "does not provide specific targeting information that could be used by a potential bad actor." Compl. Ex. T at 6.

So it is true that *specific* infrastructure information may satisfy FOIA's exemption 7(F), like when a requestor seeks inundation maps "display[ing] the downstream areas and populations that would be affected if [ ] dams were to break." *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 206 (D.C. Cir. 2014) (Kavanaugh, J.)

11

(explaining that "the inundation maps fall comfortably within Exemption 7(F)" because "disclosing the maps would give anyone seeking to cause harm the ability to deduce the zones and populations most affected by dam failure" (quotation marks omitted)); *Living Rivers, Inc. v. U.S. Bureau of Reclamation*, 272 F. Supp. 2d 1313, 1321 (D. Utah 2003) (holding that inundation maps of the Hoover Dam fall within exemption 7(F) because, among other reasons, terrorists could use them "to estimate the extent of flooding that would be occasioned by attacking individual features of the dam"). But the generalized distances redacted from the NOPV do not present the security concerns that Sunoco perfunctorily raises. And although Sunoco expresses concern about the release of the Stantec reports themselves, the agency has only determined to release the limited, general information contained in the NOPV. *See* Compl. ¶ 1 (expressing concern about "the risk consequence modeling results bec[oming] publicly available," rather than the disclosure of the general redacted data in the NOPV); *id.* ¶¶ 53, 55–56, 65 (decrying the release of the "results of Stantec's risk assessments").

The only risk-analysis data at issue here is the few lines of generalized distances redacted from the 10-page NOPV. *See* Compl. at 22 (requesting judgment "setting aside PHMSA's decision to release an unredacted version of the NOPV"). And the agency—including its Preparedness, Emergency Support, and Security Division—has determined that such information "does not identify any particular areas of weakness or points of vulnerability," "does not provide specific targeting information that could be used by a potential bad actor," and could be approximated "using standard calculations based on the well-known physical properties of the natural gas liquids . . . being transported." Compl. Ex. T at 6–7. Especially in light of the "generally deferential posture when [courts] must assess national security harms," *Pub. Emps. for Env't Resp.*, 740 F.3d at 205, Sunoco cannot survive a motion to dismiss with only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and legal conclusions couched as factual allegations. *Hunt v. Miller*, 2020 WL 1156538, at *2 (D.D.C. Mar. 10, 2020) (Chutkan, J.) (quoting *Iqbal*, 556 U.S. at 678). Sunoco's APA claim based on exemption 7(F) should be dismissed.

12

### III. Defendants should not be required to produce an administrative record in connection with this motion.

Local Rule 7(n) requires the agency to provide an administrative record to plaintiffs and "file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first." It is clear from the rule's logic that these administrative-record obligations are triggered only by a dispositive motion that *relies* on an administrative record. *See* LCvR 7(n)(1) (directing counsel to "provide the Court with an appendix containing copies of those portions of the administrative record that are *cited or otherwise relied upon* in any memorandum in support of or in opposition to any dispositive motion" (emphasis added)). But where, as here, Defendants' motion to dismiss does not rely on the administrative record—which has not even been certified—Local Rule 7(n) should not apply. To hold otherwise would lead to absurd results, like requiring an administrative record when a defendant seeks dismissal under Federal Rule of Civil Procedure 4(m) because a plaintiff never served a summons and complaint, or when a defendant seeks dismissal on statute-of-limitations grounds because a plaintiff challenged agency decisions that occurred decades ago.

To the extent Local Rule 7(n) applies, Defendants respectfully request that the Court waive compliance with that requirement. Courts in this district routinely do so when an administrative record is unnecessary to decide the motion. *See, e.g.*, *Desai v. U.S. Citizenship & Immigr. Servs.*, 2021 WL 1110737, at *5 n.7 (D.D.C. Mar. 22, 2021) ("Consistent with other courts in this jurisdiction, the Court shall grant the Government's motion to waive compliance with Local Civil Rule 7(n)'s requirement that the agency submit an index of the administrative record."); *Nohria v. Renaud*, 2021 WL 950511, at *4 n.3 (D.D.C. Mar. 14, 2021) ("[f]ollowing the practice of other courts in this jurisdiction" and "waiv[ing] compliance with Local Civil Rule 7(n) because the administrative record is not necessary for the court's decision" (citations omitted)); *Akbar v. Cuccinelli*, 2020 WL 1287817, at *4 (D.D.C. Mar. 18, 2020)

(waiving the requirements of Local Rule 7(n) because there "no need for the full administrative record" where the court granted a motion to dismiss); *Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) ("[T]he Court grants Federal Defendants' motion to waive compliance with Local Civil Rule 7(n) because the Court need not consider the administrative record in evaluating the motions before it."); *Mdewakanton Sioux Indians of Minnesota v. Zinke*, 264 F. Supp. 3d 116, 123 n.12 (D.D.C. 2017) ("[C]onstruing Defendants' motion to dismiss as incorporating a motion to waive compliance with Local Civil Rule 7(n), the Court grants the motion because the administrative record is not necessary for its decision here."). This Court should do the same.

## CONCLUSION

For the reasons explained above, Sunoco fails to state a claim. The Court should therefore dismiss Sunoco's complaint with prejudice.

DATED: September 24, 2021 

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARCIA M. BERMAN
Assistant Director, Federal Programs Branch

/s/ *Stephen Ehrlich*
STEPHEN EHRLICH
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 305-9803
Email: stephen.ehrlich@usdoj.gov

*Attorneys for Defendants*