**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

SUNOCO PIPELINE L.P.,

                 Plaintiff,

     v.

U.S. DEPARTMENT OF TRANSPORTATION,
PIPELINE AND HAZARDOUS MATERIALS
SAFETY ADMINISTRATION, PETER
BUTTIGIEG, SECRETARY OF THE
DEPARTMENT OF TRANSPORTATION, IN
HIS OFFICIAL CAPACITY, AND TRISTAN
BROWN, ACTING ADMINISTRATOR OF THE
PIPELINE AND HAZARDOUS MATERIALS
SAFETY ADMINISTRATION, IN HIS
OFFICIAL CAPACITY,

                 Defendants.

Civil Action No. 1:21-cv-01760-TSC

---

## PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Sunoco Pipeline L.P. ("Sunoco") and Defendants have contested a number of issues in the pending Motion to Dismiss, but one significant issue appeared for the first time in Defendants' reply brief.  For several decades, it has been black-letter law in this Circuit that the Trade Secrets Act, 18 U.S.C. § 1905, protects at least as much information as Exemption 4 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(4).  Yet, at this late stage, Defendants now ask the Court to find that this precedent was never correctly decided, that it does not apply in this case, and that it has been nullified by *Food Marketing Institute v. Argus Leader Media*, 139 S.

Ct. 2356 (2019).  *See* Reply Mem. of L. in Supp. of Defs.' Mot. to Dismiss ("Reply") (ECF 19) at

5-10.  None of these theories has merit.[1]

## ARGUMENT

I.  **THE TRADE SECRETS ACT BARS DISCLOSURE OF INFORMATION COVERED BY FOIA EXEMPTION 4.**

    A.  **Controlling precedent holds the Trade Secret Act is at least as broad as FOIA Exemption 4.**

There is no ambiguity in the controlling authority in this Circuit: "unless another statute or

a regulation authorizes disclosure of the information, the Trade Secrets Act requires each agency

to withhold *any information* it may withhold under Exemption 4 of the FOIA."  *Canadian Com.

Corp. v. Dep't of the Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008) (emphasis added).  The D.C.

Circuit has affirmed this rule, and the "coextensive" scope of the two statutes, at least seven times.[2]

---

[1] Not only are Defendant's new theories incorrect, but they are also nowhere to be found in PHMSA's Final Determination (Compl., Ex. T).  These new theories thus represent an additional violation of the *Chenery* doctrine.  *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *see* Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss ("Opp.") (ECF 13) at 10-12, 16.

[2] *See Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 932 (D.C. Cir. 2008) ("As we recently explained, the protection provided by the TSA is at least as broad as that provided by Exemption 4 of the Freedom of Information Act."); *Canadian Com. Corp.*, 514 F.3d at 39; *McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1185-86 (D.C. Cir. 2004) ("The Trade Secrets Act, 18 U.S.C. § 1905, however, the scope of which is at least coextensive with Exemption 4, effectively prohibits an agency from releasing information subject to the exemption.") (citations and internal quotation marks omitted); *McDonnell Douglas Corp. v. NASA*, 180 F.3d 303, 305 (D.C. Cir. 1999) ("[W]e have held that the Trade Secrets Act, 18 U.S.C. § 1905 (1994), is at least coextensive with that of Exemption 4 of FOIA. Accordingly, when a person can show that information falls within Exemption 4, then the government is precluded from releasing it under the Trade Secrets Act.") (citations and internal quotation marks omitted); *Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 281 (D.C. Cir. 1997) ("[W]e have held that information falling within Exemption 4 of FOIA also comes within the Trade Secrets Act, 18 U.S.C. § 1905, which prohibits the disclosure of, inter alia, 'trade secrets' and 'confidential statistical data.' Thus, generally when 'a party succeeds in demonstrating that its materials fall within Exemption 4, the government is precluded from releasing the information by virtue of the Trade Secrets Act.'") (citations omitted); *McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162, 1164 (D.C. Cir. 1995) ("[W]henever a party succeeds in demonstrating that its materials fall within Exemption 4, the government is precluded from releasing the information by virtue of the Trade Secrets Act."); *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1151-52 (D.C. Cir. 1987) ("It is our considered view, therefore, that the scope of

