# Exhibit B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SARAH KATHERINE NAUMES,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 21-1670 (JEB)** |
| **DEPARTMENT OF THE ARMY,** | |
| **Defendant.** | |

**<u>MEMORANDUM OPINION</u>**

Students embarking on a PhD brace themselves for years of study and research; few, however, anticipate contending with a multi-year Freedom of Information Act saga. But that is precisely what Plaintiff Sarah Naumes has encountered. Naumes sought copies of a survey that the Army routinely administers to assess the physical and psychological well-being of civilian employees, soldiers, and their families, as well as other documents associated with the survey's administration. After vainly waiting several years to receive her requested records from Defendant Department of the Army, she filed this suit to compel their production. In response, the Army turned over some of the documents sought, but withheld a number of the survey questions on the basis that they came from copyrighted sources. It then moved for summary judgment, contending that it had adequately searched for records, relied on the appropriate exemption, and identified foreseeable harm. Disagreeing, Plaintiff cross-moved for summary judgment, asserting that the Army had failed on each of those fronts and should also be penalized for its unreasonable delay in producing records. This Opinion offers something of a FOIA basic

1

training, as it presents a number of issues that commonly arise under the statute.  Like a company

of cadets that finishes the course with mixed results, the Court grants the Motions in part and

denies them in part.

## I.    Background

### A.  Factual Background

Because the Court ultimately focuses on Defendant's Motion for Summary Judgment, it

will construe the facts in the light most favorable to Plaintiff.  See Talavera v. Shah, 638 F.3d

303, 308 (D.C. Cir. 2011).  Naumes is a PhD student in the Department of Politics at York

University in Toronto and an Academic Coordinator with the University of California, Merced.

See ECF No. 10-1 (Declaration of Sarah Katherine Naumes), ¶ 2.  She submitted a FOIA request

to the Army through the Defense Freedom of Information Division on February 28, 2019,

seeking three categories of documents.  See ECF Nos. 7-1 (Def. Stmt. of Material Facts), ¶ 1; 10-

19 (Pl. Stmt. of Material Facts), ¶ 1.  These were:

> 1)  [A]ll versions of the Global Assessment Tool (GAT)
>     questionnaire dating from 2008 until present. I request the
>     inclusion of the questionnaires designed for soldiers, spouses,
>     and Army civilians;
> 2)  [T]he informed consent forms utilized with different versions of
>     GAT;
> 3)  [A] list of recommendations given under the ArmyFit portal.

ECF No. 1-5 (FOIA Request Letter) at 2; Def. SMF, ¶ 3.

The Global Assessment Tool is an online survey hosted on Defendant's ArmyFit portal

"that combines objective health and fitness metrics . . . with survey-based questions" and

provides the user with "a variety of scores and metrics" for "personalized self-development

training in a variety of formats."  Naumes Decl., ¶ 3 (quoting AR 350-53).  Naumes planned to

use these documents for her dissertation research and not for any commercial purpose.  See

2

FOIA Request Letter at 2.  In the months following submission of her request, Plaintiff inquired numerous times into its status.  See Naumes Decl., ¶¶ 17–19.  The Court will not belabor every detail here and instead highlights only the most relevant events.  On May 28, 2019, she received a letter from Defendant acknowledging receipt of her request and stating that it was assigned the case number: # FA 19-0568/FP 19-013777.  Id., ¶ 20; see also ECF No. 10-8 (Exh. 107) at 2.  Plaintiff heard nothing further in the ensuing months until, in response to her outreach, she received a call on December 4, 2019, from a new FOIA officer, who stated that the delay had resulted from the FOIA officer position sitting empty for a period.  She then resubmitted the May letter and her original request and received a "FINAL response" on December 11, 2019, which contained a different tracking number # FA-20-0007.  See Naumes Decl., ¶¶ 23, 27; Def. SMF ¶ 6; ECF No. 10-9 (Exh. 108) at 2.  This response revealed some confusion over the status of Naumes's case since the Army stated that it had received her request on December 4, 2019, even though it had in fact been filed earlier.  In a call shortly thereafter, Defendant informed Plaintiff that she would receive a response to her request by January 10, 2020.  See Exh. 108 at 2; Naumes Decl., ¶ 28.  Readers who have followed the tale thus far will be unsurprised to learn that Naumes did not in fact receive her documents by that date but instead received an indication a month later that her request was in process.  Another ten months passed and eventually on December 9, 2020, she was told by the officer assigned to her request, "I thought this was closed and sent to you."  Naumes Decl., ¶ 35.  If only.  Thereafter, Naumes continued to follow up to receive an estimated completion date for the production but did not receive any documents.  Id., ¶¶ 36–49.

