UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SUNOCO PIPELINE, L.P.**, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )     Case No. 21-cv-1760 (TSC) <br> ) |
| **U.S. DEPARTMENT OF TRANSPORTATION** *et. al.*, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## MEMORANDUM OPINION

Plaintiff Sunoco Pipeline L.P. ("Sunoco") has sued the United States Department of Transportation and the Pipeline and Hazardous Materials Safety Administration ("PHMSA"), as well as Peter Buttigieg and Tristan Brown in their official capacities as Secretary of the Department of Transportation and Acting Administrator of the PHMSA, respectively. Sunoco alleges that PHMSA seeks to disclose confidential and sensitive data to the public regarding Sunoco's Mariner East 2 ("ME2") pipeline system in Pennsylvania, in violation of the Administrative and Procedures Act ("APA"), 5 U.S.C. § 706. According to Sunoco, disclosure will impair its ability to safely operate the pipeline, and the data could be used by terrorists and other criminal enterprises to harm populations living adjacent to the pipeline. To prevent disclosure, Sunoco brings this reverse-Freedom of Information Act ("FOIA") action, seeking injunctive and declaratory relief.

Having considered the record and the briefing, and for the reasons explained below, the court will DENY Defendants' Motion to Dismiss, ECF No. 12.

## I. BACKGROUND

In 2018, PHMSA inspected Sunoco's Flow Reversal Project on the ME2 pipeline system to determine whether the system was compliant with certain federal pipeline safety regulations. Compl. ¶ 16, ECF No. 1. At PHMSA's request, Sunoco provided two hazard analysis reports prepared by Stantec Consulting Ltd., a consultant with expertise in pipeline risk assessment and consequence modeling. *Id.* at ¶¶ 17–18. Sunoco designated the provided information as "confidential and proprietary and exempt from disclosure under the [FOIA]." *Id.* ¶ 1.

The hazard analysis reports included (1) a March 27, 2017 report entitled "Hazard Assessment of the Proposed Mariner 2 East Pipeline," and (2) an October 15, 2018 report entitled "Energy Transfer: Mariner East 2 Pipeline Re-Route near Chester and Delaware, Pennsylvania – Butane Spill Assessment: Final Report." *Id.* ¶ 17. These reports contained the results of incident dispersion and thermal radiation consequence modeling performed by Stantec concerning the ME2 pipeline, which identified areas along ME2 that would be most impacted by a catastrophic incident on the pipeline, *id.* ¶ 18, and the distances in which the worst-case impact from a catastrophic pipeline rupture could occur, *id.* ¶ 1.

In May 2019, PHMSA issued a Notice of Proposed Violation ("NOPV") alleging that Sunoco violated certain pipeline safety regulations. *Id.* ¶ 2. One such violation was Sunoco's failure to tailor its public-awareness communications to the pipeline's unique attributes, characteristics, location, and potential impact consequences. *See* Compl. Ex. T at 2, ECF No. 1-1. PHMSA also included excerpts from Sunoco's hazard analysis reports in the NOPV as well as the underlying Pipeline Safety Violation Report ("PSVR"). Compl. ¶ 2. The NOPV quoted the dispersion and thermal radiation consequence modeling results for the worst-case releases from the ME2. *Id.* at ¶ 28. Upon receiving the NOPV and PSVR, Sunoco objected to disclosure

of the risk consequence modeling data and asked PHMSA to reissue the NOPV without the data or redact the specific results of the risk consequence modeling from both the NOPV and PSVR. *Id.* at ¶ 3.

Over the ensuing months, the parties exchanged correspondences in which Sunoco further explained its position that the risk consequence modeling results were confidential and sensitive information exempt from public disclosure by FOIA Exemptions 4 and 7(F), and PHMSA maintained its position that the information was not protected from release under those exemptions and that it planned to post the unredacted documents to its enforcement transparency website. *See* Compl. Ex. F–J, ECF No. 1-1. Then, on November 25, 2019, PHMSA agreed to redact the consequence modeling data from the NOPV and posted a redacted version. *See* Compl. ¶ 4.

Subsequently, PHMSA received multiple FOIA requests for an unredacted copy of the NOPV. *Id*. On September 30, 2020, the agency denied those requests, finding that the information was protected under Exemption 4, but without addressing whether it would also be protected under Exemption 7(F). *See id.* at ¶ 42. Several months later, PHMSA received two FOIA appeals of its previous denial. *See id.* at ¶¶ 43–44. PHMSA ultimately issued a Final Determination to release an unredacted version of the NOPV because it was not covered by Exemption 4 or 7(F). Compl. Ex. T at 3, ECF No. 1-1. Sunoco then filed this lawsuit requesting that the court find PHMSA's decision to release an unredacted version of the NOPV unlawful and seeking to enjoin PHMSA's release of the unredacted NOPV. Defendants have agreed to withhold disclosing the information at issue pending the resolution of this matter. Compl. ¶ 6.