The holdings of these cases are aptly summarized by the Department of Justice's current FOIA guidance, which was revised after the Supreme Court's decision in *Argus Leader*:

> The Trade Secrets Act – a broadly worded criminal statute – prohibits the disclosure of much more than simply 'trade secret' information and instead has been held to prohibit the unauthorized disclosure of *all data protected by Exemption 4*. . . . Indeed, *the Court of Appeals for the District of Columbia Circuit and nearly every court that has considered the issue has found the Trade Secrets Act and Exemption 4 to be 'coextensive.'* Thus, *the D.C. Circuit has held that if information falls within the scope of Exemption 4, it also falls within the scope of the Trade Secrets Act.*

U.S. Dep't of Just., Guide to the Freedom of Information Act: Exemption 4, at 18-19 (Oct. 9, 2019) (footnotes omitted) (emphasis added) ("DOJ Guidance") (attached as Ex. 1 hereto).

This settled law requires rejection of the criticisms Defendants raise for the first time in their reply brief. *See* Reply at 5-10. The Court is bound by this precedent "'until either the Circuit, sitting en banc, or the Supreme Court, overrules it.'" *Assassination Archives Rsch. Ctr., Inc. v. CIA*, No. 1:17-cv-00160, 2019 WL 1491982, at *7 (D.D.C. Apr. 4, 2019) (quoting *Brookens v. Acosta*, 297 F. Supp. 3d. 40, 47 (D.D.C. 2018)). That remains true even if the Court agrees that the current standard "is a 'legal relic' that does not track FOIA's plain language" or that "*some* judges on the D.C. Circuit have signaled a willingness to abandon." *Id.* (emphasis added).

## B.    The D.C. Circuit has recognized no exception to the "coextensive" rule.

Although they primarily argue that current precedent should be overruled, Defendants make one attempt to distinguish the settled law of this Circuit in their reply brief. According to Defendants, "when there is a 'more expansive interpretation of the scope of Exemption 4,' the D.C. Circuit has recognized that it may no longer [be] accurate' to characterize exemption 4 and

---

the Act is at least co-extensive with that of Exemption 4 of FOIA, and that, in the absence of a regulation effective to authorize disclosure, the Act prohibits OFCCP from releasing any information in CNA's affirmative action programs and EEO–1 reports that falls within Exemption 4.").

the Trade Secrets Act as coextensive."  Reply at 9 (alteration in original) (quoting *McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162, 1165 n.2 (D.C. Cir. 1995)).  Defendants mischaracterize this single-sentence footnote from *Widnall*.

In *Widnall*, the court merely recognized a "possible" argument never made by the defendant agency and never considered by the panel.  *Widnall*, 54 F.3d at 1165 n.2.  What Defendants now treat as a "recognized" exception is thus little more than *dicta*.  Reply at 9.  In fact, the Court of Appeals has since repeatedly rejected any such exception.  The *Widnall* court "suppose[d] it is possible" that the Trade Secrets Act might not be "at least co-extensive" after a revised interpretation of Exemption 4 in *Critical Mass Energy Project v. Nuclear Regulatory Commission*, 975 F.2d 871 (D.C. Cir. 1992) (en banc).  *See Widnall*, 54 F.3d at 1164, 1165 n.2 (internal quotation marks omitted).  But the D.C. Circuit has reaffirmed its original view of the Trade Secrets Act no fewer than six times after *Critical Mass*.  *See supra* note 2.  In other words, the Trade Secrets Act continues to bar release of any information subject to Exemption 4. [3]

C.    **The controlling precedent was correctly decided.**

None of Defendants' criticisms of the current "at least coextensive" standard, Reply at 6-8, is persuasive.