B.  Procedural History

Having waited fruitlessly for two-and-a-half years to receive her requested documents,

Plaintiff filed this suit on June 22, 2021.  See ECF No. 1 (Compl.).  Finally spurred to action, on

August 6, 2021, the Army released a first set of documents to Naumes.  See Def. SMF, ¶¶ 12–13;

ECF No. 10-16 (Exh. 115) at 2.  This response addressed the first two categories of requested

documents — the GAT survey questions and informed-consent forms — and told Naumes that

773 of the questions on the GAT would be released, but 534 would be withheld under FOIA

Exemption 4, which protects privileged and confidential commercial information.  See Exh. 115

at 2; ECF No. 7-3 (Declaration of Kathleen Vaughn-Burford), ¶ 8.  All informed-consent forms

were produced since those forms are included with the surveys themselves.  See Vaughn-Burford

Decl., ¶ 5.  Another set of records responsive to the third category of Naumes's request — the

list of recommendations from ArmyFit — was produced on October 23, 2021.  See ECF No. 9-5

(Exh. 104) at 2.  These records were described as "sample[s]" of the recommendations and

presented in a "file [that] included five pages, each containing a single screenshot of information,

derived from [the] ArmyFit" portal.  See Naumes Decl., ¶ 54; Vaughn-Burford Decl., ¶ 10.  Such

recommendations relate to advice on how individuals can improve their mental and physical

wellness — e.g., through practicing mindfulness, calmly working out problems with their

families, maintain coping skills, and more.  See Exh. 104.

## II.  Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986);

Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it can affect the

substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"

Dep't of Just. v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5

U.S.C. § 552(a)(4)(B)).   Summary judgment is only proper when the court is assured that the

record justifies the result.   See Ctr. For Investigative Reporting v. Customs & Border Prot., 436

F. Supp. 3d 90, 100 (D.D.C. 2019).

## III.   Analysis

Under FOIA, "each agency, upon any request for records which (i) reasonably describes

such records and (ii) is made in accordance with published rules[,] . . . shall make the records

promptly available to any person."   5 U.S.C. § 552(a)(3)(A).   If the records fall into one of nine

statutorily created exemptions, however, the Government need not turn over the requested

information.   Id. § 552(b)(1)–(9).   To show that an exemption applies and justifies the

withholding of records, the Government "must provide a relatively detailed justification" for its

withholding, "specifically identifying the reasons why a particular exemption is relevant."

Morley v. CIA, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (quoting King v. Dep't of Just., 830 F.2d

210, 219 (D.C. Cir. 1987)).   This Court can compel the release of any records that do not satisfy

the requirements of at least one exemption.   See Reps. Comm. For Freedom of Press, 489 U.S. at

755.

In the sections that follow, the Court marches separately through a series of familiar

FOIA issues: delay in response, adequacy of search, applicability of Exemption 4, segregablity,

and foreseeability of harm, with the only truly novel issue appearing in Exemption 4.

### A.   Delay in Response

Starting with the first, Plaintiff argues that the Army "violated FOIA's statutory time

requirements," ECF No. 9-20 (Pl. Opp./MSJ) at 9, because it did not comply with the mandate

under 5 U.S.C. § 552(a)(6) that "an agency must make and communicate its 'determination'

whether to comply with a FOIA request — and communicate 'the reasons therefor' — within 20 working days of receiving the request, or within 30 working days in 'unusual circumstances.'" Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n (CREW), 711 F.3d 180, 182 (D.C. Cir. 2013) (quoting 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i)).  The Army's internal regulations include similar requirements.  See U.S. ARMY, Army Regulation 25-55, ¶¶ 1–12 (Oct. 19, 2020), https://bit.ly/3rNYNyS, at 4 (describing when the 20-day working period under FOIA commences).  Since Plaintiff did not begin to receive documents until 2021, there is no question that the Army did not respond to her within either twenty days of her original request (February 28, 2019) or twenty days of the later date that it recorded for her request (December 11, 2019).  See Pl. Opp./MSJ at 10; ECF No. 12 (Def. Opp./Reply) at 2–3.  Naumes was understandably frustrated by this considerable delay, especially since she made numerous requests to receive an estimated completion date, which the Army should have been able to provide.  See Naumes Decl., ¶¶ 33-34, 36–41; 5 U.S.C. § 552(7)(B)(ii) (agencies should have systems to offer "an estimated date on which the agency will complete action on the request.").

Defendant correctly asserts, however, that in circumstances like these, its "delay has no bearing on summary judgment," Def. Opp./Reply at 2, because the only penalty for an agency's failure to "adhere to FOIA's explicit timelines . . . is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."  CREW, 711 F.3d at 189–90; accord New York Times Co. v. Def. Health Agency, No. 21-566, 2021 WL 1614817, at *5 (D.D.C. Apr. 25, 2021).  Although, in some instances, a court can go further and authorize equitable relief when an agency has repeatedly failed to timely fulfill requests for nonexempt documents as a result of "an agency policy or practice," such circumstances do not exist here. Payne Enterprises, Inc. v. United States, 837 F.2d 486, 491, 494 (D.C. Cir. 1988).  "[D]elay