## II.  LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must treat the plaintiff's "factual allegations as true and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation and quotation omitted).  "However, the court need not accept inferences . . . [that] are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## III.  ANALYSIS

### A.  Cognizable Reverse-FOIA Claim

The Supreme Court has long held that FOIA does not prohibit any government disclosure; it provides a cause of action to compel disclosure. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 294 (1979).  However, the Court has also explained that "review of [an agency's] decision" to disclose a private party's data "is available under the APA." *Id.* at 318.  In a so-called reverse-FOIA action, a party whose information is to be disclosed by a federal government agency pursuant to a FOIA request may seek to enjoin the government from disclosing such information by instituting an APA action, alleging that the disclosure is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Canadian Commercial Corp. v. Dep't of Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008) (citing 5 U.S.C.

§ 706(2)(A)). Thus, in order to state a claim that an agency acted unlawfully in disclosing information, a plaintiff must demonstrate that "some other law," not FOIA, "require[d] the agency to withhold the information." *Tripp v. Dep't of Def.*, 193 F. Supp. 2d 229, 238 (D.D.C. 2002) (emphasis removed).

Defendants argue that Plaintiff merely alleges misapplication of FOIA Exemptions 4 and 7(F), as opposed to a violation of a law other than FOIA, and therefore the Complaint must be dismissed.

### 1. *Exemption 4*

An aggrieved party may bring an APA action to enjoin release of information that would violate the Trade Secrets Act, 18 U.S.C. § 1905. *See Northrop Grumman Sys. Corp. v. Nat'l Aeronautics & Space Admin.*, 346 F. Supp. 3d 109, 116–17 (D.D.C. 2018). The Act prohibits federal government officials and agencies from disclosing information that "concerns or relates to the trade secrets, processes, operations, style of work, or apparatus or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures" of any private party. 18 U.S.C. § 1905. The D.C. Circuit has explained that the Trade Secrets Act "is at least co-extensive with . . . Exemption 4 of FOIA," *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1151 (D.C. Cir. 1987), such that Exemption 4 "effectively prohibits an agency from releasing information subject to th[at] exemption," *McDonnell Douglas Corp. v. Dep't of the Air Force*, 375 F.3d 1182, 1186 (D.C. Cir. 2004). Indeed, "whenever a party succeeds in demonstrating that its materials fall within Exemption 4, the government is precluded from releasing the information by virtue of the Trade Secrets Act." *McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162, 1164 (D.C. Cir. 1995).

Defendants argue that while the Complaint alleges a violation of Exemption 4, it must be dismissed because it fails to allege that disclosure would violate any law other than FOIA.  *See* Defs. Mem., ECF No. 12-1 at 4–7.  Plaintiff responds that the "Complaint plausibly alleges that the risk consequence modeling data falls within Exemption 4," and, granting Plaintiff the benefit of all favorable inferences, the Complaint sufficiently alleges that disclosure "is barred by the Trade Secrets Act."  Pl. Opp'n, ECF No. 13 at 13.  The court agrees.

The Complaint alleges that Defendants' disclosure of certain ME2-related data would violate the APA because such data is covered by FOIA Exemption 4.  Compl. ¶ 64.  Defendants argue that the Complaint must be dismissed because it does not include the words "trade secret" or explicitly refer to the Trade Secrets Act.  Defs. Memo., ECF No. 12-1 at 5.  But the Trade Secrets Act is as least "co-extensive" with Exemption 4, *CNA Fin. Corp.*, 830 F.2d at 1151, and so Defendants are sufficiently on notice that Plaintiff has instituted an APA action alleging a Trade Secrets Act violation.

In the alternative, Defendants argue that the Complaint "fails to plausibly allege that the risk-analysis data in the NOPV . . . falls with FOIA exemption 4."  ECF No. 12-1 at 7.

Exemption 4 allows agencies to withhold "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  5 U.S.C. § 552(b)(4).  In this Circuit, information is subject to Exemption 4 if it is "(a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential."  *Northrop Grumman Sys. Corp.*, 346 F. Supp. 3d at 117 (quoting *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 766 (D.C. Cir. 1974)).  Defendants argue that Sunoco has failed to allege that the risk-analysis data is "commercial or financial" information under Exemption 4.  ECF No. 12-1 at 7–10.