*First*, Defendants contend that, "[i]f information falls *within* exemption 4, it may or may not also fall within the Trade Secret Act's prohibition on disclosure."  *Id.*  Yet no authority Defendants invoke makes that point.  They first point to a 1975 House Report.  *See id.* (quoting H.R. Rep. No. 880, p.1 at 23 (1975), *reprinted in* 1976 U.S.C.C.A.N. 2183, 2205).  This report

---

[3]  Even caselaw cited by Defendants in their opening brief agrees that this statement in *Widnall* is *dicta* and that even after *Widnall*, the D.C. Circuit and sister circuits have continued to adhere to the long-standing interpretation of the interrelationship of Exemption 4 and the Trade Secrets Act. *See Canadian Com. Corp. v. Dep't of the Air Force*, 442 F. Supp. 2d 15, 39-40 (D.D.C. 2006) (cited in Defs.' Mem. of L. in Supp. of Mot. to Dismiss (ECF 12-1) at 5).

simply states that the Trade Secrets Act "'must be considered'" whenever information is within Exemption 4. *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1143 n.70 (D.C. Cir. 1987) (quoting 1976 U.S.C.C.A.N. 2205). That statement is fully consistent with current law, and, in any event, it is based solely on a footnote in *Charles River Park 'A', Inc. v. Department of Housing and Urban Development*. *See* 1976 U.S.C.C.A.N. 2205 (citing 519 F.2d 935, 941 n. 7 (D.C. Cir. 1975)). The D.C. Circuit subsequently explained in *CNA Financial Corp.* that this footnote in *Charles River Park* was *dicta*, after which it "definitively" resolved the scope of the Trade Secrets Act. *See* 830 F.2d at 1134, 1134 n.5. The *CNA Financial* court then criticized the House Report itself: "the Committee's observations are less like contemporaneous statements of the intent of those who drafted the legislation than they are like *ex post facto* opinions on the proper interpretation of FOIA expressed in subsequent congressional oversight reports." *Id.* at 1143 n.70. *CNA Financial* even took pains to note that it was not relying on the House Report. *See id.*

Second, Defendants assert that "no court . . . has undertaken a comprehensive analysis" of the relationship between the Trade Secrets Act and Exemption 4. Reply at 6. This claim simply ignores the D.C. Circuit's analysis of the Trade Secrets Act in *CNA Financial*. That decision walked through the text of the statute and judicial construction of that text, *see* 830 F.2d at 1140-41, and then examined its predecessor statutes, *see id.* at 1144-50. From that review, the court determined that "[t]he language of the [Trade Secrets] Act is exceedingly broad," has been construed by other courts as "oceanic," "encompasses virtually every category of business information likely to be in the files of an agency," lists so many "specific categories of data" that the "cumulation of the parts . . . become[s] so extensive that what have been described as parts are in fact the whole," contains a "comprehensive catalogue of items" functionally equivalent "to all officially collected commercial information or all business and financial data received," and

displays an "encyclopedic character" with no "limitation" on the "sources of data involved." *Id.* at 1140-41 (internal quotation marks omitted).

Unsurprisingly, then, the court concluded in *CNA Financial* that the "Trade Secrets Act appears to cover *practically any commercial or financial data* collected by any federal employee from any source in performance of the duties of his or her employment" and "seems to embody a congressional judgment that *private commercial and financial information* should not be revealed by agencies that gather it," and was intended "to discourage[e] unauthorized disclosures of *private commercial and financial data* entrusted to the Government." *Id*. (emphasis added).  This framing of the Trade Secrets Act hews closely to the language of Exemption 4.  *See* 5 U.S.C § 552(b)(4) ("commercial or financial information obtained from a person and privileged or confidential").  Thus, *CNA Financial* held the Act "at least co-extensive with" Exemption 4.  830 F.2d at 1152.

Rather than address the detailed analysis in *CNA Financial*, Defendants claim that the D.C. Circuit reached its holding based "on three inapposite cases."  Reply at 7.  Defendants do not name these three cases.  *See id.*  If Defendants mean those cases cited in footnote 138 of *CNA Financial*, they have simply failed to read the rest of the opinion.  *CNA Financial* cites those three cases only as a "see also" citation for its holding, not as direct support for the Court's conclusion, which was derived from several pages of analysis of text, legislative history, statutory purpose, and judicial interpretation.  *See CNA Fin. Corp.*, 830 F.2d at 1140-52, 1151 at n.138.  That thorough analysis is the basis for the court's statement that it "resolve[d] . . . definitively" the interplay of the two statutes.  *Id.* at 1134.  Indeed, Defendants' own belated attempts to offer a new reading are much less thorough than that of *CNA Financial*.  *See* Reply at 8.

*Third*, Defendants claim that the D.C. Circuit and other courts "relied on conclusory statements and misunderstandings" in *Westinghouse Elec. Corp.  v. Schlesinger*, 542 F.2d 1190

(4th Cir. 1976).  Again, this claim ignores the thorough review of the Trade Secrets Act in *CNA Financial*.  That court cited *Westinghouse* only for a different issue, and even then, it noted that *Westinghouse* had been "effectively overruled" on that point.  *CNA Fin. Corp.*, 830 F.2d at 1141 n.62.  Nowhere does *Westinghouse* (or the cases it supposedly misunderstood) form the basis of the Court's holding in *CNA Financial*.

## II.  *ARGUS LEADER* DOES NOT JUSTIFY DISCLOSURE.

Defendants also claim in their Reply that the Supreme Court's decision in *Argus Leader* has overruled every controlling decision on the scope of the Trade Secrets Act relative to Exemption 4.  *See* Reply at 8-10.  This claim is incorrect.  *Argus Leader* did not "dramatically change[] the landscape" with respect to the Trade Secrets Act.  *Id.* at 8.  And even if Defendants read that decision correctly, it still would not justify dismissal of the Complaint in this case.

*Argus Leader* addressed a single, discrete question: "[W]hen does information provided to a federal agency qualify as 'confidential'" under Exemption 4?  139 S. Ct. at 2360.  That question is entirely unrelated to the D.C. Circuit's prior holdings regarding the Trade Secrets Act, and no other court has applied *Argus Leader* to hold that the Trade Secrets Act is no longer at least coextensive with Exemption 4.  In fact, the Department of Justice updated its Exemption 4 guidance four months after *Argus Leader* to address that decision, yet notably maintained its views on the "[i]nterrelation with the Trade Secrets Act."  *See* DOJ Guidance (Ex. 1) at 18-19.  Likewise, other agencies have continued to rely on the "at least coextensive" standard after *Argus Leader*.[4]

---

[4] *See* Agreement Between the United States of America, the United Mexican States, and Canada (USMCA) Implementing Regulations Related to the Marking Rules, Tariff-Rate Quotas, and Other USMCA Provisions, 86 Fed. Reg. 35,566, 35,575 (July 6, 2021) ("The courts have interpreted the Trade Secrets Act as covering the same type of information that falls under Exemption 4 of the FOIA. *See, e.g.*, *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1140 (D.C. Cir. 1987).").

These authorities have adhered to the prevailing standard for good reason. *Argus Leader* merely held that information submitted to the government under compulsion need not meet a heightened standard to be "confidential" under Exemption 4. *See* 139 S. Ct. at 2364-65 (overruling *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 767 (D.C. Cir. 1974)).[5] Instead, the Court held, any information, whether submitted voluntarily or involuntarily, is confidential "whenever it is customarily kept private, or at least closely held, by the person imparting it."[6] *Id.* at 2363.

But the scope of the Trade Secrets Act as compared to Exemption 4 has never turned on whether the information at issue was submitted voluntarily or under compulsion. *See CNA Fin. Corp.*, 830 F.2d at 1144-52. In fact, the D.C. Circuit has always treated the Trade Secrets Act as "at least co-extensive with" Exemption 4 with respect to information submitted voluntarily. *See supra* at note 2 (citing six cases decided after *Critical Mass*). *Argus Leader* did not change the scope of Exemption 4 for information submitted voluntarily. *Compare* 139 S. Ct. at 2363, *with* 139 S. Ct. at 2365. Thus, the Trade Secrets Act has always embraced, and continues to embrace, any commercial or financial information customarily held close. *Argus Leader* means only that Exemption 4 does, too. *See id.* at 2365 (citing *Critical Mass*, 975 F.2d at 879-80).

Finally, even if Defendants are correct that *Argus Leader* made a "dramatic[]" change, that change is immaterial in this case. Any new "expansive view" of Exemption 4 would capture only

---

[5] Prior to *Argus Leader*, involuntarily submitted information was confidential only if its disclosure would impair the government's future ability to obtain similar information or if disclosure would cause substantial competitive harm. *Critical Mass Energy Project*, 975 F.2d at 873 (citing *Nat'l Parks*, 498 F.2d at 770). If submitted voluntarily, information was confidential if "of a kind that would customarily not be released to the public by the person from whom it was obtained." *Id.* at 879.

[6] The Supreme Court considered, but did not decide, whether government assurances of confidentiality might also be necessary to confidentiality. *See Argus Leader*, 139 S. Ct. at 2363.

information that did not meet the pre-*Argus Leader* standard.  Reply at 9 (internal quotation marks omitted).  In other words, information that met the prior standard for confidentiality was within the scope of the Trade Secrets Act even according to Defendants.  *See CNA Fin. Corp.*, 830 F.2d at 1152-53 (holding the statute "at least co-extensive with" Exemption 4 and applying the *National Parks* standard).  Here, Sunoco submitted the redacted information involuntarily.  *See* Compl. ¶ 17.  That information thus would have been confidential if its disclosure would likely create substantial competitive harm.  *See Argus Leader*, 139 S. Ct. at 2364.  The allegations of the Complaint thoroughly meet that standard.  *See* Opp. at 27-29 (citing, *inter alia*, Compl. ¶¶ 1, 3, 5, 22-23, 53-56, 64-65, 65).  Consequently, even under Defendants' theory, the information at issue was always protected under the Trade Secrets Act.

## CONCLUSION

For the reasons above, the Court should deny Defendants' Motion to Dismiss.

Dated:          December 3, 2021                      By:_____/s/ Dabney J. Carr, IV_____
                                                      Marc D. Machlin (D.C. Bar No. 358661)
                                                      TROUTMAN PEPPER HAMILTON
                                                      SANDERS LLP
                                                      401 Ninth Street, N.W., Suite 1000
                                                      Washington, D.C.  20004
                                                      202.220.1439
                                                      marc.machlin@troutman.com

                                                      Dabney J. Carr, IV (Bar ID: VA118)
                                                      TROUTMAN PEPPER HAMILTON
                                                      SANDERS LLP
                                                      Troutman Pepper Building
                                                      1001 Haxall Point
                                                      Richmond, VA 23219
                                                      804.697.1238
                                                      dabney.carr@troutman.com


                                                      *Attorneys for Plaintiff Sunoco Pipeline L.P.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SUNOCO PIPELINE L.P., | |
| Plaintiff, | |
| v. | Civil Action No. 1:21-cv-01760-TSC |
| U.S. DEPARTMENT OF TRANSPORTATION, PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION, PETER BUTTIGIEG, SECRETARY OF THE DEPARTMENT OF TRANSPORTATION, IN HIS OFFICIAL CAPACITY, AND TRISTAN BROWN, ACTING ADMINISTRATOR OF THE PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION, IN HIS OFFICIAL CAPACITY, | |
| Defendants. | |

## <u>CERTIFICATE OF SERVICE</u>

On this 3rd day of December 2021, I hereby certify that a copy of the foregoing Motion for Leave to File Surreply has been filed on CM/ECF. Pursuant to Local Rule 5.4, this filing constitutes service on all parties of record.

Dated: December 3, 2021

By: <u>/s/ Dabney J. Carr, IV</u>
Marc D. Machlin (D.C. Bar No. 358661)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
401 Ninth Street, N.W., Suite 1000
Washington, D.C. 20004
202.220.1439
marc.machlin@troutman.com

Dabney J. Carr, IV (Bar ID: VA118)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Troutman Pepper Building
1001 Haxall Point
Richmond, VA 23219
804.697.1238
dabney.carr@troutman.com

*Attorneys for Plaintiff Sunoco Pipeline L.P.*