alone, even repeated delay, is not the type of illegal policy or practice that is actionable under <u>Payne</u>."  <u>Am. Ctr. for L. & Just. v. Dep't of State</u>, 289 F. Supp. 3d 81, 87 (D.D.C. 2018) (internal quotations marks and citations omitted).  So in determining whether to grant equitable relief, the Court must see if there is a "'reasonable inference that the [agency] has adopted'— formally or informally—'a practice of delay,' or whether the complaint alleges 'merely isolated mistakes by agency officials.'"  <u>Am. Ctr. for L. & Just. v. FBI</u>, 470 F. Supp. 3d 1, 6 (D.D.C. 2020) (quoting respectively <u>Judicial Watch v. Dep't of Homeland Sec.</u>, 895 F.3d 770, 780–81 (D.C. Cir. 2018) (citations omitted), and <u>Payne</u>, 837 F.2d at 491).  Only if the former is true is such relief proper.  <u>See, e.g.</u>, <u>Judicial Watch</u>, 895 F.3d at 779 (potential for equitable relief following repeated pattern of only providing requested records to moot lawsuits); <u>Newport Aeronautical Sales v. Dep't of Air Force</u>, 684 F.3d 160, 164 (D.C. Cir. 2012) (finding case in which documents already produced not moot given agency policy of "denying FOIA requests" to specific requester).

　　　　In this case, Naumes has not alleged an agency policy of responding slowly to requests like hers — or even that she submitted multiple requests that were delayed and only fulfilled after the filing of a lawsuit.  This is not enough to establish a "reasonable inference . . . [o]f a practice of delay" since there is no sign of a fixed decision or of repeated denials or delays in producing records of the same type.  <u>Am. Ctr. for L. & Just.</u>, 470 F. Supp. 3d at 6–7.  "[N]ot all agency delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention, much less injunctive relief," <u>Judicial Watch</u>, 895 F.3d at 782, and nothing beyond the two-year delay here would suggest that the Army routinely ignores FOIA requirements.  <u>See</u> <u>Am. Ctr. for L. & Just.</u>, 470 F. Supp. 3d at 8; <u>see also</u> <u>Cause of Action Inst. v. Eggleston</u>, 224 F. Supp. 3d 63, 72 (D.D.C. 2016) ("Plaintiff cannot state a 'policy or practice'

claim based on a single incident.").  Although the Court sympathizes with Naumes's plight, the only penalty warranted here is to prohibit the Army from relying on administrative exhaustion, which it does not do anyway.

    B.  Adequacy of Search

Naumes next cites two principal reasons why the Army failed to conduct an adequate search for the documents she requested: it did not look for a certain GAT survey that Naumes believes exists, and it provided her with only a "sample" of the ArmyFit recommendations she had asked for.  See Pl. Opp./MSJ at 10–17.  Defendant meanwhile contends that its search was adequate and that the records Plaintiff seeks either do not exist or would have to be created — something the Army need not do.

An agency "fulfills its [search] obligations . . . if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)).  Thus, "[i]n a FOIA case, a district court is not tasked with uncovering 'whether there might exist any other documents possibly responsive to the request,' but instead, asks only whether 'the search for [the requested] documents was adequate.'"  In re Clinton, 970 F.3d 357, 367 (D.C. Cir. 2020) (quoting Weisberg v. Dep't of Just., 745 F.2d 1476, 1485 (D.C. Cir. 1984)).   A FOIA defendant's affidavits or declarations must "set[ ] forth the search terms and the type of search performed, and aver[ ] that all files likely to contain responsive materials (if such records exist) were searched."  Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see also Bartko v. Dep't of Just., 167 F. Supp. 3d 55, 64 (D.D.C. 2016) (agency must invoke "the 'magic words' concerning the adequacy of the search — namely, the assertion that [the Department] searched all locations likely to contain responsive documents").  Unless there is evidence to the contrary, affidavits or declarations meeting these requirements are

9

generally enough to show that an agency complied with FOIA.  See Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  Truitt, 897 F.2d at 542.

The Army sent Naumes's FOIA request to the "Army Resiliency Directorate, Ready and Resilient (SR2) Office for their review and processing," according to Kathleen Vaughn-Burford, a FOIA officer in the Department of the Army, Office of the Deputy Chief of Staff.  See Vaughn-Burford Decl., ¶ 5.  The SR2 Office then "conducted a search of their system of records — ArmyFit — and located records responsive to Ms. Naumes entire request."  Id.  That search was done by looking "for responsive records in their ARD Share Drive folder labeled GAT Surveys."  ECF No. 12-1 (Declaration of Major Sherod L. Davis, Sr.), ¶ 2.  It turned up "a total of seven (7) Global Assessment Tool (GAT) Surveys that were used between 2008 and present," which included "(2) Civilian GAT Surveys, two (2) Family GAT Surveys, and three (3) Soldier GAT Surveys."  Vaughn-Burford Decl., ¶ 5.  The search also turned up "[t]he responsive consent forms[, which were] included on the GAT surveys."  Id.  Naumes objects that this is insufficient because she provided "contrary evidence" from the Army's own records that "[t]here currently are four versions of the GAT survey, including one for Basic Training," which she never received.  See Naumes Decl., ¶ 12 (citing ECF No. 10-17 (Exh. 116 - TRADOC Analysis Center, Global Assessment Tool Trend Analysis) at 13; Pl. Opp./MSJ at 13.

Considering first the overall search, the ArmyFit office — which administers the platform for the GAT and the recommendations that Plaintiff sought — was a reasonable place for Defendant to look, as it is the locale most likely to have responsive records.  Indeed, in past FOIA cases the Army has determined that this office "was where subject matter experts for GAT surveys work, and that that office is the records custodian for the requested GAT records."

Davis Decl., ¶ 2; see also DiBacco v. Army, 795 F.3d 178, 190 (D.C. Cir. 2015) (finding search appropriate when conducted in locations "most likely" to contain documents, as agency "clarified that the only place containing [responsive] records" was the particular office searched).

The Army has also adequately explained its investigations into a specific Basic Training GAT and ultimate conclusion that none existed.  Although an agency cannot "ignore what it cannot help but know," Kowalczyk v. Dep't of Just., 73 F.3d 386, 389 (D.C. Cir. 1996), there is no indication here that the Basic Training GAT was mentioned in Naumes's FOIA request or in any of her follow-up materials.  Indeed, Defendant states that following Plaintiff's Cross-Motion, which included the first reference to the Basic Training GAT, the agency "consult[ed] with the subject matter experts about the GAT survey," and the relevant office determined that "there is no separate Basic Training Survey and a search for such a survey therefore would be unsuccessful."  Def. Opp./Reply at 4; Davis Decl., ¶ 3.  Instead, Basic Trainees "take the Soldiers Survey," which was already being provided to Plaintiff.  See Def. Opp./Reply at 4.  It is within "the scope of the [agency's] discretion and expertise in crafting a reasonable search" to decide what records systems to look in "based on consultation with subject-matter experts." Elec. Priv. Info. Ctr. v. FBI, No. 17-121, 2018 WL 2324084, at *3 (D.D.C. May 22, 2018). Despite the confusion about the different categories of the GAT, Defendant has described a good-faith effort to identify this document.  Having determined that a fourth category of the GAT for Basic Training did not exist, it was "under no duty to disclose documents not in its possession," which would include any associated informed-consent forms.  Rothschild v. Dep't of Energy, 6 F. Supp. 2d 38, 40 (D.D.C. 1998).

The Court last turns to an area where Plaintiff meets with more success — her claim that the production of the requested "list of recommendations given under the ArmyFit portal" was

inadequate because the Army only "released <u>sample</u> recommendations used in the ArmyFit portal to Ms. Naumes," which in and of itself suggests that she did not receive <u>all</u> of the recommendations as sought.  <u>See</u> FOIA Request Letter at 2; Pl. Opp./Cross-MSJ at 16 (emphasis added).  Defendant argues that there is no centralized list of recommendations, and because "Plaintiff did not request the actual survey results" to fulfill her request, "Defendant would have to create [such] a list."  Def. Opp./Reply at 6.  It is true that "FOIA imposes no duty on the agency to create records," and the Army need not assemble a new record in the form of a complete list of recommendations.  <u>Forsham v. Harris</u>, 445 U.S. 169, 186 (1980); <u>see also</u> <u>People for Am. Way Found. v. Dep't of Just.</u>, 451 F. Supp. 2d 6, 14 (D.D.C. 2006) (defendant justified in objecting under <u>Forsham</u> to creation of list if it "was not previously created or obtained by the agency").

Plaintiff also alleges, however, that there are records responsive to her request that are only a click away.  These include the pages available as embedded text links in documents she has already received directing the reader to "View All Family Fitness Dimension Recommendations," "View All Social Fitness Dimension Recommendations," and the like.  <u>See</u> Exh. 104 at 4–6, 8; Pl. Opp./Cross-MSJ at 16.  Since those files can be accessed and provided to Plaintiff without the creation of new records, the Court will order that Defendant produce the webpages identified at the relevant links in the screenshots already produced to Plaintiff.  The Army need not, however, create a list of all recommendations given to anyone who has taken the GAT.

C.  <u>Exemption 4</u>

The crux of this case is whether Exemption 4 protects the withholding of 534 GAT survey questions that come from copyrighted sources.  The Army does not hold the copyright to these sources; rather, the copyright is held by the publishers or other creators of the sources.

That exemption shields from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  For the questions to remain redacted, they must satisfy each prong of the exemption, which the Army claims the questions do because they are copyrighted.  Public Citizen Health Resource Group. v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (listing prongs that must be satisfied).  While there are plenty of Exemption 4 cases, few are like this one.  Indeed, while "[c]ase law analyzing the interaction between the Copyright Act and FOIA exemptions is sparse," at least one court in this district has found that what exists indicates that "the only appropriate approach for protecting copyrighted documents under FOIA is through the application of Exemption 4."  Hooker v. Dep't of Health & Hum. Servs., 887 F. Supp. 2d 40, 61 n.18 (D.D.C. 2012), aff'd, No. 13-5280, 2014 WL 3014213 (D.C. Cir. May 13, 2014); see also DEP'T OF JUST., FOIA Update: OIP Guidance: Copyrighted Materials and the FOIA (Jan. 1, 1983), https://bit.ly/3GJhSHR ("The only appropriate approach for protecting copyrighted documents under the FOIA is through the application of Exemption 4 . . . . Commercially valuable copyrighted works plainly pertain to commerce and thus logically satisfy this requirement of Exemption 4.").  The Court thus proceeds to the three prongs.

### 1.  *Commercial or Financial Information*

Invoking the shield of Exemption 4, the Army must first establish that the questions from copyrighted sources are "commercial or financial information."  5 U.S.C. § 552(b)(4).  That requirement spans fairly "broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency." Baker & Hostetler LLP v. Dep't of Comm., 473 F.3d 312, 319 (D.C. Cir. 2006).  The Army argues that a copyright owner has a "business interest" in protecting its copyrighted materials since by statute he "has the exclusive rights to . . . reproduce the copyrighted work in copies or

phonorecords; . . . [or] prepare derivative works based upon the copyrighted work."  17 U.S.C. §

106(1)–(2).  Copyright holders further have the power to "institute an action for any

infringement of that particular right committed while he or she is the owner of it."  Id. at

§ 501(b); see also Def. MSJ at 9.  The copyright holder thus naturally has a commercial interest

in the information that he seeks to protect.  Naumes does not meaningfully contest whether

copyrighted materials are something in which a holder can have a "commercial interest," but

rather focuses the bulk of her argument on whether these materials are in fact confidential.  See

Pl. Reply at 5–8.  The Court concurs that the materials satisfy the first prong inasmuch as routine

release of copyrighted information through FOIA requests would undermine the market for the

creator's work in much the same way that the release of other types of commercial information

could inflict competitive harm.

### 2.  *Obtained From a Person*

Next, the Court must determine whether the documents were "obtained from a person" —

a trickier issue.  "Information is considered 'obtained from a person' if the information

originated from an individual, corporation, or other entity, and so long as the information did not

originate within the federal government."  Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec., 117

F. Supp. 3d 46, 63 (D.D.C. 2015) (citing Board of Trade of City of Chicago v. Commodity

Futures Trading Comm'n, 627 F.2d 392, 404 (D.C. Cir. 1980)).  When the information in

question is sought from the federal government, it may still be considered "obtained from a

person" if it summarizes information provided by an external party or is a document "from

which information supplied by [the third party] could be extrapolated."  Gulf Western Industries,

Inc. v. United States, 615 F.2d 527, 529–30 (D.C. Cir. 1979).  When an agency analyzes, rather

than just summarizes, third-party information, however, such records will not be considered

"obtained from a person."  Philadelphia Newspapers, Inc. v. Dep't of Health and Human

14

Services, 69 F. Supp. 2d 63, 66–67 (D.D.C. 1999).  "[T]he key distinction — which will obviously be blurry in many instances — is between information that is either repeated verbatim or slightly modified by the agency, and information that is substantially reformulated by the agency, such that it is no longer a 'person's' information but the agency's information." Southern Alliance for Clean Energy v. Dep't of Energy, 853 F. Supp. 2d 60, 68 (D.D.C. 2012).

Naumes argues that in this case, the distinction is too fuzzy as to what information was provided by the copyright owners and what was created by the Army itself.  See Pl. Opp./Cross-MSJ at 24.  Indeed, the Army's briefing on this point is no model of clarity, explaining both that the "GAT Survey questions withheld from production are copyrighted questions, purchased by the Army for use in the GAT survey," Vaughn-Burford Decl., ¶ 8, but also that the "Global Assessment Tool Surveys were created by the agency, [although] the source of the questions remain the copyright owners."  Def. MSJ at 11.  It further adds that in some instances these questions were "obtained directly from the individual copyright owner or a third-party selling agent, such as the American Psychology Association PsychNet website."  Id.  From these statements alone, the Court cannot determine in what form the copyrighted material was incorporated into the GAT.  Did the Army directly copy questions from various copyrighted books or articles and place them unchanged into the GAT, or did it analyze these sources and modify the ideas they contain into questions that appear on the survey?  If the former, the questions were obtained from a person and the Exemption 4 analysis can proceed.  See Gulf Western Industries, Inc., 615 F.2d at 529–30.  If the latter, however, the Army may be out of luck.  See Southern Alliance for Clean Energy, 853 F. Supp. 2d at 68.  The Court will thus require that the Army provide supplemental briefing as to how, if at all, the questions were adapted from the copyrighted sources.

### 3.  *Privileged and Confidential*

The withheld questions must also be "privileged or confidential," with the latter meaning that they were "both customarily and actually treated as private by its owner."  WP Company LLC v. SBA, 502 F. Supp. 3d 1, 12 (D.D.C. 2020) (quoting Food Marketing Inst. v. Argus Leader Media, 139 S. Ct. 2356, 2366 (2019)).  The critical question in so determining is "how the particular party customarily treats the information, not how the industry as a whole treats the information."  Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin., 244 F.3d 144, 148 (D.C. Cir. 2001) (citing Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 872, 878–80 (D.C. Cir. 1992)).  An agency arguing that information is customarily treated in a certain way may "proceed solely on its sworn affidavits."  Judicial Watch, Inc. v. Dep't of Comm., 337 F. Supp. 2d 146, 171 (D.D.C. 2004).  Those affidavits must be "made on personal knowledge," Animal Legal Defense Fund, Inc. v. Dep't of the Air Force, 44 F. Supp. 2d 295, 303 (D.D.C. 1999) (quoting Fed. R. Civ. P. 56(e)), which can be demonstrated in a variety of ways.  For instance, an agency may "relay[] that the submitters themselves told the agency that the information is confidential, . . . indicat[e] that the agency reached an understanding with the submitters that the information w[ould] be held in confidence by the U.S. and not publicly divulged, . . . point[] to confidential markings on the documents themselves or to the existence of a non-disclosure agreement, . . . [or] provid[e] descriptions of the documents that demonstrate their confidential nature."  Ctr. for Investigative Reporting, 436 F. Supp. 3d at 110–11 (internal quotation marks and citations omitted).  An agency cannot, however, simply rely on "[c]onclusory statements by an agency official about what the agency official may believe about how a submitter customarily treats the information at issue."  Id. at 111.

Tackling the simplest issue first, some of the sources at issue have been made available to the public for free; the parties dispute whether Exemption 4 can still be successfully invoked as

16

to material from those sources.  Naumes maintains that there is "no indication that the materials are actually treated as confidential" because "all of the records withheld in this case are already widely available in the public domain" and at no cost.  <u>See</u> Pl. Opp./Cross-MSJ at 21.  The Army, meanwhile, responds that this information remains confidential under Exemption 4 because the sources are not actually accessible to all.  <u>See</u> Def. Opp/Reply at 10.  Many of the sources from which withheld questions were drawn are indeed freely available to the public online.  <u>See, e.g.</u>, C. Peterson & M. E. P. Seligman, <u>Character Strengths and Virtues: A Handbook and Classification</u> (2004), https://bit.ly/3gFLrPT; C.S. Carver, M. F. Scheier, & J. K. Weintraub, <u>Assessing Coping Strategies: A Theoretically Based Approach</u>, J. PERSONALITY AND SOCIAL PSYCHOLOGY 56, 267–83 (1989), https://bit.ly/3rJhwwI; D. Watson, L.A. Clark, & A. Tellegen, <u>Development and Validation of Brief Measures of Positive and Negative Affect: The PANAS Scales</u>, J. PERSONALITY AND SOCIAL PSYCHOLOGY, 54, 1063–1070 (1988), https://bit.ly/3JvxPTY; <u>see also</u> Vaughn-Burford Decl., ¶ 9 (citing copyright of above-listed sources as basis for at least 67 withheld questions); Pl. Opp./Cross-MSJ at 21–22.  "[M]atter in the public domain is not confidential under Exemption 4."  <u>Int'l Computaprint Corp. v. Dep't of Comm.</u>, No. 87-1848, 1988 WL 150850, at *5 (D.D.C. Aug. 16, 1988); <u>see also</u> <u>Shapiro v. Dep't of Just.</u>, No. 12-313, 2020 WL 3615511, at *26 (D.D.C. July 2, 2020), <u>reconsideration denied</u>, No. 12-313, 2020 WL 5970640 (D.D.C. Oct. 8, 2020).  Further, Defendant's blanket assertion that "the referenced websites are available only for academic use and are not available to the general public," Def. Opp./Reply at 10, is inaccurate, as those sites are available to users at this Court — a non-academic institution — and do not appear to be operating through any academic licensing system.  The Army must thus release the withheld questions from any sources available publicly at no charge.

17

The more complicated question persists, however, of whether the non-public copyrighted materials used for questions in the GAT are considered privileged and confidential.  The Army argues that this material is customarily treated as confidential since "[c]opyright registration markings and fee information are evidence that the copyright owners intend to keep the information closely held."  Def. MSJ at 12; see also Vaughn-Burford Decl., ¶¶ 8–9.  Further, by "charging for access and use of the information," Def. MSJ at 12, the copyright holders ensure that only those who have paid the required price can access the information.  Plaintiff counters that the Army has provided insufficient proof that copyright holders actually treat the information as confidential since "the fact that the publishers may require a purchase for the right to use their copyrighted materials does not mean the publisher 'actually treats' the materials as 'confidential.'"  Pl. Resp./Cross-MSJ at 21 (quoting Argus Leader Media, 139 S. Ct. at 2363).

She is correct that copyrighted sources provide a unique category of materials that are confidential until purchase and then accessible, as opposed to the more traditional Exemption 4 materials strictly held private by an individual or company.  There is no reason, however, that a party should be able to use FOIA as an end run around the protections afforded by copyright to access information it would otherwise have to pay for, nor should the Act be read to place agencies in the position of having to disclose information that could later lead to infringement suits.  Cf. Rojas v. Fed. Aviation Admin., 989 F.3d 666, 689 (9th Cir. 2021) (Wardlaw, J., concurring), cert. denied, 142 S. Ct. 753 (2022) (explaining that Congress has "amended FOIA when it wanted to stop the use of FOIA as an end run around discovery") (citation and internal quotation marks omitted); BuzzFeed, Inc. v. Dep't of Just., 419 F. Supp. 3d 69, 80 (D.D.C. 2019) (FOIA requester "should not be able to use FOIA to do an end-run around the disclosure lines Congress established in the Ethics in Government Act" regarding private

financial information).  There must thus be some circumstances in which Exemption 4 may provide a basis for withholding copyrighted materials because they are commercial, confidential information obtained from a person.

Plaintiff objects that here, however, Defendant has not made any assurances of privacy to the publishers.  See Pl. Resp./Cross-MSJ at 19.  This Circuit does not require assurances of privacy as a separate component of confidentiality, and this Court will not "read the word 'confidential' to impose a blanket requirement that the government provide an assurance of privacy in every case in which it asserts Exemption 4."  Renewable Fuels Association v. EPA, 519 F. Supp. 3d 1, 12 (D.D.C. 2021).  The Army is not clear on whether assurances of confidentiality were in fact made in this case, but since such assurances are not necessary, the Court need not probe further.  See Def. MSJ at 13 ("[A]ssurances of confidentiality were likely made by the Army as part of the purchase agreement, for information that is typically treated as confidential by its owner[.]").

Naumes further notes that "[i]n none of Defendant's declarations do they allege any contract or writing that would declare that any, let alone all, of the authors who drafted the hundreds of questions withheld from disclosure hold this published material as confidential."  Pl. Reply at 9.  In some FOIA cases, agencies have taken the initiative to consult with the copyright holder and seek out her position on release of the materials.  Ruston v. Dep't of Just., 521 F. Supp. 2d 18, 19 (D.D.C. 2007) (noting that court allowed BOP to contact copyright holders consistent with BOP's conclusion that "copyrighted tests should not be released until the copyright holder has been contacted[ ] and provided the opportunity to assert any objections to disclosure and the grounds for such objections") (internal citation omitted); see also Weisberg v.  Dep't of Just., 631 F.2d 824, 829 (D.C. Cir. 1980) (finding that district court

"should have sought the presence of the alleged copyright holder" under Federal Rule of Civil Procedure 19 prior to assessing release of copyrighted photographs in FBI investigation). This Court agrees that it is the better path to require the Army to confer with the copyright holders for the remaining non-public source materials about whether they in fact treat those materials as confidential. Such a consultation will allow for the necessary determination of "how the particular party customarily treats the information, not how the industry as a whole treats the information." Ctr. for Auto Safety, 244 F.3d at 148. This information is particularly valuable to the Court, where, as here, it is unclear whether there was a specific license or assurance of confidentiality that revealed an expectation by the copyright holders that their material would remain private. Although this imposes some burden on Defendant, at most the Army will need to check with the copyright holders for seven articles or books — a manageable task. See Vaughn-Burford Decl., ¶ 9.

Finally, the Court is not persuaded by Plaintiff's argument that to establish confidentiality, Defendant must show "that the millions of people who regularly take the GAT, voluntarily or involuntarily, are bound by any confidentiality agreement or secure test procedures." Pl. Opp./Cross-MSJ at 22. Although some tests are registered as "secure tests" to shield copyrighted materials, see, e.g., Nat'l Conf. of Bar Examiners v. Saccuzzo, No. 03-737, 2003 WL 21467772, at *8 (S.D. Cal. June 10, 2003), it is not required that a test have been so registered for the underlying materials involved to receive copyright protection. As described earlier, to be considered confidential, information must be "of a kind that would customarily not be released to the public by the person [or entity] from whom it was obtained." Renewable Fuels Association, 519 F. Supp. 3d at 12 (internal citations and quotation marks omitted). That does not necessarily entail the use of a secure test registration, as the source material could still be

protected from release even if the entire test is not registered. Indeed, these materials were already copyrighted at the time the Army received them for use in the GAT, so adding an additional layer of protection would not necessarily have been needed.

In sum, the Court requires that Defendant: 1) release any questions from sources that are accessible to the general public; 2) contact the copyright holders of the remaining non-public source materials and inform the Court as to their position on the release of questions from their copyrighted materials; and 3) provide supplemental briefing on how it incorporates questions into the GAT from copyrighted materials. The Court will thereafter determine whether Exemption 4 justifies the continued withholding of any remaining questions.

D. Segregablity

Trooping along, Defendant also maintains that it is entitled to summary judgment because it complied with FOIA by disclosing all "reasonably segregable portion[s]" of responsive records, see 5 U.S.C. § 552(b), which must be released unless the information is "inextricably intertwined with exempt portions." Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). The Court can dispense quickly with this issue as Plaintiff does not address it except to mention that she should receive all the questions on the GAT without redactions.

The Government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013) (alteration in original) (citation omitted), but this presumption does not eliminate the need for an agency to meet its evidentiary burden and give a full explanation for its segregablity decisions. See Mead Data Cent., 566 F.2d at 261. The agency must offer "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks

omitted).  The Army made the required showing here that it acted to release all "reasonably segregable material," since "[e]ach question of the GAT survey was reviewed line-by-line and where possible, the Army segregated and released information not covered by any FOIA exemption."  Vaughn-Burford Decl., ¶ 8; see also Vaughn Index at 1–2 (identifying question-by-question which material was covered by Exemption 4); Johnson v. Exec. Office for U.S. Att'ys, 310 F.3d 771, 776–77 (D.C. Cir. 2002) (upholding segregablity determination based on Vaughn Index and affidavit describing line-by-line review).  There is thus no segregability concern here.

     E.  Foreseeability of Harm

Firing a final shot, Naumes argues that the Army has failed to show the foreseeable harm required under 5 U.S.C. § 552(a)(8)(A)(i)(I).  That section allows an agency to withhold information only if it "reasonably foresees that disclosure would harm an interest protected by" one of the FOIA exemptions.  See Pl. Resp./Cross-MSJ at 26.  The D.C. Circuit recently explained in Reporters Committee for Freedom of the Press v. FBI, 3 F.4th 350 (D.C. Cir. 2021), that "Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can 'articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld.'"  Id. at 369 (quoting H.R. REP. NO. 391, 114th Cong., 2d Sess. 9 (2016)).  The independent burden of showing foreseeable harm cannot be met with "generalized assertions," id. (internal citation omitted), or reliance on "nearly identical boilerplate statements."  Ctr. for Investigative Reporting, 436 F. Supp. 3d at 106.

Defendant has sufficiently laid out the basis of its foreseeable harm from disclosing copyrighted information.  See Vaughn-Burford Decl., ¶ 8; Vaughn Index at 1 (disclosure of confidential information "may reasonably be expected to impair the legitimate commercial,

financial, business, or research interests of that person"). In its Declaration, the Army states that the "[d]isclosure of the . . . redacted questions would likely cause financial and competitive harm to the questions['] owners" and "financial harm to the Army" from ensuing litigation over the disclosures. See Def. MTD at 4. This is sufficient to establish the foreseeable harm that the Army seeks to avoid. See, e.g., Cause of Action Institute v. Export-Import Bank of the United States, No. 19-1915, 2022 WL 252028, at *19 (D.D.C. Jan. 27, 2022) (agency declarations describing harm under Exemption 4 sufficient to establish foreseeable harm); see also WP Co. LLC v. SBA, No. 20-1240, 2021 WL 5881972, at *3 (D.D.C. Dec. 13, 2021) ("the same documents that establish that the withheld information is 'privileged or confidential' provide the requisite explanation of foreseeable harm").

Naumes nonetheless maintains that Defendant "has not provided anything but conclusory and highly speculative statements regarding the harm it alleges" would result from disclosure. See Pl. Opp./Cross-MSJ at 26. She maintains both that the Army cannot just echo the language of the exemption, and that in her case, none of the Army's cited financial harm is a risk since her use of the copyrighted material would fall under the "fair use" doctrine, which allows for the unlicensed use of covered materials in certain instances such as educational work. Id. at 26–27; cf. Vaughn-Burford Decl., ¶ 8 (raising financial-harm argument). As Defendant points out, however, "The status of the FOIA requester and his or her intended use of the information is irrelevant under FOIA, as release of information is a release to the general public, not solely to Plaintiff." Def. Opp./Reply at 11; see also Stonehill v. IRS, 558 F.3d 534, 539 (D.C. Cir. 2009) ("Documents released in a FOIA action must be made available to the public as a whole[,] . . . and, unlike in civil discovery . . . there is no opportunity to obtain a protective order."). The applicability of the fair-use doctrine specifically to Plaintiff's dissertation research thus cannot

23

outweigh Defendant's determination of foreseeable harm when the material is to be released to the public overall.

## IV.    Conclusion

For the foregoing reasons, the Court will deny in part and grant in part Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment.  The Court will order that by March 14, 2022,: 1) the Army search for and release the pages offering Spiritual, Family Fitness, Social Fitness, and Physical Fitness Dimension Recommendations linked to in the records already provided; 2) release the GAT survey questions that derive from sources available to the general public; 3) contact the copyright holders for the questions from the remaining non-public source materials and inform the Court as to their position on release; and 4) provide supplemental briefing on how the GAT survey questions are assembled from the underlying sources.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  February 28, 2022