For purposes of Exemption 4, information is "commercial" if it "serves a commercial function or is of a commercial nature." *Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.* ("*CREW II*"), 58 F.4th 1255, 1263 (D.C. Cir. 2023) (quotations omitted). "[I]n ordinary parlance, information is commercial if it pertains to the exchange of goods or services or the making of a profit." *Id*. The term commercial "reaches . . . broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006). However, it "does not cover all information the public disclosure of which could inflict commercial harm." *CREW II*, 58 F.4th at 1264. Examples of commercial information include sales statistics, profits or losses, inventories, customer lists or manufacturing processes. *Id*. at 1263.

Granting Sunoco the benefit of all favorable inferences, *Sparrow*, 216 F.3d at 1113, the court finds that the Complaint plausibly alleges that the risk consequence modeling data "pertains to . . . the making of a profit," *CREW II*, 58 F.4th at 1263. "A company has a clear commercial interest in its basic business operations and techniques," *Public Citizen v. U.S. Dep't of Health & Human Servs.*, 66 F. Supp. 3d 196, 207 (D.D.C. 2014) (internal quotation marks and citation omitted), and Sunoco has alleged that the data was necessary for its "commercial operations and for commercial purposes," Compl. ¶ 52, to comply with "federal pipeline safety regulations," *id*., and to protect the structural integrity and security of the ME2 pipeline, *id*. ¶¶ 1, 3, 22. At the motion to dismiss stage, that is sufficient.

2. *Exemption 7(F)*

Exemption 7(F) allows an agency to shield from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the product of such law

enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). To administer this and other FOIA exemptions, the Department of Transportation "makes reasonably described records available upon request from a member of the public, when the request is submitted in accordance with this subpart, *except* to the extent that the records contain information exempt from FOIA's mandate of disclosure as provided in 5 U.S.C. 552(b)." 49 C.F.R. § 7.23(b) (emphasis added); *see also* 49 C.F.R. § 7.2 (making FOIA rules applicable to agencies within the Department of Transportation).

Plaintiff alleges that PHMSA's disclosure of the risk consequence modeling data would violate 49 C.F.R. § 7.23(b), which implements Exemption 7(F). Compl., ECF No. 1. ¶ 51. According to Plaintiff, if a FOIA exemption applies to requested information, the Department's regulation prohibits it from disclosing the information. Pl. Opp'n, ECF No. 13 at 14–15. However, 49 C.F.R. § 7.23(b) only requires that the agency make reasonably described nonexempt materials available upon request. It says nothing about what the agency may do or must do with exempt materials, much less explicitly require that such materials be withheld. Indeed, "Congress did not limit an agency's discretion to disclose [even exempt] information when it enacted the FOIA," *Chrysler Corp.*, 441 U.S. at 294, and other applicable Department regulations contemplate that the agency may "decide[] to disclose the information over . . . objections." 49 C.F.R. § 190.343(b).

Plaintiff also argues that because PHMSA did not address § 7.23(b) in its Final Determination it (1) failed to "consider an important aspect of the problem," Pl. Opp'n, ECF No. 13 at 16 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)), and (2) cannot now advance a "new interpretation" of the regulation that was absent

from its Final Determination analysis, *id*. (citing *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 860 (D.C. Cir. 2012)).  But PHMSA was not required to consider § 7.23(b) to determine whether it was prohibited from releasing information pursuant to a FOIA request.  As explained, § 7.23(b) says nothing about what the agency must do with exempt materials.

Because disclosure of the risk consequence modeling data cannot violate 49 C.F.R. § 7.23(b), Plaintiff's Exemption 7(F) allegations cannot form the basis of its reverse-FOIA claim.

### B. Production of an Administrative Record

In cases involving review of an agency action, Local Civil Rule 7(n) requires the agency to provide an administrative record to plaintiffs and to "file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first." Defendants have not attempted to comply with this rule, arguing that the rule is only triggered when a dispositive motion "*relies* on an administrative record," and because they have not, they should be exempted from complying with the Local Rule.  ECF No. 12-1 at 18 (emphasis in original).  In the alternative, Defendants argue that the court should waive compliance because the administrative record is not necessary to resolve the motion to dismiss.  *Id*.

In a reverse-FOIA case, merits review is "based upon the whole record, . . . consist[ing] of the administrative record compiled by the agency in advance of litigation, not any record thereafter constructed in the reviewing court." *AT&T Info. Sys., Inc. v. Gen. Servs. Admin.*, 810 F.2d 1233, 1236 (D.C. Cir. 1987) (quotation marks and citations omitted).  Therefore, Defendants must comply with Local Civil Rule 7(n) and produce the administrative record.

## IV. CONCLUSION

For the reasons explained, Defendants' Motion to Dismiss, ECF No. 12, will be DENIED. An Order will accompany this Memorandum Opinion.

Date: September 29, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge